UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DOMINIC PARTON; and
D.L., a minor,

                          Plaintiffs,

                                                          5:22-CV-1030
v.                                                        (MAD/ML)

THE CITY OF SYRACUSE; CITY OF
SYRACUSE OFFICE OF THE MAYOR
BEN WALSH; ONONDAGA CNTY.
DISTRICT ATTORNEY WILLIAM J.
FITZPATRICK; and SYRACUSE
POLICE DEP'T,

                          Defendants.

_____

APPEARANCES:                                             OF COUNSEL:

DOMINIC PARTON
   *Pro se* Plaintiff
Five Points Correctional Facility
Caller Box 119
Romulus, New York 14541

D.L.
   *Pro Se* Plaintiff
658 East Division S
(full address not provided)[1]


MIROSLAV LOVRIC, United States Magistrate Judge


### ORDER and REPORT-RECOMMENDATION

The Clerk has sent this *pro se* Complaint (Dkt. No. 1) together with (1) an amended *in*

*forma pauperis* application, and (2) a motion to appoint counsel to the Court for review.  (Dkt.

_____

[1]        (Dkt. No. 1 at 2.)

Nos. 1, 3, 5.)  For the reasons discussed below, I (1) grant Plaintiff Parton's amended *in forma pauperis* application, (2) deny Plaintiff Parton's motion to appoint counsel, and (3) recommend that the Complaint be dismissed in its entirety without leave to amend.  (Dkt. Nos. 1, 3, 5.)

## I.    BACKGROUND

Construing the Complaint as liberally[2] as possible, Plaintiff Dominic Parton ("Plaintiff Parton") brings this action on behalf of his minor son ("D.L.").  (*See generally* Dkt. No. 1.) Plaintiff Parton invokes the Court's federal question jurisdiction pursuant to 42 U.S.C. § 2000e-5 and the Complaint is a form complaint pursuant to Title VII of the Civil Rights Act as amended. (*Id*.)  Named as defendants are The City of Syracuse, City of Syracuse Office of the Mayor Ben Walsh, Onondaga County District Attorney William J. Fitzpatrick, and the Syracuse Police Department (collectively "Defendants").[3]  (Dkt. No. 1 at 1, 3.)

Plaintiff Parton alleges that on November 26, 2020, at approximately 3 a.m., D.L. was shot three times with an "AR-15 Assault Rif[]le, while asleep at his counsin[']s house" on Butternut Street in the City of Syracuse.  (Dkt. No. 1 at 3.)  The Complaint alleges that D.L. was treated at Upstate hospital and released several hours later.  (*Id*.)  The Complaint alleges that the Syracuse Police officers investigating the shooting should be relieved of their duties and the Federal Bureau of Investigation should take over the case.  (*Id*. at 4.)  In addition, the Complaint alleges that Defendant District Attorney of Onondaga County William J. Fitzpatrick and City of Syracuse Mayor Ben Walsh "need[] to use outside resources and include the FBI, ATF, [and]

---

2        The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

3        The body of the Complaint also appears to assert claims against Upstate Medical University Hospital.  (Dkt. No. 1 at 4.)

Sheriff[']s Department" to confiscate the gun used in the shooting and to sarrest the suspect. (*Id*.)  Finally, the Complaint alleges that Upstate Hospital "needs to follow up with D.L. and make sure that D.L. continues to receive proper medical treatment, including medication."  (*Id*.)

The Complaint does not appear to assert any causes of actions but states that Plaintiff Parton "and Gawelhonh Lazore Parents to D.L. request that this Court grant all 3 Plaintiffs $20,000,000 million dollars for pain and suffering, failure to provide [adequate] medical care, and for failing to arrest the suspects for shooting our son D.L."  (*Id*. at 5.)

Plaintiff Parton also filed an amended application to proceed *in forma pauperis*.  (Dkt. No. 5.)

## II.   PLAINTIFF PARTON'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged."  *Cash v. Bernstein*, 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[4]  "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts."  *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

---

[4]     Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(g).  The Court has reviewed Plaintiff Parton's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service.  *See* http://pacer.uspci.uscourts.gov.  It does not appear from that review that Plaintiff Parton had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

Upon review, the Court finds that Plaintiff Parton has submitted a completed amended IFP application which has been certified by an appropriate official at his facility (Dkt. No. 5), and which demonstrates economic need.  *See* 28 U.S.C. § 1915(a)(2).  Plaintiff has also filed the inmate authorization required in the Northern District. (Dkt. No. 7.)

Accordingly, Plaintiff Parton's amended application to proceed with this action IFP is granted.  (Dkt. No. 5.)

## III.   RELEVANT LEGAL STANDARD GOVERNING INTIAL REVIEW OF A COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

"[E]xtreme caution should be exercised in ordering sua sponte dismissal of a . . . complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## IV.     ANALYSIS

Having reviewed the Complaint, and construing the allegations liberally, I recommend that all causes of action be dismissed.[5]

### A.     Claims on Behalf of D.L.

A nonlawyer parent ordinarily cannot represent a child's interests *pro se*.  *See Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990); *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005) (holding that it is "a well-established general rule in this Circuit that a parent not admitted to the bar cannot bring an action pro se in federal court on behalf of his or her child").  Minors "are entitled to trained legal assistance so their rights may be fully protected" and nonlawyer parents are not trained to represent competently the interests of their children.  *Cheung*, 906 F.2d at 61.  Moreover, "a district court has a duty to raise this issue *sua sponte*."  *Thomas v. Astrue*, 674 F. Supp. 2d 507, 511 (S.D.N.Y. 2009).

---

[5]      Although the Complaint is a form complaint pursuant to Title VII of the Civil Rights Act as amended, the Complaint fails to allege facts plausibly suggesting an employee/employer relationship between any plaintiff and any defendant.  *See Jones v. Thomas*, 20-CV-5581, 2020 WL 5077026, at *4 (S.D.N.Y. Aug. 27, 2020) (dismissing for failure to state a claim, the plaintiff's claims pursuant to Title VII where the plaintiff did not allege that he is or was an employee of any of the defendants); *Basora-Jacobs v. Palevsky*, 20-CV-1675, 2020 WL 3868710, at *2 (E.D.N.Y. July 10, 2020) (dismissing the plaintiff's Title VII claims because "[t]he complaint does not list Plaintiff's employer as a defendant in the case caption.").  Moreover, the Complaint fails to allege facts plausibly suggesting that Plaintiffs filed a timely charge with the EEOC and received an EEOC right-to-sue letter before commencing this action.  42 U.S.C. § 2000e-5(e), (f); *see Legnani vv. Alitalia v. Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) ("Under . . . Title VII . . ., a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter.").  As a result, to the extent that the Complaint is construed as asserting claims pursuant to Title VII, I recommend that those claims be dismissed.  *See Walker v. Flynn*, 22-CV-0400, 2022 WL 2304169, at *5 (N.D.N.Y. June 27, 2022) (Lovric, M.J.) (recommending dismissal of the plaintiff's Title VII claims where (1) the complaint failed to allege facts plausibly suggesting that the plaintiff was employed by the defendant, and (2) a right-to-sue letter was not attached to the complaint), *report and recommendation adopted by*, 2022 WL 2789355 (N.D.N.Y. July 15, 2022) (Sharpe, J.).

"In determining whether a non-attorney individual is attempting to bring an action on behalf of another, the 'threshold question' is 'whether a given matter is plaintiff's own case or one that belongs to another.'"  *Machadio v. Apfel*, 276 F.3d 103, 107 (2d Cir. 2002) (quoting *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998)).  Here, Plaintiff Parton purports to assert claims on behalf of his child, D.L.  Plaintiff Parton, however, cannot bring claims on behalf of D.L. without counsel.  As a result, I recommend that the Court dismiss without prejudice any claims Plaintiff Parton is asserting on behalf of D.L.

**B.      Claims on Plaintiff Parton's Behalf**

To the extent that the Complaint is construed as attempting to assert claims on Plaintiff Parton's own behalf, I recommend that those claims be dismissed.

**1.      Claims Against the Syracuse Police Department and the City of Syracuse Office of the Mayor Ben Walsh**

"Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal . . .  department does not have the capacity to be sued as an entity separate from the municipality in which it is located."  *White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence.  Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")), *report and recommendation adopted by*, 2019 WL 974824 (N.D.N.Y. Feb. 28,

2019) (Suddaby, C.J.).  Thus, Defendants Syracuse Police Department and the City of Syracuse

Office of the Mayor Ben Walsh are not proper parties amenable to suit.

### 2.     Claims Against the Onondaga District Attorney William J. Fitzpatrick

Plaintiff's claims against Defendant Onondaga County District Attorney William J.

Fitzpatrick—which seek monetary damages—are barred by the Eleventh Amendment to the

United States Constitution.  "Stated as simply as possible, the Eleventh Amendment means that,

as a 'general rule, state governments may not be sued in federal court unless they have waived

their Eleventh Amendment immunity,' or unless Congress has 'abrogate[d] the states' Eleventh

Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth

Amendment.'"  *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (quoting *Woods v. Rondout

Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)).  "The immunity

recognized by the Eleventh Amendment extends beyond the states themselves to state agents and

state instrumentalities that are, effectively, arms of a state."  *Woods*, 466 F.3d at 236.  "'When

prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial

capacity, represents the State not the county.'"  *Ying Jing Gan v. City of New York*, 996 F.2d 522,

536 (2d Cir. 1993) (quoting *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988), *cert. denied*, 488

U.S. 1014 (1989)).

As a result, Plaintiff's claims against Defendant Onondaga County District Attorney

William J. Fitzpatrick are barred by the Eleventh Amendment.  *See Best v. Brown*, 19-CV-3724,

2019 WL 3067118, at *2 (E.D.N.Y. July 12, 2019) (dismissing the plaintiff's claim against the

Office of the Queens County District Attorney as barred by the Eleventh Amendment); *see also

D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) (citing *Ying Jing Gan v. City

of New York*, 996 F.2d 522, 536 (2d Cir. 1993)) ("[I]f a district attorney or an assistant district

attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity."); *Rich v. New York*, 21-CV-3835, 2022 WL 992885, at *5 n.4 (S.D.N.Y. Mar. 31, 20221) ("any claims Plaintiff may raise against the DA Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment."); *Gentry v. New York*, 21-CV-0319, 2021 WL 3037709, at *6 (N.D.N.Y. June 14, 2021) (Lovric, M.J.) (recommending dismissal of the plaintiff's claims against the defendant assistant district attorneys in their official capacities—which were effectively claims against the State of New York—as barred by the Eleventh Amendment), *adopted by Gentry v. New York*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021) (Suddaby, C.J.).

To the extent that the Complaint is construed as asserting claims against Defendant Onondaga County District Attorney William J. Fitzpatrick in his individual capacity, I recommend that those claims be dismissed based on the doctrine of prosecutorial immunity. *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972) (holding that prosecutors possess discretionary authority to bring criminal actions, and they are "immune from control or interference by citizen or court.").

### 3.    Claims Against the City of Syracuse

Plaintiff does not have standing to compel any law enforcement agency to prosecute suspected criminal acts because there is no private right of action to enforce state or federal criminal statutes.  *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *see also Walker v. CIBC Ltd.*, 20-CV-1337, 2021 WL 3518439, at *5 (N.D.N.Y. Apr. 13, 2021) (Hummel, M.J.) ("It appears plaintiff is either seeking the criminal prosecution of an individual or individuals or a law enforcement investigation, which is beyond this Court's jurisdiction."), *report-recommendation adopted by* 2021 WL 3204860 (N.D.N.Y. July 29, 2021) (McAvoy, J.);

*McFadden v. Ortiz*, 12-CV-1244, 2013 WL 1789593, at *3 (N.D.N.Y. Apr. 26, 2013)

(D'Agostino, J.) (holding that "there is no private right of action to enforce either state or federal

criminal statutes.").

Moreover, this Court does not have authority to commence its own investigation,

commence criminal prosecution, compel a law enforcement agency to investigate suspected

criminal activity, or compel a prosecutor to prosecute.  As a result, I recommend that Plaintiff's

claims against Defendant City of Syracuse be dismissed.  *See Shidagis v. Broome Cnty. D.S.S.*,

23-CV-0031, 2023 WL 198143, at *2-3 (N.D.N.Y. Jan. 17, 2023) (Lovric, M.J.) (recommending

dismissal of the plaintiff's claims to the extent that she was seeking the investigation or

prosecution of suspected criminal activity).

### 4. Claims Against Upstate Hospital

Although not listed as a party in the caption of the Complaint, to the extent that the

Complaint is construed as asserting claims against Upstate Hospital, I recommend that those

claims be dismissed.

"The court presumes that [the Complaint] is referring to Upstate University Hospital,

which is a part of the State University of New York ('SUNY') Upstate Medical University."  *See*

*Guillory v. Upstate Univ. Police*, 21-CV-1117, 2021 WL 6274449, at *3 (N.D.N.Y. Dec. 14,

2021) (Baxter, M.J.), *report and recommendation adopted by*, 2021 WL 35926 (N.D.N.Y. Jan. 4,

2022) (Sharpe, J.).  It is well settled that neither the State of New York, nor its agencies, may be

sued under § 1983 because Congress did not abrogate the State's immunity for such claims.  *See*

*Barnes v. New York State Div. of Human Rights*, 14-CV-2388, 2016 WL 110522, at *7

(S.D.N.Y. Jan. 8, 2016) (section 1983 did not abrogate states' immunity) (citing inter alia *Jones*

*v. New York State Metro D.D.S.O.*, 543 F. App'x 20, 22 (2d Cir. 2013)).  Accordingly, a claim

pursuant to 42 U.S.C. § 1983 against the hospital is barred by the sovereign immunity protection

of the Eleventh Amendment.  *See Campbell v. New York City*, 12-CV-2179, 2012 WL 3027925, at *3 (E.D.N.Y. July 23, 2012) ("[P]laintiff's § 1983 claims against the Hospital are barred by the . . . Eleventh Amendment because this hospital is a branch of SUNY."); *Dube v. State University of New York*, 900 F.2d 587, 594-95 (2d Cir. 1990) (Eleventh Amendment bars § 1983 suit against SUNY, which is an integral part of the State of New York); *Ding v. Bendo*, 03-CV-1237, 2006 WL 752824, at * 3-4 (E.D.N.Y. Mar. 23, 2006) (dismissing plaintiff's § 1983 claims against SUNY Downstate Medical Center because "SUNY and the defendant doctors in their official capacity enjoy immunity from suit under the Eleventh Amendment").

### C.     Claims on Behalf of Ms. Lazore

To the extent that the Complaint is construed as asserting any claims on behalf of Ms. Lazore as D.L.'s other parent, I recommend that those claims also be dismissed.  A person who is not an attorney may only represent himself in a *pro se* action.  *See Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (citing 28 U.S.C. § 1654) (holding that although parties have a statutory right to "plead and conduct their own cases," unlicensed laypersons may not "represent anyone else other than themselves."); *see also Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) ("A person who has not been admitted to the practice of law may not represent anybody other than himself.").

## V.     OPPORTUNITY TO AMEND

Generally, "[a] *pro se* complaint should not be dismissed without the court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Nielson v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citation and internal quotation marks omitted); *see also* FED. R. CIV. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  Leave to amend is not required where "the problem with [the

plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

"Because the defects in [the C]omplaint cannot be cured with an amendment, [I recommend that] the Court decline[] to grant . . . leave to amend [the C]omplaint." *Antonetti, on behalf of C.J.A. v. Dave & Busters 42nd Street Times Square*, 23-CV-0101, 2023 WL 1869012, at 5 (S.D.N.Y. Feb. 6, 2023) (declining leave to amend where the complaint sought to assert claims on behalf of the plaintiff's minor son).

## VI.    PLAINTIFF PARTON'S MOTION TO APPOINT COUNSEL

Plaintiff Parton has also submitted a request for appointment of counsel.  (Dkt. No. 3.) As an initial matter, "[a] party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *Lefridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011) (citation omitted).  Furthermore, there is no bright-line test determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-393 (2d Cir. 1997).  Rather, the court must carefully consider a number of factors, including whether the indigent's claims seem likely to be of substance. *See Lefridge*, 640 F.3d at 69 (stating that "[t]he court properly denies the plaintiff's motion for counsel if it concludes that his chances of success are highly dubious.") (citations omitted).

Because I have recommended dismissal of the instant matter, it cannot be said that Plaintiff Parton's claims are likely to be of substance; therefore, the motion (Dkt. No. 3) must be denied.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff Parton's amended application to proceed IFP (Dkt. No. 5) is **GRANTED only for purposes of filing and any appeal unless the trial court certifies in writing that the appeal is not taken in good faith.** *See* 28 U.S.C. § 1915(a)(3); and it is further

**ORDERED** that the Clerk of the Court (1) provide the Superintendent of the facility that Plaintiff Parton has designated as his current location with a copy of Plaintiff Parton's inmate authorization form (Dkt. No. 7) and notify that official that Plaintiff Parton has filed this action and is required to pay the Northern District of New York the entire statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and (2) provide a copy of Plaintiff Parton's inmate authorization form (Dkt. No. 7) to the Financial Deputy of the Clerk's office;

**ORDERED** that Plaintiff Parton's motion for appointment of counsel (Dkt. No. 3) is **DENIED without prejudice**; and it is further respectfully

**RECOMMENDED** that the Complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE BUT WITHOUT LEAVE TO AMEND** because it seeks monetary relief from Defendants who are immune from such relief and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915, 1915A; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Order and Report-Recommendation on the parties, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[6]  Such objections shall be filed with the

---

[6]      If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to

Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013); FED. R. CIV. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: February 16 , 2023
       Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  FED. R. CIV. P. 6(a)(1)(C).

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,

v.

BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION* [1]

PITMAN, United States Magistrate Judge.

**\*1** TO THE HONORABLE BARBARA S. JONES, United States District Judge,

### I. *Introduction*

By notice of motion dated March 4, 2010 (Docket Item 11), defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke plaintiff's *in forma pauperis* ("IFP") status on the ground that plaintiff has previously had at least three Section 1983 actions dismissed as frivolous, malicious or failing to state a claim upon which relief could be granted, and has not shown that he is in imminent danger of serious physical injury. Defendant further seeks an order directing that the action be dismissed unless plaintiff pays the full filing fee within thirty (30) days. For the reasons set forth below, I respectfully recommend that defendant's motion be granted.

### II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New York State Department of Correctional Services, commenced this action on or about January 12, 2009 by submitting his complaint to the Court's Pro Se office. Plaintiff alleges, in pertinent part, that he has "a non-healing ulcer that is gane green [*sic* ]" and that defendant Bernstein "did not want to treat the ulcer right" (Complaint, dated March 3, 3009 (Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants —Dr. Bernstein and Dr. Finkelstein. The action was dismissed as to Dr. Finkelstein because the complaint contained no allegations whatsoever concerning Dr. Finkelstein (Order dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr. Bernstein—filed the current motion. Plaintiff failed to submit a response. Accordingly, on August 20, 2010, I issued an Order advising plaintiff that if he wished to oppose the motion, he must submit his opposition by September 15, 2010 and that after that date I would consider the motion fully submitted and ripe for decision (Order dated August 20, 2010 (Docket Item 15)). The only submission plaintiff has made in response to my Order is a multi-part form issued by the New York State Department of Correctional Services entitled "Disbursement or Refund Request." [2] By this form, plaintiff appears to request that the New York State Department of Correctional Services pay the filing fee for this action. The form is marked "Denied."

### III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged. Although an indigent, incarcerated individual need not prepay the filing fee at the time at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent abuse of the judicial system by inmates, paragraph (g) of this provision denies incarcerated individuals the right to proceed without prepayment of the filing fee if they have repeatedly filed meritless actions, unless such an individual shows that he or she is in imminent danger of serious physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility,

brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson [3] v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at *1–*2.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had

been dismissed on the merits. 2008 WL 3836387 at *1, *7.

- In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM) (RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at *1–*2.

- Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

*3 As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009). [4]

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in

imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

### IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

### V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS *WILL* RESULT IN A WAIVER OF OBJECTIONS AND *WILL* PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5185047

## Footnotes

1   At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

2   Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

3   It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies

himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

4    Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

5    Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

> Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

*Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4.

Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Distinguished by   U.S. v. $6,787.00 in U.S. Currency,   N.D.Ga.,   February 13, 2007

1999 WL 1067841

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

Francisco AGUILAR, Plaintiff,

v.

UNITED STATES OF AMERICA, Defendant.

Nos. 3:99–MC–304 (EBB), 3:99–MC–408 (EBB).

|

Nov. 8, 1999.

*Dismissal of Plaintiff's Complaints*

BURNS, Senior J.

**\*1** Francisco Aguilar, pro se, seeks leave to proceed in forma pauperis ("IFP") to press two meritless complaints against the government, which is prosecuting related civil forfeiture actions against his properties. Although Aguilar is otherwise financially eligible, the court dismisses these complaints sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(B) because the purported claims are frivolous, baseless and irremediable.

*Background*

Would-be plaintiff Aguilar is no stranger to this court. He is currently serving a forty-year sentence for drug trafficking at the federal penitentiary in Leavenworth, Kansas. *See United States v. Tracy,* 12 F.3d 1186, 1189 (2d Cir.1993) (affirming conviction and sentence). In connection with his conviction for narcotics offenses, the government filed civil forfeiture actions pursuant to 21 U.S.C. § 881(a) in 1990 and 1991 against four of Aguilar's Connecticut properties, which have since been sold. With the help of CJA-appointed counsel, Aguilar has vigorously defended each of these four actions, three of which remain pending before this court, and are scheduled for trial in January 2000. [1]

Now Aguilar seeks to take the offensive by filing these purported claims against the government, and serving the current property owners as well as the Assistant United States Attorney who is prosecuting the related forfeiture cases. This court denied without prejudice Aguilar's initial complaint, which was erroneously captioned "United States v. One Parcel Of Property Located At 414 Kings Hwy.," one of the cases already docketed and then pending. *See* Order of June 15, 1999. Upon refiling an amended complaint (the "Amended Complaint") with the appropriate caption, Aguilar also filed a second complaint (the "Second Complaint"), seeking the same relief and asserting essentially the same claims against the government for bringing the other three forfeiture cases. The clerk returned these pleadings because Aguilar failed to complete the IFP forms. *See* Order of August 25, 1999. After Aguilar cured these pleading deficiencies, miscellaneous docket numbers were assigned to the complaints.

In Aguilar's Amended Complaint—the one originally filed against his own property at 414 Kings Highway—Aguilar seeks return of the property, compensatory damages and $100,000,000 in punitive damages "to deter the United States of America from committing a similar Abuse of Power." Aguilar pleads his case in four "Articles," asserting sundry state and federal "constitutional" claims, including conversion, false pretenses, mail fraud, and breach of fiduciary duty. The Amended Complaint also suggests an allegation that the government falsified and deliberately omitted known material facts from its probable cause affidavit in "disregard" of 19 U.S.C. § 1615, the statute outlining the burden of proof in administrative forfeiture proceedings.

The Second Complaint—the one related to the government's seizure of the other three properties—seeks similar equitable and monetary relief, including return of the properties, compensation for "suffering," "usurpation," denial of his use and enjoyment of the properties and lost rents, and one billion dollars in punitive damages. Liberally construed, the Second Complaint simply repeats the claims of the Amended Complaint except for one additional allegation: that Aguilar was entitled to, and did not receive, a hearing prior to the seizure and sale of his properties.

*Discussion*

A. § 1915(e)(2)(B) *Standards*

**\*2** The Prisoner Litigation Reform Act ("PLRA") mandates dismissal of an IFP action if it: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune

from such relief." 28 U.S.C. § 1915(e)(2)(B) (as amended in 1996). Prior to the adoption of the PLRA, district courts had discretion to dismiss frivolous actions; now they are required to do so. *See* Pub.L. 104–134, 110 Stat. 1321 (1996) (making dismissal of frivolous actions mandatory, and also requiring dismissal for failing to state a claim or seeking damages from an immune defendant). Because Aguilar's claims qualify for dismissal under all three of these prongs, the standards for each are set out in turn.

### 1. *Frivolous or Malicious*

A complaint is frivolous if "it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989) (interpreting § 1915(d), later redesignated as § 1915(e)(2)(B)(i), to preclude "not only the inarguable legal conclusion, but also the fanciful factual allegation"). Factual frivolity occurs where "the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy." Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir.1998) (quoting Neitzke, 490 U.S. at 327, 109 S.Ct. at 1833). Legal frivolity, by contrast, occurs where "the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Livingston,* 141 F.3d at 327 (internal quotes and citation omitted); *see also* Tapia–Ortiz v. Winter, 185 F.3d 8, 11 (2d Cir.1999) (upholding dismissal as frivolous where "[t]he complaint's conclusory, vague, and general allegations ... d[id] not [ ] suffice to establish" plaintiff's claims).

In addition to frivolous claims, the court must also dismiss any malicious claims, i.e., where "[t]he manifest purpose of appellant's complaint [i]s not to rectify any cognizable harm, but only to harass and disparage." Tapia–Ortiz, 185 F.3d at 11.

### 2. *Failure To State A Claim*

An IFP action must also be dismissed sua sponte if it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see also* Star v. Burlington Police Dep't, 189 F.3d 462, 1999 WL 710235 (2d Cir.1999) (summarily affirming dismissal made pursuant to § 1915(e)(2)(B)(ii)

of purported due process challenge that failed to state a claim). As in a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a § 1915(e)(2)(B)(ii) dismissal is warranted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

**\*3** Pro se complaints, such as these, however, must be read broadly, *see* Haines v. Kerner, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam), and may not be dismissed "simply because the court finds the plaintiff's allegations unlikely." Denton v. Hernandez, 504 U.S. 25, 33, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1982) (construing pre-PLRA complaint as frivolous). Therefore,

> a pro se plaintiff who is proceeding in forma pauperis should be afforded the same opportunity as a pro se fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim [under § 1915(e)(2)(B)(ii) ], unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim.

Gomez v. USAA Federal Sav. Bank, 171 F.3d 794, 796 (2d Cir.1999) (per curiam) (vacating § 1915(e)(2)(B)(ii) dismissal where "the district court did not give th[e] pro se litigant an opportunity to amend his complaint, and because [the court] cannot rule out the possibility that such an amendment will result in a claim being successfully pleaded").

### 3. *Relief Against An Immune Defendant*

Dismissal of an IFP case is also required where plaintiff seeks monetary damages against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii); *see also,* Spencer v. Doe, 139 F.3d 107, 111 (2d Cir.1998) (affirming dismissal pursuant to § 1915(e)(2)(B)(iii) of

official-capacity claims in § 1983 civil rights action because "the Eleventh Amendment immunizes state officials sued for damages in their official capacity"). Here, even if Aguilar's claims had any merit, the complaints must be dismissed nevertheless because each seeks monetary damages from the United States, which is immune from such relief. *See* *Presidential Gardens Assocs. v. United States,* 175 F.3d 132, 139 (2d Cir.1999) (noting "[t]he sovereign immunity of the United States may only be waived by federal statute").

### B. *Dismissal Standards Applied*

Aguilar's complaints are devoid of any arguable basis in law or fact. Most of his factual allegations—to the extent they are even comprehensible—are conclusory, vague and baseless. For example, he purports to allege: "The United States of America has misused its power against the Francisco Aguilar's Intangible Rights." (Amended Complaint at 2); and "The United States of America overpassed its bound of its authority and make a tyrannic use of its powers." (Second Complaint at 4). Even the Second Circuit has recognized Aguilar's prior handiwork to be "so indisputably lacking in merit as to be frivolous within the meaning of 28 U.S.C. § 1915(e)." *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 97–6004 (2d Cir. April 23, 1997) (mandate [Doc. No. 167] dismissing appeal of Aguilar's motion to enjoin state default proceedings).

Only two allegations asserted by Aguilar are even arguably actionable: the lack-of-probable-cause argument in the Amended Complaint and the due process claim in the Second Complaint. Both of these, however, must be dismissed because each fails to state a claim for which relief may be granted.

### 1. *Probable Cause*

**\*4** The one potentially cogent legal claim that can be derived from a liberal reading of the Amended Complaint has already been conclusively decided by the court and is therefore barred from relitigation. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158 (denying lack-of-probable-cause argument in motion to dismiss [Doc. No. 64] in 1993, and in motions for summary judgment [Doc. Nos. 55, 96] in 1996). Here again, Aguilar reiterates his allegation that the government's affidavit in support of probable cause was tainted because it failed to disclose that the 414 Kings Highway property was subject to a mortgage held by People's

Bank, and therefore could not have been purchased with funds traceable to drug sales.

After the government voluntarily dismissed that forfeiture action, this court initially ordered the sale proceeds of the property disbursed to Aguilar. *See id.,* Order of Oct. 25, 1996 [Doc. No. 151]. The bank appealed the order and, during the pendency of the appeal, secured a default judgment in state court against Aguilar. *See People's Bank v. Aguilar,* No. CV–96–0337761–S (Conn.Super.Ct.1997). On the Bank's appeal from this court's disbursal of proceeds to Aguilar, the Second Circuit reversed and remanded. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* 128 F.3d 125, 128 (2d Cir.1997). On remand, in accordance with the Second Circuit mandate, this court disbursed the proceeds from the sale of 414 Kings Highway to the bank in partial satisfaction of Aguilar's debt owed on the defaulted mortgage. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158, 1999 WL 301704 (D.Conn. May 11, 1999).

Because the lack-of-probable-cause claim, perfunctorily adverted to in Aguilar's otherwise meritless Amended Complaint, has already been addressed in the *414 Kings Highway* forfeiture case, the court will not consider it again. As such, it must be dismissed because it fails to state a claim for which this court could grant further relief.

### 2. *Due Process*

In addition to his now-stale probable cause allegation about 414 Kings Highway, Aguilar claims in the Second Complaint that he was wrongfully denied a hearing prior to the seizure and sale of the other three properties. However, the constitutional right to a preseizure hearing in civil forfeiture proceedings was not recognized until 1993, two years after the seizure in this case. *See United States v. James Daniel Good Real Property,* 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (holding that Fifth Amendment Due Process protections apply to civil forfeiture proceedings against real property). Even if such due process protections applied retroactively, Aguilar's challenge to the sale of the properties would lack merit because exigent circumstances required their interlocutory sale.

In civil forfeiture proceedings "[u]nless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil

forfeiture." *Id.* at 62, 114 S.Ct. at 505; *see also United States v. One Parcel Of Property Located At 194 Quaker Farms Rd.,* 85 F.3d 985, 988 (2d Cir.1996) ("[a]bsent exigent circumstances, a hearing, with notice to record owners, is held before seizure."). "To establish exigent circumstances, the Government must show that less restrictive measures— i.e., a lis pendens, restraining order, or bond—would not suffice to protect the Government's interest in preventing the sale, destruction, or continued unlawful use of the real property." *Id.* at 62, 114 S.Ct. at 505.

**\*5** Aguilar's properties addressed in the Second Complaint were seized because there was probable cause that each had been used to facilitate the offenses for which he was convicted. *See* 21 U.S.C. § 881(a)(7) (1999). This civil forfeiture statute authorizes interlocutory sale of seized properties by two methods, which are incorporated by reference into the statute. *See* 21 U.S.C. § 881(b) (authorizing seizure of property subject to civil forfeiture upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims; 21 U.S.C. § 881(d) (authorizing seizure and summary sale governed by the customs laws codified in the Tariff Act of 1930, 19 U.S.C. §§ 1602–1619). Though the source of authority differs, the standards for sale under each are virtually indistinguishable.

Rule E(9)(b) of the Maritime Rules permits the interlocutory sale of seized property if such property

> is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action, or if the expenses of keeping the property is [sic] excessive or disproportionate, or if there is unreasonable delay in securing the release of property....

Supplemental Rule for Certain Admiralty and Maritime Claims E(9)(b). Section 1612(a) of the customs laws, by contrast, provides for seizure and summary sale whenever it appears that such property

> is liable to perish or to waste or to be greatly reduced in value by keeping, or

that the expense of keeping the same is disproportionate to the value thereof....

19 U.S.C. § 1612(a) (1999).

Here, the Chief Deputy United States Marshal certified that the properties located at both 2030–32 Main St., Bridgeport (No. 5:90–cv–544), and 8 Drumlin Rd., Westport (No. 5:90–cv–545), were abandoned and therefore subject to vandalism, deterioration and depreciation. *See* 2/20/91 Declaration in Support of Motion for Interlocutory Sale [Doc. Nos. 28 (5:90–cv–544), 31 (5:90–cv–545) ] at ¶¶ 4, 5. The marshal also certified that the mortgage obligations exceeded by over $ 1,000 per month the rental income of the 2034–38 Main St., Bridgeport (No. 5:90–cv–546), property, which was several months in arrears and had little or no equity. *See* 2/21/90 Declaration in Support of Motion for Interlocutory Sale [Doc. No. 27 (5:90–cv–546) ] at ¶ 4. This court found these reasons sufficiently exigent to order the interlocutory sales. *See* 8/1/90 Order for an Interlocutory Sale [Doc. Nos. 34 (5:90–cv–544), 50 (5:90–cv–545), 31 (5:90–cv–546) ]. Interlocutory sale was thus warranted under both Rule E(9)(b) and § 1612(a) because the two abandoned properties were liable to deteriorate or lose value and the mortgage liabilities of the rented property were disproportionate in comparison to its value. *Cf. United States v. Esposito,* 970 F.2d 1156, 1161 (2d Cir.1992) (vacating order of interlocutory sale of forfeited home where "there was no finding that t[he amount expended for maintenance and repairs] was excessive or disproportionate").

**\*6** Aguilar's claim that he was wrongfully denied an opportunity to be heard prior to the sale of his properties is therefore not a cognizable due process challenge because the exigency of the properties' abandonment and disproportionate cost of upkeep required their interlocutory sale. Thus, sua sponte dismissal is warranted because Aguilar's due process claim fails to state a remediable cause of action.

### 3. *Other Claims*

The remainder of Aguilar's claims are frivolous and can be disposed of readily. To the extent Aguilar's claim invoking 19 U.S.C. § 1615 can be construed as challenging the constitutionality of shifting the burden to the claimant upon the government's showing of probable cause, the Second Circuit has "h[e]ld that it does not violate due process to place the burden of proving an innocent owner affirmative

defense on the claimant." *194 Quaker Farms Rd.,* 85 F.3d at 987. In addition, the tort claims for false pretenses and conversion are not actionable as these are intentional torts to which the limited waiver of sovereign immunity of the Federal Tort Claims Act ("FTCA") is inapplicable.

*See* 28 U.S.C. § 2680(h); *see also Bernard v. United States,* 25 F.3d 98, 104 (2d Cir.1994) ("the FTCA does not authorize suits for intentional torts based on the actions of Government prosecutors"). Furthermore, because the United States government is not a fiduciary and owes no associated duties to Aguilar, his breach of fiduciary duty allegation against the government fails to state a claim. Finally, Aguilar also fails to state a valid mail fraud claim as that criminal code provision, 18 U.S.C. § 1341, may only be prosecuted by the government, not against it.

### Conclusion

For the foregoing reasons, Aguilar's complaints [Nos. 3:99–mc–304 and 3:99–mc–408] are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) because they present frivolous allegations, none of which state a cognizable claim, and seek monetary relief from an immune defendant. Because the court cannot definitively rule out the possibility that amendment to the pleadings might result in an actionable claim, *see* Gomez, 171 F.3d at 796, these dismissals are made without prejudice and may be replead after the conclusion of the related forfeiture proceedings.

### All Citations

Not Reported in F.Supp.2d, 1999 WL 1067841

## Footnotes

1    *See United States v. One Parcel Of Property Located At 2030–32 Main St.,* No. 5:90–cv–544(EBB) (pending); *United States v. One Parcel Of Property Located At 8 Drumlin Rd.,* No. 5:90–cv–545 (EBB) (pending); *United States v. One Parcel Of Property Located At 2034–38 Main St.,* No. 5:90–cv–546(EBB) (pending); *see also United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158(EBB) (closed).

Case 5:22-cv-01030-MAD-ML   Document 8   Filed 02/17/23   Page 24 of 135

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

2019 WL 981850
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jeramie WHITE, Plaintiff,
v.
SYRACUSE POLICE
DEPARTMENT, et al., Defendants.

Civil Action No. 5:18-CV-1471 (GTS/DEP)
|
Signed 01/07/2019

**Attorneys and Law Firms**

FOR PLAINTIFF: Jeramie White, Pro se, 18-B-0311, Cayuga Correctional Facility, P.O. Box 1186, Moravia, NY 13118.

ORDER, REPORT, AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

**\*1** This is a civil rights action brought by *pro se* plaintiff Jeramie White, a New York State prison inmate, pursuant to 42 U.S.C. § 1983, against the Syracuse Police Department ("SPD") and five of its officers. In his complaint, plaintiff alleges that defendants violated his constitutional rights during the course of his arrest on February 13, 2017. Plaintiff's complaint and accompanying application for leave to proceed *in forma pauperis* ("IFP") have been referred to me for review. Based upon my consideration of those materials, I will (1) grant plaintiff's amended IFP application, (2) recommend dismissal of his claim against the SPD with leave to replead, and (3) recommend that his complaint otherwise be accepted for filing.

I. BACKGROUND
Plaintiff commenced this action on or about December 20, 2018. Dkt. No. 1. According to plaintiff, he and two friends were on their way to play indoor basketball when their vehicle was pulled over for a traffic infraction. *Id.* at 4; Dkt. No. 1-1 at 4. Plaintiff alleges that after the stop, defendant William Kittle forcibly removed White from the vehicle and that Kittle, in addition to defendants Abraham Mamoun and Shawn Hauck, proceeded to use excessive force against him during the course of his arrest. Dkt. No. 1 at 4-5, 6-7; *see also* Dkt. No. 1-1 at 4, 8. Plaintiff further alleges that defendants Altimonda

and Fiorini were present and had an obligation to intervene and prevent the unlawful use of force, but failed to do so. *Id.* at 5, 7.

Plaintiff was ultimately arrested and charged with resisting arrest, in violation of N.Y. Penal Law § 205.30, and second-degree obstruction of governmental administration, in violation of N.Y. Penal Law § 195.05. Dkt. No. 1-1 at 4. As relief, plaintiff seeks compensatory and punitive damages in the amount of $1,000,000. Dkt. No. 1 at 8.

A. Plaintiff's Amended IFP Application [1]
When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1). [2] Because I conclude that plaintiff meets the requirements for IFP status, his amended application for leave to proceed without prepayment of fees is granted. [3]

B. Sufficiency of Plaintiff's Complaint

1. Governing Legal Standard

**\*2** Because I have found that plaintiff meets the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in his complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Similarly, 28 U.S.C. § 1915A(b) directs a court to review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("We

have found both sections [1915 and 1915A] applicable to prisoner proceedings *in forma pauperis*.").

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g.*, *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' "

*Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2) ).

## 2. Analysis of Plaintiff's Claims

**\*3** Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located. *See Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (citing *Orraca v. City of N.Y.*, 879 F. Supp. 148 (S.D.N.Y. 1995) ); *Turczyn ex rel. McGregor v. City of Utica*, No. 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *see also Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department."). Although I would ordinarily recommend that, for the sake of judicial efficiency, the court substitute the City of Syracuse in place of the SPD, plaintiff's complaint contains no factual allegations that would support a *Monell* claim against the City of Syracuse. Accordingly, I recommend dismissal of plaintiff's claims asserted against the SPD.

With respect to his remaining claims, although plaintiff makes passing reference to his rights arising under the Eighth and

Case 5:22-cv-01030-MAD-ML   Document 8   Filed 02/17/23   Page 26 of 135

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

Fourth Amendments, *see* Dkt. No. 1 at 6, it is clear from the factual allegations that he is asserting claims for excessive force and the failure to intervene arising under the Fourth Amendment. *See generally* Dkt. No. 1; *see also Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018) ("Arrestees may invoke the Fourth Amendment's prohibition against 'unreasonable' seizures."). In light of the court's obligation to liberally construe a *pro se* litigant's pleadings, I find that plaintiff's complaint should be accepted for filing and the individual officer defendants should be required to respond in accordance with the local rules of practice for this court and the Federal Rules of Civil Procedure.[4]

### C. Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this case, while I recommend dismissal of plaintiff's claim against the SPD, plaintiff could potentially amend his complaint to assert a cognizable cause of action against a defendant, such as the City of Syracuse, which is amenable to suit. Accordingly, I recommend that plaintiff be granted leave to amend his complaint. If plaintiff chooses to file an amended complaint, he must clearly and concisely set forth the facts

that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted) ).

### II. SUMMARY, ORDER, AND RECOMMENDATION

**\*4** Having reviewed plaintiff's amended application for leave to proceed in this action IFP, I conclude that he has met the applicable requirements for leave to proceed without prepayment of fees, and will therefore grant his application. Turning to the merits of his complaint, to the extent that it names five police officers and alleges a violation of 42 U.S.C. § 1983, I conclude that those claims are not subject to dismissal at this procedural juncture. I recommend a finding, however, that plaintiff's claim against the SPD is legally deficient and subject to dismissal, but that plaintiff should be afforded an opportunity to amend with respect to that claim. Accordingly, it is hereby

ORDERED that plaintiff's amended application for leave to proceed in this action without prepayment of fees (Dkt. No. 6) is GRANTED; and it is further

ORDERED that plaintiff's original application for leave to proceed in this action without prepayment of fees (Dkt. No. 2) is DENIED as moot; and it is further

RECOMMENDED that plaintiff's complaint (Dkt. No. 1) be accepted for filing with respect to plaintiff's Fourth Amendment cause of action against defendants Mamoun, Kittle, Hauck, Altimonda, and Fiorini; and it is further

RECOMMENDED that plaintiff's remaining cause of action against the Syracuse Police Department be otherwise DISMISSED with leave to replead within thirty days of the issuance of an order adopting this recommendation; and it is further

RECOMMENDED that, in the event plaintiff does not choose to file an amended complaint and the above recommendations are adopted, the case should move forward with respect

to plaintiff's Fourth Amendment cause of action against defendants Mamoun, Kittle, Hauck, Altimonda, and Fiorini.

NOTICE: Pursuant to ⚑ 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[5] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW. ⚑ 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; ⚑ *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 981850

---

## Footnotes

1   Plaintiff filed both an original and amended motion to proceed in this action IFP. Dkt. Nos. 2, 6. While the two motions contain slightly different information concerning plaintiff's financial status, only the amended motion contains the required certification from an official at the correctional facility in which plaintiff is confined. *Compare* Dkt. No. 3 *with* Dkt. No. 7. Accordingly, plaintiff's original IFP application is denied as incomplete.

2   The total cost for filing a civil action in this court is $400.00, consisting of the civil filing fee of $350.00, *see* 28 U.S.C. § 1914(a), and an administrative fee of $50.00. Although an inmate granted IFP status is not required to pay the $50.00 administrative fee, he is required to pay, over time, the full amount of the $350.00 filing fee regardless of the outcome of the action. *See* ⚑ 28 U.S.C. § 1915(b)(3).

3   Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

4   The court expresses no opinion concerning whether plaintiff's claims can survive a properly filed motion to dismiss or motion for summary judgment, or whether he may prevail at trial.

5   If you are proceeding *pro se* and are served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:22-cv-01030-MAD-ML Document 8 Filed 02/17/23 Page 28 of 135

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

2014 WL 6685476
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kylie Ann TURCZYN, Deceased, by and through
Barbara McGREGOR, as Administratrix of
the Estate of Kylie Ann Turczyn, Plaintiff,
v.
CITY OF UTICA et al., Defendants.

No. 6:13–cv–1357 (GLS/ATB).
|
Signed Nov. 26, 2014.

**Attorneys and Law Firms**

Office of Frank Policelli, Frank Policelli, Esq., of Counsel,
Utica, NY, for the Plaintiff.

City of Utica—Corporation Counsel, Mark C. Curley, Esq.,
Merima Smajic, Esq., Zachary C. Oren, Esq., of Counsel,
Utica, NY, for the Defendants.

### *MEMORANDUM–DECISION AND ORDER*

GARY L. SHARPE, Chief Judge.

### I. *Introduction*

**\*1** Plaintiff Kylie Ann Turczyn, deceased, by and through
Barbara McGregor, as administratrix of the estate of Kylie
Ann Turczyn, commenced this action against defendants
City of Utica, City of Utica Police Dept., and Elizabeth
Shanley alleging substantive due process claims pursuant to
42 U.S.C. § 1983 and separate state law causes of action.
(Am.Compl., Dkt. No. 12.) Pending is defendants' motion
to dismiss for failure to state a claim. (Dkt. No. 19.) For the
reasons that follow, the motion is granted in part and denied
in part.

### II. *Background*

#### A. *Facts* [1]

Shanley, an Oneida County domestic violence investigator,
was at all relevant times assigned by the Police Department to

accomplish the goals of reducing "occurrence[s] of domestic
violence by increasing reporting and by identifying and
tracking repeat victims and/or offenders," and "increas[ing]
victims' access to supportive services by encouraging [them]
to report their abuse, thereby increasing arrest rates for
domestic offenders." (Am.Compl.¶ 10.) On June 22, 2012,
Thomas Anderson, Turczyn's former boyfriend and the father
of her daughter, broke into Turczyn's home armed with a 9
mm rifle. (*Id.* ¶ 11) Anderson repeatedly shot Turczyn, taking
her life in view of their four-year-old daughter, G.T. (*Id.*)
Anderson then dispatched himself. (*Id.*)

In the twelve months preceding this horrific event, Turczyn
made between five and ten complaints to Utica police
officers, "including informing them of a specific threat by
Anderson to kill her." (*Id.* ¶ 12.) Turczyn specifically told
Shanley "that Anderson was armed and had threatened to
kill her." (*Id.* ¶ 12(d).) Despite their knowledge of domestic
violence between Turczyn and Anderson, neither Shanley,
New York State Police, nor Utica Police took any steps to
arrest Anderson, investigate Turczyn's complaints, or follow-
up with Anderson "as is the policy and protocol of the
domestic violence unit." (*Id.* ¶ 14.)

On June 18, 2012, Shanley told Turczyn to seek an order of
protection, which she attempted to do, but was told by an
unknown person at the Oneida County Family Court to return
the following day because the court was " 'too busy.' " (*Id.*
¶¶ 15–16.) The following day, Turczyn left a voice message
for Shanley, explaining that she was unable to obtain an order
of protection and that Anderson had a gun and planned to
kill her that week. (*Id.* ¶¶ 16–18.) Despite her knowledge,
"Shanley took no action." (*Id.* ¶ 17.) Shanley also mistakenly
believed that Turczyn's issues with Anderson were outside of
the purview of Utica Police and should, instead, be dealt with
by New York State Police; however, "she did not inform any
other police agency or take any action herself." (*Id.* ¶¶ 18, 19,
20.)

#### B. *Procedural History*

Turczyn commenced this action by filing a complaint on
October 31, 2013. (Dkt. No. 1.) Defendants thereafter moved
to dismiss, (Dkt. No. 10.) In response, Turczyn filed an
amended complaint as of right, which is now the operative
pleading. (*See generally* Am. Compl.) In her amended
complaint, Turczyn alleges the following causes of action:
(1) a denial of substantive due process rights under the Fifth
and Fourteenth Amendments due to deliberate indifference;

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

Case 5:22-cv-01030-MAD-ML    Document 8    Filed 02/17/23    Page 29 of 135

(2) a *Monell*[2] claim against the City; (3) negligence; (4) a "derivative action" on behalf of G.T.; and (5) negligent infliction of emotional distress. (*Id.* ¶¶ 37–74.) Defendants now move to dismiss the amended pleading pursuant to Rules 8(a)(2) and 🚩12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 19.)

### III. *Standard of Review*

**\*2**  The standard of review under 🚩Fed.R.Civ.P. 12(b)(6) is well settled and will not be repeated here. For a full discussion of the standard, the court refers the parties to its prior decision in 🚩*Ellis v. Cohen & Slamowitz, LLP,* 701 F.Supp.2d 215, 218 (N.D.N.Y.2010).

### IV. *Discussion*

**A. *Preliminary Matters***
At the outset, it is noted that some of Turczyn's claims are deemed abandoned by her failure to oppose their dismissal. *See Barmore v. Aidala,* 419 F.Supp.2d 193, 201–02 (N.D.N.Y.2005) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim, and, in the Northern District of New York, is deemed consent to granting that portion of the motion." (internal citations omitted)); *Hanig v. Yorktown Cent. Sch. Dist.,* 384 F.Supp.2d 710, 723 (S.D.N.Y.2005) ("[B]ecause [the] plaintiff did not address [the] defendant's motion to dismiss with regard to [a particular] claim, it [wa]s deemed abandoned and ... dismissed."). In particular, Turczyn squarely opposed dismissal of her substantive due process claim as against Shanley, (Dkt. No. 20 at 8–12), and scarcely, but sufficiently to save the claim from dismissal for abandonment, offered reasons why her substantive due process claim as against the City should survive defendants' motion, (*id.* at 5–7). Aside from the substantive due process claim, Turczyn failed to offer any opposition to defendants' motion, which also sought dismissal of her pendant causes of action. (Dkt. No. 19, Attach. 6 at 31–40 & n. 15.) Accordingly, Turczyn's pendant state law claims, (Am.Compl.¶¶ 59–74), are dismissed.

Additionally, it is clear that the Police Department must be dismissed as urged by defendants, (Dkt. No. 19, Attach. 6 at 2 n. 2), because "a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence." *Varela v. City of Troy,* No. 1:10–cv–1390, 2014 WL 2176148, at \*6 (N.D.N.Y. May 22, 2014) (internal quotation marks omitted). As such, all claims as against the Police Department are dismissed.

The court also notes that both parties have submitted certain evidence that is outside of the pleadings (Dkt. No. 19, Attachs. 3, 4; Dkt. No. 20, Attachs. 1, 2.) Beginning with defendants, they submitted a January 2, 2013 stipulation of discontinuance, which, on its face, purports to memorialize McGregor's agreement to withdraw the notice of claim filed on behalf of Turczyn and to discontinue with prejudice, (Dkt. No. 19, Attach.3), and a December 28, 2012 letter, which appears to memorialize a conversation regarding the discontinuation of legal action and execution of a stipulation, (Dkt. No. 19, Attach.4). Relying on a single out-of-Circuit decision, *see Raines v. Haverford Coll.,* 849 F.Supp. 1009, 1010 (E.D.Pa.1994), which does not appear directly to support their position nor does it give this court confidence that the kinds of documents at issue here were contemplated by that decision, defendants assert that the documents may be considered on their motion to dismiss as "part of the record of this case." (Dkt. No. 19, Attach. 6 at 25 n. 11.) Turczyn argues that defendants' reliance on the stipulation is inappropriate at this juncture, yet she offers the affidavit of McGregor, submitted to dispute the validity of the stipulation, (Dkt. No. 20, Attach.1), without any explanation as to why the court should or may consider it. (Dkt. No. 20 at 12–13.)

**\*3**  The court has excluded from its consideration of this motion to dismiss the exhibits offered by defendants as well as the McGregor affidavit. *See* 🚩Fed.R.Civ.P. 12(d). The existence of some document or documents that may extinguish a plaintiff's claims, such as a release or stipulation of discontinuance, is an affirmative defense, *see Beede v. Stiefel Labs., Inc.,* No. 1:13–cv–120, 2014 WL 896725, at \*3 (N.D.N.Y. Mar.6, 2014), and " '[a]n affirmative defense may be raised by a pre-answer motion to dismiss under 🚩Rule 12(b)(6) ... if the defense appears on the face of the complaint,' " *Iowa Pub. Emps.'* 🚩*Ret. Sys. v. MF Global, Ltd.,* 620 F.3d 137, 145 (2d Cir.2010) (quoting 🚩*Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir.1998)).

Here, the stipulation defense is not apparent from the face of the amended complaint. Moreover, the court refuses to consider the documents in question as part of the record of this case, a proposition for which no in-Circuit authority has

Case 5:22-cv-01030-MAD-ML   Document 8   Filed 02/17/23   Page 30 of 135

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

been offered nor has any been discovered by this court. As such, the documents offered by defendants, (Dkt. No. 19, Attachs.3, 4), are not properly before the court, and their argument that Turczyn's claims must be dismissed because of those documents is rejected. McGregor's affidavit, (Dkt. No. 20, Attach.1), which was also improvidently submitted for consideration, is likewise excluded. The court now turns to the merits of defendants' arguments regarding the substantive due process and *Monell* claims.

### B. *Rule 8*

First, defendants argue that Turczyn's § 1983 due process claim is subject to dismissal under the Rule 8 plausibility analysis—specifically because of Turczyn's failure to allege facts supportive of a sufficient nexus between Shanley's omissions and Turczyn's death. (Dkt. No. 19, Attach. 6 at 23–24.) The court disagrees. The amended complaint plausibly alleges a causal connection between the conduct of defendants—their alleged conscience-shocking failure to protect Turczyn, (Am.Compl.¶ 49)—and her injuries, *i.e.,* the allegations plausibly suggest that defendants' acts were a substantial factor in bringing about Turczyn's injuries. *See* Gierlinger v. Gleason, 160 F.3d 858, 872 (2d Cir.1998) ("[I]n all § 1983 cases[ ] the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury."). Accordingly, this argument is rejected.

### C. *Rule 12(b)(6)*

Defendants argue that Turczyn has failed to state a substantive due process claim as against Shanley or the City. (Dkt. No. 19, Attach. 6 at 220, 26–31.) Defendants contend that Turczyn alleges only passive conduct on the part of Shanley that does not give rise to a substantive due process violation. (*Id.* at 10–12.) More generally, defendants assert that Turczyn has failed to plead facts to show "implicit prior assurances through repeated sustained inaction," and that, even if she did, the state action alleged does not rise to the level of conscience-shocking behavior. (*Id.* at 15–20.) Alternatively, defendants argue that Shanley is entitled to qualified immunity. (*Id.* at 20–23.) With respect to the City, defendants contend that Turczyn has failed to allege facts that support a claim of municipal liability. (*Id.* at 26–31.) For reasons explained below, defendants' motion is denied with respect to Turczyn's substantive due process claim against Shanley, but granted with respect to her *Monell* claim against the City.

**\*4** Only one relevant exception to the general rule that no substantive due process claim lies for a state's failure to protect an individual from private violence, *see* DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), potentially applies in this case. That exception imposes liability for failure to protect where state actors in some way affirmatively assist "in creating or increasing the danger to the victim." Okin v. Vill. of Cornwall–On–Hudson Police Dep't, 577 F.3d 415, 428 (2d Cir.2009) (internal quotation marks and citation omitted); *see* Pena v. DePrisco, 432 F.3d 98, 110 (2d Cir.2005). "[R]epeated, sustained inaction by government officials, in the face of potential acts of violence, might constitute 'prior assurances,' rising to the level of an affirmative condoning of private violence, even if there is no explicit approval or encouragement." Okin, 577 F.3d at 428 (quoting Dwares v. City of N.Y., 985 F.2d 94, 99 (2d Cir.1993)). Moreover, when "state officials communicate to a private person that he ... will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others, those officials can be held liable under section 1983 for injury caused by the misconduct" "even though none of the defendants [is] alleged to have communicated the approval explicitly." *Id.* at 428–29 (quoting Pena, 432 F.3d at 111)). In a nutshell, "[t]he affirmative conduct of a government official may give rise to an actionable due process violation if it communicates, explicitly or implicitly, official sanction of private violence." *Id.* at 429.

A successful substantive due process claim also requires that the plaintiff show "that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' " *Id.* at 431 (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). A hierarchy of intent provides guidance on the likelihood that a particular harm rises to the necessary level. Intentionally inflicted harms are most likely to meet the standard, while reckless and negligent inflictions of harm are each less likely, in graduated downward steps, to show conscience-shocking state action. *Id.* As for recklessly inflicted injuries, " '[d]eliberate indifference that shocks in one environment may not be so patently egregious in another.' " *Id.* (quoting Lewis, 523 U.S. at 850). Accordingly, the inquiry is highly fact specific.

Case 5:22-cv-01030-MAD-ML   Document 8   Filed 02/17/23   Page 31 of 135

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

Unlike *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005), or *Neal v. Lee County,* Civil Action No. 1:08CV262, 2010 WL 582437 (N.D.Miss. Feb.12, 2010)—cases in which police had limited interaction with either the victim or killer prior to the victim's demise, and upon which defendants rely for dismissal of the claim against Shanley, (Dkt. No. 19, Attach. 6 at 3–5, 7–8)—the allegations here go substantially farther. Turczyn alleges several occasions [3] when Shanley knew of Anderson's threatening acts and did nothing, which arguably communicated to him prior assurances that there would be no penalty to pay for his conduct. (Am.Compl.¶¶ 12–13.) "This is so even though none of the defendants are alleged to have communicated the approval explicitly." *Pena,* 432 F.3d at 111. *Okin* has specifically recognized the liability that may arise under these circumstances. *See* 577 F.3d at 428–29 (explaining that liability under § 1983 attaches when "state officials communicate to a private person that he ... will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others" (quoting *Pena,* 432 F.3d at 111)).

 **\*5** The amended complaint also pleads facts that demonstrate, at this juncture, egregious behavior that shocks the contemporary conscience. As in *Okin,* the allegations here tend to show that Shanley, who was tasked with accomplishing certain goals related to curbing domestic violence, was deliberately indifferent as to whether or not Anderson would make good on his multiple threats against Turczyn's life over a twelve-month-period. (Am.Compl.¶ ¶ 10, 12.) These allegations sufficiently support that Shanley's affirmative conduct was the product of deliberate indifference that shocks the conscience, and would provide a reasonable jury with a valid basis to so find. *See Conradt v. NBC Universal, Inc.,* 536 F.Supp.2d 380, 394–95 (S.D.N.Y.2008).

Finally, Shanley is not entitled to qualified immunity at this juncture. Her argument on this issue is two-fold. First, Shanley asserts that no constitutional violation occurred, and, second, she claims that, even if a constitutional violation occurred, the right was not clearly established. (Dkt. No. 19, Attach. 6 at 20–23.) The first prong of the argument is easily swept aside by reference to the preceding paragraphs that explain that the amended complaint alleges a cognizable

substantive due process violation. As for whether or not the right was clearly established, which is a prerequisite to qualified immunity, *see Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), this question has been resolved by the Second Circuit. On the issue, the court has explained that it is "clearly established," under the state-created danger theory, "that police officers are prohibited from affirmatively contributing to the vulnerability of a known victim by engaging in conduct, whether explicit or implicit, that encourages *intentional* violence against the victim, and as that is the substantive due process violation alleged here, qualified immunity does not apply." *Okin,* 577 F.3d at 434. Accordingly, Shanley is not entitled to qualified immunity at this time.

As for the City, defendants assert that Turczyn has failed to plead a *Monell* claim because the amended complaint merely alleges legal conclusions. (Dkt. No. 19, Attach. 6 at 26–31.) With respect to Turczyn's allegation that the City failed to properly train or supervise its employees, defendants contend that the amended complaint is too conclusory, but that, even if adequately pleaded, Turczyn's municipal liability claim must nonetheless fail because she has not alleged deliberate indifference. (*Id.* at 29–31.)

It is well settled that "the inadequacy of police training may serve as the basis for § 1983 liability ... where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Oh. v. Harris,* 489 U.S. 378, 380, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The deliberate indifference standard is "stringent" and requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson,* ——U.S. ——, ——, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (internal quotation marks and citation omitted). A showing of deliberate indifference requires that: (1) "a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the ... employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of N.Y.,* 974 F.2d 293, 297–98 (2d Cir.1992) (quoting *City of Canton,* 489 U.S. at 390 n. 10).

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

Case 5:22-cv-01030-MAD-ML  Document 8  Filed 02/17/23  Page 32 of 135

**\*6** Here, because Turczyn has failed to adequately plead that the City's failure to train and supervise amounted to deliberate indifference, she has failed to state a claim of municipal liability. The amended complaint uses the label "deliberate indifference" in reference to Turczyn's municipal liability claim and generically references the City's failure to properly train and supervise, but it fails to allege facts that support either conclusory notion. (Am.Compl.¶¶ 45, 52.) Turczyn's pleading failure mandates dismissal of her *Monell* claim against the City. *See* ⚠ *Gauthier v. Kirkpatrick,* Civil Action No. 2:13–cv–187, 2013 WL 6407716, at \*10 (D.Vt. Dec.9, 2013) (dismissing failure to train *Monell* claim because the plaintiff failed to plead facts that supported the deliberate difference elements); *Santos v. New York City,* 847 F.Supp.2d 573, 577 (S.D.N.Y.2012); *see also Worrell v. City of N.Y .,* No. 12–CV–6151, 2014 WL 1224257, at \*13 (E.D.N.Y. Mar. 24, 2014).

### V. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 19) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** with respect to all claims alleged as against the City of Utica Police Dept. and the Clerk is directed to terminate the City of Utica Police Dept. from this action; and

**GRANTED** with respect to Turczyn's *Monell* claim against the City (Am.Compl.¶ ¶ 51–58), which is hereby **DISMISSED WITHOUT PREJUDICE,** and the Clerk is directed to terminate the City of Utica from this action; and

**GRANTED** with respect to all of Turczyn's pendant state law claims, (Am.Compl.¶ ¶ 59–74), which are hereby **DISMISSED;** and **DENIED** in all other respects; and it is further

**ORDERED** that the sole remaining defendant, Shanley, shall file an appropriate responsive pleading within the time allotted by the rules; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Andrew T. Baxter in order to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum–Decision and Order to the parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 6685476

---

### Footnotes

1    The facts are presented in the light most favorable to plaintiff.

2    *See* 🚩 *Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

3    In fact, Turczyn claims that she lodged five to ten complaints—of which Shanley was aware—with the Utica Police within the twelve months preceding the murder. (Am.Compl.¶¶ 12, 13.) So many occurrences may amount to "repeated [and] sustained inaction ... in the face of potential acts of violence." 🚩 *Okin,* 577 F.3d at 428.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

Case 5:22-cv-01030-MAD-ML   Document 8   Filed 02/17/23   Page 33 of 135

2019 WL 974824
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jeramie WHITE, Plaintiff,

v.

SYRACUSE POLICE DEPARTMENT; Abraham
Mamoun, Syracuse Police Dept.; William Kittle,
Syracuse Police Dept.; Shawn Hauck, Syracuse
Police Dept.; Altimonda, Syracuse Police Dept.;
and Fiorini, Syracuse Police Dept., Defendants.

5:18-CV-1471 (GTS/DEP)
|
Signed 02/28/2019

**Attorneys and Law Firms**

JERAMIE WHITE, 18-B-0311, Plaintiff, Pro Se, Cayuga
Correctional Facility, P.O. Box 1186, Moravia, New York
13118.

**DECISION and ORDER**

Hon. Glenn T. Suddaby, Chief U.S. District Judge

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Jeramie White ("Plaintiff") against the
Syracuse Police Department and five of its employees
("Defendants"), is United States Magistrate Judge David
E. Peebles' Report-Recommendation recommending that (1)
Plaintiff's Complaint be accepted for filing by the Court
with respect to Plaintiff's Fourth Amendment cause of action
against Defendants Mamoun, Kittle, Hauck, Altimonda and
Fiorini, and (2) Plaintiff's remaining cause of action against
the Syracuse Police Department be dismissed with leave to
replead within thirty days of the issuance of an Order adopting
the Report-Recommendation. (Dkt. No. 9.) Plaintiff did not
submit an objection to the Report-Recommendation, and the
deadline by which to do so has expired. (*See generally* Docket
Sheet.) [1]

Based upon a review of this matter, the Court can find
no clear error in the Report-Recommendation: [2] Magistrate
Judge Peebles employed the proper standards, accurately
recited the facts, and reasonably applied the law to those
facts. As a result, the Court accepts and adopts the Report-
Recommendation for the reasons stated therein; Plaintiff's
Complaint is accepted for filing with respect to his Fourth
Amendment cause of action against Defendants Mamoun,
Kittle, Hauck, Altimonda and Fiorini; and Plaintiff's
remaining cause of action against the Syracuse Police
Department is dismissed with leave to replead within thirty
days of the issuance of this Decision and Order.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Peebles' Report-
Recommendation (Dkt. No. 9) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint is accepted for filing
with respect to Plaintiff's Fourth Amendment cause of action
against Defendants Mamoun, Kittle, Hauck, Altimonda and
Fiorini; and it is further

**\*2 ORDERED** that Plaintiff's remaining cause of action
against the Syracuse Police Department is **DISMISSED with
leave to replead within THIRTY (30) DAYS** of the issuance
of this Decision and Order.

**ORDERED** that, in the event Plaintiff files an Amended
Complaint within the above-referenced thirty-day period, it
shall be referred to Magistrate Judge Peebles for review; and
it is further

**ORDERED** that, in the event Plaintiff does not file an
Amended Complaint within the above-referenced thirty-
day period, this action shall move forward with respect to
his Fourth Amendment cause of action against Defendants
Mamoun, Kittle, Hauck, Altimonda and Fiorini, and the Clerk
of the Court is directed to issue summonses and USM-285
forms at that time for service by the U.S. Marshal Service.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 974824

## Footnotes

1    The Court notes that, on January 11, 2019, Plaintiff filed a letter from the City of Syracuse Citizen Review Board dated December 31, 2018, outlining its findings with respect to this matter. (Dkt. No. 10.) In its letter, the Citizen Review Board upheld Plaintiff's claim for excessive force against "Det. One," recommended a written reprimand against that individual, and absolved "Det. Two," "Sgt. One," and "Lt. One" from wrongdoing regarding the use of excessive force. (*Id.*) The Court does not liberally construe this letter as any sort of Objection to the Report-Recommendation.

2    When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

---

**End of Document**                                                          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:22-cv-01030-MAD-ML   Document 8   Filed 02/17/23   Page 35 of 135

Best v. Brown, Not Reported in Fed. Supp. (2019)

2019 WL 3067118
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Hilary A. BEST and All Persons
Similarly Situated, Plaintiffs,

v.

Richard A. BROWN, His Estate and
Successors in Office; The Queens County
District Attorneys Office, Defendants.

19-CV-3724 (WFK) (LB)
|
Signed 07/11/2019
|
Filed 07/12/2019

**Attorneys and Law Firms**

Hilary A. Best, Forest Hills, NY, pro se.

### MEMORANDUM & ORDER

WILLIAM F. KUNTZ, II, United States District Judge:

**\*1** On June 26, 2019, the *pro se* plaintiff, Hilary A. Best, purportedly on behalf of himself and "all others similarly situated," filed this action pursuant to 42 U.S.C. § 1983 against the Office of the Queens County District Attorney, and the recently-deceased Queens County District Attorney, Richard A. Brown. He alleges the deprivation of his constitutional rights and seeks damages. Plaintiff paid the filing fee to commence this action. For the reasons set forth below, the complaint is dismissed, but plaintiff is granted leave to amend within thirty days of the date of this Order.

### STANDARD OF REVIEW

A court must construe a *pro se* litigant's pleadings liberally, Erickson v. Pardus, 551 U.S. 89, 94, (2007); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), and a *pro se* complaint should not be dismissed without granting the plaintiff leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d

Cir. 1999) (internal quotation marks and citations omitted). Nevertheless, "a *pro se* plaintiff must still comply with the relevant rules of procedural and substantive law, including establishing that the court has subject matter jurisdiction over the action." Wilber v. U.S. Postal Serv., No. 10-CV-3346 (ARR), 2010 WL 3036754, at *1 (E.D.N.Y. Aug. 2, 2010) (internal quotation marks and citations omitted).

Even if a plaintiff has paid the filing fee, a district court may dismiss the case, *sua sponte*, if it determines that the action is frivolous. Fitzgerald v. First East Seventh Street Tenants Corp., 221 F.3d 362, 363-64 (2d Cir. 2000); *see* Mallard v. United States District Court, 490 U.S. 296, 307–08 (1989) (noting that "[28 U.S.C. §] 1915(d), for example, authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision"). "A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.' " Montero v. Travis, 171 F.3d 757, 760 (2d Cir. 1999) (quoting Neitzke v. Williams, 490 U.S. 319, 325, 327 (1989)). Indeed, "district courts are especially likely to be exposed to frivolous actions and, thus, have [a] need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources." Fitzgerald, 221 F.3d at 364. A cause of action is properly deemed frivolous as a matter of law when, *inter alia,* it is "based on an indisputably meritless legal theory"—that is, when it "lacks an arguable basis in law ..., or [when] a dispositive defense clearly exists on the face of the complaint." Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998).

### BACKGROUND

The complaint alleges:

Defendants have practiced a policy of depriving Plaintiffs of liberty without due process of law in violation of the 14th Amendment to the United States Constitution, by subjecting Plaintiffs to indictment upon felony complaint without a preliminary hearing or waiver thereof, in violation of CPL secs. 100.05, 180.10 through 180.80, and 190.55 (2)(a), and minimum due process of law requiring a hearing when a person faces a mass deprivation of liberty, as without bail pursuant to CPL 530.20.

Best v. Brown, Not Reported in Fed. Supp. (2019)

Case 5:22-cv-01030-MAD-ML    Document 8    Filed 02/17/23    Page 36 of 135

**\*2** Under color of state law, the defendants have pursued and obtained indictments against Plaintiffs within five (5) business days of arrest in order to prevent release pursuant to CPL sec. 180.80,[1] when although indictment within five (5) business days of arrest upon a felony complaint prevents a defendant's release upon his or her own recognizance pursuant to CPL sec. 180.80, nothing in the statute permits the omission of a preliminary hearing or waiver thereof.

Compl. at 3-4.

Plaintiff does not make any personal claims. He provides no information about whether, when or with what crime he was charged and/or convicted, or of what type of preliminary hearing he was deprived. He seeks to bring this claim on behalf of persons who were indicted by the Office of the Queens County District Attorney because, he alleges, the office has been violating the cited provisions since 1991.

### DISCUSSION

#### A. Claims on Behalf of Others
Plaintiff is a non-attorney proceeding *pro se* purporting to represent other similarly situated persons. Plaintiff may not bring this complaint on behalf of others without a lawyer. 28 U.S.C. § 1654; *see Berrios v. New York City Hous. Auth.,* 564 F.3d 130, 132 (2d Cir. 2009) ("[A]n individual generally has the right to proceed *pro se* with respect to his own claims or claims against him personally, [but] the statute does not permit unlicensed laymen to represent anyone else other than themselves."); *Iannaccone v. Law,* 142 F.3d 553, 558 (2d Cir. 1998) (holding that an unlicensed individual "may not appear on another person's behalf in the other's cause"). Thus, the complaint as to other plaintiffs is dismissed without prejudice. His class action certification request, to the degree he expresses one, is denied as moot.

#### B. Defendants are Immune from this Action
Plaintiff's claim for damages against the Office of the District Attorney, Queens County and Richard Brown, District Attorney Queens County ("Brown") in his official capacity are barred by the Eleventh Amendment to the United States Constitution. "Stated as simply as possible, the Eleventh Amendment means that, as a 'general rule, state governments may not be sued in federal court unless they have waived

their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Gollomp v. Spitzer,* 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* "Further, where a state official is sued for damages in his or her official capacity, such a suit is deemed to be a suit against the state and is barred by the Eleventh Amendment. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (citations omitted). Where a district attorney is sued for damages in his or her official capacity, immunity under the Eleventh Amendment may attach to bar the suit, as the suit is construed as being against the State of New York. *See Amaker v. N.Y. State Dep't of Corr. Servs.,* 435 F. App'x 52, 54 (2d Cir. 2011)(holding that a district attorney and an assistant district attorney "benefited from New York's Eleventh Amendment immunity against suit" because they were sued in their official capacities) (citing *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993)(holding that district attorney represents the state, not the county, and so is entitled to Eleventh Amendment immunity). Plaintiff's claim against Brown in his official capacity and the Office of the Queens County District Attorney are therefore barred by the Eleventh Amendment and is dismissed as frivolous. *See Ying Jing Gan v. City of New York,* 996 F.2d at 536 (stating that a district attorney in New York state is entitled to Eleventh Amendment immunity where plaintiff's "claims center[ ] ... on decisions whether or not, and on what charges to prosecute: and not where those claims focus on the administration of the district attorneys' office.); *Fitzgerald,* 221 F.3d at 364 (frivolous claims may be dismissed sua sponte even in fee-paid actions); *Montero,* 171 F.3d at 760 (a complaint is frivolous if the defendant is immune from suit).

**\*3** To the extent plaintiff seeks to sue Brown for damages in his individual capacity,[2] he has failed to allege any facts in support of his conclusion that Brown personally violated his constitutional rights. If Best seeks damages for Brown's decision to prosecute him, Brown would be entitled to absolute prosecutorial immunity. It is well-settled

Best v. Brown, Not Reported in Fed. Supp. (2019)

Case 5:22-cv-01030-MAD-ML   Document 8   Filed 02/17/23   Page 37 of 135

that prosecutors performing prosecutorial activities that are "intimately associated with the judicial phase of the criminal process" are entitled to absolute immunity from an action for damages under 🔖 § 1983. 🔖 *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976). A prosecutor thus has absolute immunity in connection with the decision whether to commence a prosecution. *See, e.g.,* 🔖 *Imbler v. Pachtman,* 424 U.S. at 431 (absolute immunity for "initiating a prosecution"); 🔖 *Barr v. Abrams,* 810 F.2d 358, 362 (2d Cir. 1987) (filing a criminal information); 🔖 *Ying Jing Gan v. City of New York,* 996 F.2d at 530 ("a prosecutor has absolute immunity for his decision as to what offenses are and are not to be charged."). If plaintiff seeks to assert a claim that Brown maintains or perpetuates an office-wide policy that deprived him of his constitutional rights, he has not plead any facts specific to *his* prosecution nor how the practice directly caused the alleged deprivation of *his* rights. In any event, even if plaintiff had alleged facts to support his contention that Brown maintained an unconstitutional policy as the "final policy authority" of the Queens County District Attorney's Office that violated plaintiff's constitutional rights, such a claim would amount to a claim against Brown as the official policymaker of the City, that is, a municipal liability claim against the City of New York, rather than a claim against Brown in his individual capacity. Thus, as currently stated, plaintiff's complaint against Brown in his individual capacity is dismissed as frivolous. 🔖 *Montero,* 171 F.3d at 760 (a complaint is frivolous if the defendant is immune from suit); 🔖 *Livingston v. Adirondack Beverage Co.,* 141 F.3d at 437.

### LEAVE TO AMEND

In light of plaintiff's *pro se* status, *Cruz v. Gomez,* 202 F.3d 593 (2d Cir. 2000) (*pro se* plaintiff should afforded opportunity to amend complaint prior to dismissal), plaintiff is afforded thirty days to amend his complaint. *See* Fed R. Civ. P. 15(a); 🔖 *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d at 795. In the amended complaint, plaintiff should name as proper defendants those individuals who have some personal involvement in the actions he alleges in the amended complaint and provide the dates and locations for each relevant event. To the best of his ability, plaintiff must describe each individual and the role she or he played in the alleged deprivation of his rights. If plaintiff cannot identify

the defendant(s) by name, he may set forth the allegations against that person and designate them as Jane Doe or John Doe, providing any identifying information available to him. And he must state facts to support the allegation of a constitutional violation. Essentially, the body of plaintiff's amended complaint must tell the Court: who violated his federally protected rights; what facts show that his federally protected rights were violated; when such violation occurred; where such violation occurred; and why plaintiff is entitled to relief.

### CONCLUSION

Accordingly, the complaint is dismissed as frivolous because the defendants are absolutely immune from suit. *Fitzgerald v. First East Seventh Street Tenants Corp.,* 221 F.3d at 363-64; 🔖 *Montero v. Travis,* 171 F.3d at 760.

In light of plaintiff's *pro se* status, however, plaintiff is granted thirty days to amend his complaint. Should plaintiff decide to file an amended complaint, it must be submitted within thirty days of this Order, be captioned "Amended Complaint," and bear the same docket number as this Order. Plaintiff is advised that the amended complaint will completely replace the original complaint, so plaintiff must include in it any allegations he wishes to pursue against proper defendants. To aid plaintiff with this task, the Clerk of Court is respectfully requested to provide a "Complaint for Violation of Civil Rights (Non-Prisoner Complaint)" form to plaintiff.

Further, if plaintiff fails to comply with this Order within the time allowed, the action shall be dismissed, and judgment shall enter.

Although plaintiff paid the filing fee to commence this action, if plaintiff requests *in forma pauperis* status for any appeal of this order, the Court certifies pursuant to 🔖 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith. 🔖 *Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

**\*4  SO ORDERED.**

### All Citations

Not Reported in Fed. Supp., 2019 WL 3067118

Best v. Brown, Not Reported in Fed. Supp. (2019)

Case 5:22-cv-01030-MAD-ML   Document 8   Filed 02/17/23   Page 38 of 135

## Footnotes

1    CPL § 180.80 provides in pertinent part that a defendant held in custody for "more than one hundred twenty hours or, in the event that a Saturday, Sunday or legal holiday occurs during such custody, one hundred forty-four hours, without either a disposition of the felony complaint or commencement of a hearing thereon" must be released by the local criminal court. "The purpose of CPL § 180.80 is 'to ensure that a defendant being held in custody on the basis of a felony complaint not be incarcerated for an excessive period of time prior to judicial determination that there is reasonable cause to believe that he committed a felony.' " *People v. Ijnace,* 174 Misc. 2d 850, 854–55, 667 N.Y.S.2d 229, 233 (Sup. Ct. 1997) (quoting *People ex rel. Suddith and Willard Cradle v. Sheriff of Ulster County,* 93 A.D.2d 954, 463 N.Y.S.2d 276 (3rd Dept. 1983)).

2    Plaintiff selects that he is bringing this complaint against Brown in his "individual capacity" on the form complaint. *See* Compl. at 2.

**End of Document**    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 992885
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Benjamin Samuel RICH, formerly
known as Samuel Guillaume, Plaintiff,
v.
State of NEW YORK, New York City; New
York City Police Department; New York County;
New York County District Attorney's Office;
Detective Michael Miller, Vincent Corrando, John
Passementi, Cyrus Vance, Jr., Shipla Kalra, David
Nasar, and Does 1–100, Inclusive., Defendants.

21 Civ. 3835 (AT)
|
Signed 03/31/2022

**Attorneys and Law Firms**

Benjamin Samuel Rich, Staten Island, NY, Pro Se.

Gee Won Cha, Julinda A. Dawkins, New York State Office
of the Attorney General, New York, NY, for Defendant State
of New York.

Andrew B. Spears, New York City Law Department, New
York, NY, for Defendants City New York, Michael Miller,
Vincent Corrando, John Passementi.

Patricia Jean Bailey, New York County District Attorney's
Office, New York, NY, for Defendants Cyrus Vance, Jr.,
David Nasar.

## ORDER

ANALISA TORRES, District Judge:

**\*1** This action arises from a 2016 arrest and prosecution
of Plaintiff *pro se*, Benjamin Samuel Rich, in New York
County. He brings claims against the State of New York (the
"State"); former New York County District Attorney ("DA")
Cyrus R. Vance, Jr. and two Assistant District Attorneys
("ADAs"), Shilpa Kalra and David Nasar, (collectively, the
"DA Defendants"); and the City of New York (the "City"),
the New York City Police Department (the "NYPD"), and
NYPD officers Michael Miller, Vincent Corrando, and John
Passementi (collectively, the "City Defendants"), pursuant to,

*inter alia*, 🚩42 U.S.C. §§ 1983, 🚩1985, and 1986, the
New York State Constitution, and New York common law.
*See generally* Compl., ECF No. 1. Before the Court are three
motions to dismiss Plaintiff's complaint pursuant to 🚩Rules
12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure,
brought by the State, ECF No. 20, the DA Defendants, ECF
No. 22, and the City Defendants, ECF No. 32.

For the reasons stated below, the State's motion to
dismiss is GRANTED, and Plaintiff's claims against the
State are DISMISSED. The DA Defendants' motion to
dismiss is GRANTED—Plaintiff's claims against Vance
are DISMISSED; and his claims against Kalra and Nasar
are DISMISSED except for Counts 3 and 4, which are
DISMISSED without prejudice to renewal in an amended
complaint. The City Defendants' motion to dismiss is
DENIED as to Count 4, and GRANTED in all other respects.
Plaintiff's claims against Passementi, the NYPD, and the City
are DISMISSED; and his claims against Miller and Corrando
are DISMISSED, except for Count 3, which is DISMISSED
without prejudice to renewal in an amended complaint.

## BACKGROUND [1]

On January 6, 2016, Plaintiff was at the Highline Ballroom
("the Highline"), a nightclub in Manhattan, as an invited
guest of Wasief Quahtan, a Highline employee. Compl. ¶ 24.
Quahtan and the club owner began arguing over "Quahtan['s]
[having brought] Plaintiff to the party." *Id.* ¶ 25. Security
staff, and an individual named Avery Jackson, asked Plaintiff
to leave. *Id.* ¶ 26. Plaintiff alleges that he was "forcibly
escorted" from the club, and that Jackson became "belligerent
and aggressive" towards him. *Id.* ¶ 27. Shortly thereafter, a
shooting occurred outside the Highline. *Id.* ¶ 28.

Plaintiff believes that Jackson "ran down the street and
jumped into a black sedan ... at the time the shots were fired."
*Id.* ¶ 37. He also states that there were "numerous witnesses"
to the shooting, including a "female 911 caller," who lived
"next door" to the Highline. *Id.* ¶ 36. In that 911 call, the
witness said that she had seen a "man jump into a black sedan
speeding down the street" after shots were fired. *Id.* Based
on this call, Plaintiff believes "it was more likely that it was
[ ] Jackson who fired the shots before jumping into the black
sedan to chase Plaintiff down." *Id.* ¶ 37.

**\*2**  The shooting was investigated by Detective Michael Miller, who interviewed Jackson. *Id.* ¶¶ 29–30. Jackson told Miller that he saw Plaintiff go to a car, "pull out a gun, and shoot in the direction of the Highline," and that Jackson "ran back into the club" when shots were fired. *Id.* ¶¶ 30, 37. But, Plaintiff alleges that many of Jackson's representations to Miller contradicted his initial statements to the NYPD officers who first responded to the shooting, as well as other eyewitness accounts. *See, e.g.,* ¶¶ 30–32. For instance, Plaintiff alleges that Jackson told the responding officers that Plaintiff was "escorted from the club because he was intoxicated," and that Plaintiff then "went to his car, [a Rolls Royce] removed a firearm ... and fired several shots." *Id.* ¶¶ 31, 46. But, Jackson told Miller that Plaintiff was "forcibly ejected from the club" after an altercation with its manager, that Plaintiff was "belligerent," and threatened that he had a gun. *Id.* ¶ 32. Plaintiff also contends that Jackson's statements were demonstrably false, because surveillance videos showed that Jackson "was the aggressor towards Plaintiff," and that Plaintiff was "calm, peaceful, and cooperative" when escorted from the club. *Id.* ¶¶ 32, 41.

Plaintiff alleges that Miller failed to conduct a thorough and complete investigation of the shooting, because he did not interview several witnesses, including the 911 caller. *Id.* ¶¶ 36–37, 39. Plaintiff also suggests that Miller obtained—but disregarded—surveillance video from the inside and the outside of the club that would have corroborated Plaintiff's version of events. *See id.* ¶¶ 40–43. Plaintiff also complains that Officer Vincent Corrando, Miller's supervisor, "approved all [of the] reports written" in the investigation and "should have notice[d] or known of all the inconsistencies and contradictory statements" in Miller's reports. *Id.* ¶ 95. And, Plaintiff alleges that Officer John Passementi "authorized DNA tests," which revealed that the DNA evidence recovered at the scene "did not match Plaintiff." *Id.* ¶ 96.

On January 9, 2016, Miller obtained a search warrant for Plaintiff's car, based on what Plaintiff contends were "false, misleading and/or embellished information" in the underlying affidavits. *Id.* ¶ 46. The next day, Jackson picked Plaintiff's mugshot out of a photo lineup. *Id.* ¶ 92. Plaintiff appears to argue that this lineup was unduly suggestive, because his "mugshot had a lighter background than the other photographs." *Id.* ¶ 92. The same day, Miller obtained a warrant for Plaintiff's arrest for attempted murder, assault, and weapons possession, and in February obtained additional search warrants for Plaintiff's cell phone and laptop, allegedly based, again, on false and misleading statements provided by

Miller and Jackson. *Id.* ¶¶ 45, 47. According to Plaintiff, no "physical evidence [ ] tie[d] him to any part of the shooting," *id.* ¶ 81, and the police did not recover a gun or find gunshot residue in Plaintiff's car, *id.* ¶ 91.

On January 22, 2016, a grand jury indicted Plaintiff for second-degree attempted murder, first-degree assault, and two counts of criminal possession of a weapon. *See id.* ¶¶ 45, 51. On January 27, 2016, Plaintiff was arrested. *Id.* ¶ 51. He was incarcerated until February 18, 2016, when he was released on bail. *Id.* ¶ 52.

In November 2016, Plaintiff was taken back into custody on suspicion of witness tampering, after Jackson allegedly made a "false[ ]" report to the DA's Office that Plaintiff had tried to contact him. *Id.* ¶¶ 53, 103. Plaintiff remained in jail until his trial, which began in June 2017. *Id.* ¶¶ 54, 64; *see also* Trial Tr. at 1, ECF No. 22-3.[2]

On March 26, 2016, ADAs Shilpa Kalra and David Nasar provided surveillance videos from the Highline to Plaintiff's counsel. Compl. ¶ 64. Plaintiff alleges, however, that the relevant video showed only "one (1) camera angle [out] of 14 camera angles." *Id.* He alleges that prosecutors did not provide videos from the thirteen additional camera angles until a week after trial commenced, even though these videos were collected from the Highline eighteen months earlier. Compl. ¶ 64. The trial court accordingly granted counsel's request to review the additional videos before conducting Jackson's cross-examination. Trial Tr. at 3. On direct examination, Jackson testified that he did not participate in escorting Plaintiff out of the club. *Id.* at 47–48.

**\*3**  On June 12, 2017, prior to Jackson's cross-examination, Plaintiff's counsel reported to the trial court that Jackson could be identified in the additional videos based on his clothing. *Id.* at 135. Nasar acknowledged that if Jackson was indeed visible in the videos, he was "doing a bunch of things contrary to what he testified about." *Id.*; *see also id.* at 136. The trial court then ordered that Jackson should be questioned, under oath, outside the jury's presence, about his clothing on the night in question, and whether he could identify himself on the videos, among other matters. *See id.* at 146–50, 152–54. Jackson was brought in, and warned about perjury. *See id.* at 154–56. Jackson identified himself on the videos wearing a jacket and a light-colored shirt. *See id.* at 156–59. The court then adjourned the proceedings. *See id.* at 159. When the court resumed, Jackson, through counsel, invoked his Fifth

Amendment right against self-incrimination, *id.* at 176, and the court declared a mistrial, *id.* at 186–88.

Plaintiff's counsel then moved to dismiss the indictment against Plaintiff on two grounds: first, that it was based on false testimony, and second, because of prosecutorial misconduct. Compl. ¶ 100. On October 17, 2017, Kalra consented to dismissal of the indictment on the first ground, but opposed the assertion of prosecutorial misconduct. Dismissal Tr. at 12–13, 15–16. The court dismissed the indictment, but the presiding judge stated he did not "see any prosecutorial misconduct." *Id.* at 16.

On March 12, 2021, over three years after the indictment was dismissed, Plaintiff commenced this action. Compl. Defendants move separately to dismiss the claims against them. ECF Nos. 20, 22, 32. The Court considers each motion in turn.

## DISCUSSION

### I. Legal Standard

#### A.  Rule 12(b)(1)

An action should be dismissed pursuant to  Rule 12(b)(1) where it is apparent that the court lacks subject matter jurisdiction—that is, the statutory or constitutional power— to adjudicate it. *See*  Fed. R. Civ. P. 12(b)(1); *Thomas v. Metro. Corr. Ctr.*, No. 09 Civ. 1769, 2010 WL 2507041, at *1 (S.D.N.Y. June 21, 2010). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A district court must consider a challenge to subject matter jurisdiction before addressing other grounds for dismissal. *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

On a  Rule 12(b)(1) motion, the Court must accept all material factual allegations as true.  *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). It may not, however, "draw inferences ... favorable to [the] plaintiff[ ]" on such a motion. *Id.* And, the Court may consider evidence outside the pleadings to resolve disputed factual issues relating to jurisdiction. *See id.*

#### B.  Rule 12(b)(6)

To survive a  Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions."  *Twombly*, 550 U.S. at 555. The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *ATSI Commc'ns, Inc.*, 493 F.3d at 98.

On a  Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon. *See*  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Additionally, because Plaintiff proceeds *pro se*, the Court is obligated to construe his submissions "liberally and interpret[ ] [them] to raise the strongest arguments they suggest." *Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted). And, on a motion to dismiss, the Court may appropriately consider a *pro se* plaintiff's opposition papers to "supplement or clarify" the allegations in their complaint. *Sommersett v. City of N.Y.*, No. 09 Civ. 5916, 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) (citation omitted).

### II. Duplicative and Improper Claims

**\*4**  Count 7 of the complaint asserts a claim under  18 U.S.C. § 245 for the deprivation of rights under the color of law. Compl. ¶¶ 148–51. But, no private right of action exists under this federal criminal statute, and accordingly, Plaintiff cannot raise a cognizable claim under it. *See Corrado v. State of N.Y. Univ. Stony Brook Police*, No. 15 Civ. 7443, 2016 WL 4179946, at *3 (E.D.N.Y. Aug. 5, 2016). Count 7 is, accordingly, DISMISSED with prejudice.

Further, the Court finds that Count 9 of the complaint— fraudulent misrepresentation under  § 1983, Compl. ¶¶ 157–63—is duplicative of Count 4—deprivation of a fair trial under  § 1983, *id.* ¶¶ 133–37—because both seek redress for violations of Plaintiff's liberty interests arising from the

alleged "fabrication of evidence by a government officer." *See Zahrey v. Coffey*, 221 F.3d 342, 349–50 (2d Cir. 2000). Count 9 is, accordingly, DISMISSED with prejudice.

Finally, three of Plaintiff's claims—Counts 4, 5, and 6— include both federal constitutional claims and analogous state constitutional claims. Compl. ¶¶ 133–47. The New York State Constitution "provides a private right of action where remedies are otherwise unavailable at common law or under § 1983." *Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016). But, where alternative remedies are available under the federal civil rights statutes, including § 1983, courts must dismiss the plaintiff's state constitutional claims. *Id.* Because § 1983 provides a remedy for all of Plaintiff's alleged federal constitutional violations, any analogous state constitutional claims are duplicative. Accordingly, the state constitutional claims pleaded in Counts 4, 5, and 6 are DISMISSED with prejudice.

III. The State's Motion

The State moves to dismiss the complaint under Rule 12(b)(1), on the ground that the Eleventh Amendment bars Plaintiff's claims against it by virtue of sovereign immunity. State Mem. at 3, ECF No. 21. The Court agrees.

The Eleventh Amendment bars federal courts from exercising jurisdiction over claims against states. U.S. CONST. AMEND. XI. This extends to a state sued by its own citizens, *see Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–73 (2000), and state agencies, *see Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 480 (1987). There are only limited exceptions to this rule, none of which are applicable here.

First, a state may waive its Eleventh Amendment defense. *See Coll. Sav. Bank v. Fla. Prepaid Postsec. Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Here, the State has not explicitly waived its immunity, or consented to be sued. *See* State Mem. at 3. And, by filing a motion to dismiss, rather than an answer to the complaint, the State cannot be said to have taken actions inconsistent with an assertion of immunity. *Cf. Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002) (finding waiver of immunity where state removed action to federal court, then asserted immunity).

Second, Congress may abrogate the states' immunity from suit through statute. *Kimel*, 528 U.S. at 80. But, Congress has not done so for claims brought under § 1983, *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), § 1985, *see Robinson v. Allstate Ins. Co.*, 508 F. App'x 7, 9 (2d Cir. 2013), or § 1986, *Medina v. Cuomo*, No. 15 Civ. 1283, 2015 WL 13744627, at *6–7 (N.D.N.Y. Nov. 9, 2015). In the "absence of [the State's] consent," accordingly, such claims are "proscribed by the Eleventh Amendment." *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).

**\*5** Finally, the Eleventh Amendment does not bar a "suit against a state official when that suit seeks prospective injunctive relief." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996); *see also Ex parte Young*, 209 U.S. 123 (1908). But here, Plaintiff seeks only money damages, and retrospective declaratory and equitable relief. Compl. § IX. And, Eleventh Amendment immunity shields states from claims for money damages, *Liner v. Hochul*, No. 21 Civ. 11116, 2022 WL 826342, at *1 (S.D.N.Y. Mar. 17, 2022), and "declaratory relief dealing solely with past violations," *Medina*, 2015 WL 13744627, at *7. Although Plaintiff demands "affirmative relief necessary to eradicate the effects of Defendants' unlawful practices," *see* Compl. § IX(B), he does not allege any present violations of his rights, *see id. See Medina*, 2015 WL 13744627, at *7 (noting that "declaratory relief where there is no present violation, is also barred under the Eleventh Amendment"). Accordingly, this exception does not preclude the State's immunity defense in this matter.

Where a defendant is found to have sovereign immunity from suit, the Court is deprived of subject-matter jurisdiction under Rule 12(b)(1). *McGinty v. New York*, 251 F.3d 84, 89, 101 (2d Cir. 2001). Accordingly, because the State is immune from liability on all of Plaintiff's claims under the Eleventh Amendment, its motion to dismiss is GRANTED. And, because amendment would be futile, Plaintiff's claims against the State are DISMISSED with prejudice to renewal. [3]

IV. The DA Defendants' Motion

Plaintiff raises claims against the DA Defendants "in their individual capacities"[4] arising *inter alia* under 🚩 § 1983, 🚩 § 1985, and § 1986,[5] based on three main factual assertions. *See generally Compl.* First, Plaintiff alleges that Kalra and Nasar wrongfully chose to prosecute him, despite the lack of physical evidence tying him to the shooting. Compl. ¶ 81. Second, Plaintiff asserts that Kalra and Nasar intentionally withheld exculpatory surveillance videos until the middle of his trial, *see id.* ¶¶ 75–76, 78. Third, Plaintiff alleges that the "[p]rosecuting [a]ttorneys" "coached" Jackson to give false testimony to the grand jury that indicted him. *Id.* ¶¶ 50–51.

### A. Absolute Immunity

**\*6**  The DA Defendants argue that Plaintiff's claims are barred by absolute and qualified prosecutorial immunity. DA Defs. Mem. at 10–12, ECF No. 22-1. To the extent Plaintiff's claims are predicated on his allegations that Kalra and Nasar wrongfully chose to prosecute him and withheld allegedly exculpatory evidence, the Court agrees.

### 1. Federal Claims

Although 🚩 § 1983 has no immunities on its face, the Supreme Court has held that, when Congress initially enacted the statute, it did not intend to abrogate existing immunities established at common law. *See* 🚩 *Imbler v. Pachtman*, 424 U.S. 409, 418 (1976). Thus, both absolute and qualified immunity are applicable defenses to 🚩 § 1983 claims. *See* 🚩 *Bernard v. Cty. of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004). Prosecutors are entitled to "absolute immunity" from liability when they function as advocates for the state in circumstances "intimately associated with the judicial phase of the criminal process." 🚩 *Imbler*, 424 U.S. at 430. But, prosecutors are entitled only to "qualified immunity" when they perform "investigative functions" normally undertaken by a police officer. 🚩 *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Under the doctrine of qualified immunity, an official is immune from liability "only when in light of clearly established law and the information the official possesses, it was objectively reasonable for him to think that his actions were lawful." 🚩 *Hill v. City of N.Y.*, 45 F.3d 653, 663 (2d Cir. 1995).

Courts employ a "functional approach" to determine the availability of absolute immunity, looking to "the nature of the function performed, not the identity of the actor who performed it." 🚩 *Buckley*, 509 U.S. at 269 (citations omitted). And, although the party claiming absolute immunity bears the burden of establishing its applicability, *see* 🚩 *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996), if the court finds that that the conduct at issue is covered by absolute immunity, then the actor is shielded from liability for damages no matter "how[ ] erroneous the act ... and how[ ] injurious ... its consequences." 🚩 *Cleavinger v. Saxner*, 474 U.S. 193, 199–200 (1985) (citation omitted); *see also* 🏳 *Anilao v. Spota*, No. 19 Civ. 3949, 2022 WL 697663, at \*4 (2d Cir. Mar. 9, 2022).

Plaintiff first alleges that Kalra and Nasar improperly chose to prosecute him, despite a lack of physical evidence tying him to the crime. Compl. ¶ 81. But, prosecutors are immune from suit for decisions regarding "whether and when to prosecute," 🚩 *Imbler*, 424 U.S. at 430–31 n.32–33, even where they may prosecute an innocent individual, *Schmueli*, 424 F.3d at 237–39. Kalra and Nasar are, therefore, entitled to absolute immunity to the extent Plaintiff's claims are based on their decision to prosecute him.[6]

Second, Plaintiff alleges that Kalra and Nasar intentionally withheld exculpatory surveillance videos until the middle of trial, Compl. ¶¶ 75–76, 78. But again, prosecutors are entitled to absolute immunity for all decisions taken "in their prosecutorial capacity, including decisions regarding which evidence should be disclosed to a criminal defendant." 🚩 *Newson v. City of N.Y.*, No. 16 Civ. 6773, 2019 WL 3997466, at \*3 (E.D.N.Y. Aug. 23, 2019). This is true even where information was deliberately withheld, 🚩 *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 640 (E.D.N.Y. 2017), or where such withholding violated the defendant's constitutional rights, *see* 🚩 *Warney v. Monroe Cnty.*, 587 F.3d 113, 125 (2d Cir. 2009). Accordingly, Kalra and Nasar have absolute immunity to the extent any of Plaintiff's claims are predicated on a violation under this factual allegation.

**\*7**  Finally, Plaintiff alleges that the "Prosecuting Attorneys" coached Jackson to give false testimony to the grand jury, which then formed the basis for his indictment. Compl. ¶¶ 50–51. Prosecutors generally only have qualified immunity for actions taken before there is probable cause to arrest a defendant, because they are performing an

investigative function, rather than acting as advocates. *See* Hill, 45 F.3d at 661; Buckley, 509 U.S. at 273. And, although "knowingly presenting evidence" to a grand jury is considered the "core of a prosecutor's role as an advocate," Bernard, 356 F.3d at 503, the Second Circuit has distinguished between a prosecutor's knowing presentation of false evidence to the grand jury—which is still entitled to absolute immunity—from a prosecutor's deliberate fabrication of evidence, Hill, 45 F.3d at 662–63 (finding that where prosecutor deliberately manufactured evidence to establish probable cause for plaintiff's arrest, his conduct was investigatory, regardless of whether, when the evidence was manufactured, the prosecutor intended to present it to the grand jury). In *Hill*, the Second Circuit also established that "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of qualified immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." *Id.* at 663.

As in *Hill*, Plaintiff alleges that the prosecutors deliberately participated in the fabrication of false evidence by coaching a material witness to give perjured testimony to the grand jury, so that the jury would return an indictment. Compl. ¶¶ 50–51. Allegations that the prosecution falsified evidence are distinct from allegations that the prosecution merely presented evidence they knew to be false. *Compare* Hill, 45 F.3d at 662–63, with Urrego v. United States, No. 00 Civ. 1203, 2005 WL 1263291, at *2 (E.D.N.Y. May 27, 2005) (prosecutors receive absolute immunity for claims predicated on "false presentation of evidence to a grand jury"). And, considering the Court's obligation to liberally construe Plaintiff's pleadings and afford every reasonable inference in his favor at this stage, the Court concludes the DA Defendants have not established that they were acting as "advocates," rather than "investigators," when they engaged in the challenged conduct. Hill, 45 F.3d at 660 (officials asserting absolute immunity bear the burden of establishing it for the action in question). And, accepting the facts in the complaint as true, the DA Defendants would not be entitled to even qualified immunity, because it is objectively unreasonable for them to have knowingly coached a witness to give false testimony before a grand jury. *See* Cipolla v. Cty. of Rensselaer, 129 F. Supp. 2d 436, 456 (N.D.N.Y. 2001) (not "objectively reasonable" to believe presenting or

soliciting perjured testimony did not violate plaintiff's clearly established rights). Accordingly, to the extent that Counts 3, 4, 5, 6, and 8 are predicated on the claim that the DA Defendants coached Jackson to give false testimony, they are not entitled to either absolute or qualified immunity.

### 2. State Claims

Plaintiff raises state-law claims against the DA Defendants in Counts 10 and 14 of the complaint. Compl. ¶¶ 164–67, 182–85. As with federal law, under New York law, a district attorney prosecuting crime is performing a quasi-judicial function, and, as such, is entitled to absolute immunity. Arteaga v. State, 72 N.Y.2d 212, 217 n.1 (N.Y. 1988). But, unlike federal law, prosecutors are absolutely immune for official acts in both the prosecution and investigation of criminal charges. *See* Moore v. Dormin, 173 Misc. 2d 836, 843, (N.Y. Sup. Ct. 1997), *aff'd as modified*, 252 A.D.2d 421 (N.Y. App. Div. 1998). A prosecutor does not receive absolute immunity, however, "when knowingly acting in violation of law." *Id.* As with Plaintiff's federal claims, to the extent his state law claims against the DA Defendants are predicated on his allegations that they improperly targeted him for prosecution or deliberately withheld exculpatory evidence, the DA Defendants are entitled to absolute immunity. But, construing Plaintiff's third allegation liberally, he essentially claims that the prosecutors knowingly acted in violation of the law by suborning perjury. The Court cannot conclude, therefore, that the DA Defendants are entitled to absolute immunity as a matter of state law to the extent Counts 10 and 14 rest on this allegation. [7]

### B. Time Bar

**\*8** The DA Defendants argue that Plaintiff's claims are untimely. DA Defs. Mem. at 6–8. With the exception of Counts 3 (§ 1983 malicious prosecution) and 4 (§ 1983 deprivation of a fair trial), the Court agrees.

### 1. Federal Claims

Claims arising under §§ 1983 and 1985, when brought in this district, are governed by New York's three-year statute of limitations for personal injury actions, N.Y. C.P.L.R. §

214; *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (citation omitted); *Hernandez-Avila v. Averill,* 725 F.2d 25, 27 n.3 (2d Cir. 1984). But, claims under § 1986 have a one-year statute of limitations, *see* 42 U.S.C. § 1986. Federal courts are also obligated to apply New York's tolling rules.

*Bd. of Regents of Univ. of the State of N.Y. v. Tomanio*, 446 U.S. 478, 483 (1980).

On March 20, 2020, then-Governor Andrew Cuomo issued Executive Order 202.8, which tolled the statute of limitations in New York in light of the COVID-19 pandemic. 9 N.Y.C.R.R. § 8.202.8. Subsequent orders extended the tolling period until November 3, 2020. Exec. Order 202.67 (Oct. 4, 2020). Contrary to the DA Defendants' assertion, *see* DA Defs. Mem. at 7–8, other courts in this district have uniformly concluded that Executive Order 202.8 applies to federal cases applying New York's statute of limitations, including for § 1983 claims. *See, e.g., Lewis v. Westchester Cnty.*, No. 20 Civ. 9017, 2021 WL 3932626, at *2 n.3 (S.D.N.Y. Sept. 2, 2021).[8] The Court concludes, therefore, that Executive Order 202.8 tolls the statute of limitations for Plaintiff's §§ 1983 and 1985 claims, which apply New York's three-year limitations period—but not Plaintiff's § 1986 claims, because the applicable statute of limitations for that claim is found in the federal statute itself.

Section 1983 claims based on malicious prosecution or deprivation of a fair trial accrue when the underlying criminal action against the plaintiff is "favorably" terminated, rather than at the time of arrest. *Sharp v. Cnty. of Putnam*, No. 18 Civ. 780, 2019 WL 2250412, at *4 (S.D.N.Y May 24, 2019); *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 394 (S.D.N.Y. 2016). The dismissal of an indictment constitutes the termination of a proceeding. *Sharp*, 2019 WL 2250412, at *4–5. Applying these principles, Plaintiff's § 1983 claims for malicious prosecution (Count 3) and denial of a fair trial (Count 4) accrued on October 17, 2017, the date the trial court dismissed the indictment against him. Dismissal Tr. at 5. And, although the statute of limitations would have expired on October 17, 2020, New York's COVID-19 tolling rule extended the limitations period until June 2, 2021.[9] Because Plaintiff commenced this suit on March 12, 2021, Counts 3 and 4 are timely.

**\*9** By contrast, a § 1983 abuse-of-process claim accrues when the criminal process is "set in motion—typically at arrest—against the plaintiff." *Hadid v. City of N.Y.*, No. 15 Civ. 19, 2015 WL 7734098, at *5 (E.D.N.Y. Nov. 30, 2015), *aff'd* 730 F. App'x 68 (2d Cir. 2018). Because Plaintiff was arrested on January 27, 2016, the relevant statute of limitations for Count 8, § 1983 abuse of process, expired on January 27, 2019, and COVID-19 tolling provisions are, therefore, inapplicable. Accordingly, this claim is DISMISSED with prejudice as untimely.

Section 1985(3) conspiracy claims accrue "at the time of the events that caused the injury." *Panetta v. Cassel*, 20 Civ. 2255, 2020 WL 2521533, at *5 (S.D.N.Y. May 18, 2020). The existence of a conspiracy "does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs. It is the wrongful act, not the conspiracy, which is actionable, whether the act is labelled a tort or a violation of [federal civil rights statutes]." *Singleton v. City of N.Y.*, 632 F.2d 185, 192 (2d Cir. 1980) (citation omitted). As discussed, the single allegation that escapes absolute immunity—and therefore is the only remaining basis for Plaintiff's claims against the DA Defendants—is that those defendants suborned perjury in the grand jury proceedings by coaching Jackson to give false testimony, resulting in Plaintiff's indictment and arrest. Plaintiff's § 1985(3) claim—Count 5 of the complaint—accrued no later than January 27, 2016, the date of his arrest—which again, applying a three-year statute of limitations untouched by COVID-19 tolling provisions, renders it untimely. Count 5 is, accordingly, DISMISSED with prejudice.

Similarly, Count 6, Plaintiff's § 1986 conspiracy claim, accrued when Plaintiff knew, or had reason to know of the harm or injury. *Young v. Lord & Taylor, LLC*, 937 F. Supp. 2d 346, 354 (E.D.N.Y. 2013). Plaintiff knew of the injury by his arrest date. Applying § 1986's one-year statute of limitations, any § 1986 claim Plaintiff brought after January 27, 2017, is untimely.[10] Accordingly, Count 6 is DISMISSED with prejudice.

### 2. State Claims

Counts 10 and 14 of the complaint—both state common-law claims—are also time-barred. "Under New York law, a plaintiff asserting tort claims against the City or its

employees," as well as against municipal officials like district attorneys, "must file a notice of claim within [90] days after the incident giving rise to the claim and commence the action within a year and [90] days from the date of the incident." *Brown v. City of N.Y.*, No. 18 Civ. 3287, 2020 WL 1819880, at \*7 (S.D.N.Y. Apr. 9, 2020) (citing 🚩 N.Y. Gen. Mun. Law §§ 50-e(1)(a), 🚩 50-i(1)); *see also* 🚩 *Gonzalez v. City of N.Y.*, No. 94 Civ. 7377, 1996 WL 227824, \*2 (S.D.N.Y. May 3, 1996). Plaintiff asserts that he filed the requisite notice of claim with the City on January 16, 2018—720 days after his arrest, and 91 days after the dismissal of the indictment. Compl. ¶ 16. Plaintiff did not commence this action until March 12, 2021. *See* Compl. Therefore, Plaintiff neither timely filed a notice of claim within 90 days, nor did he commence this lawsuit within a year and 90 days after the date the indictment was dismissed—the last date that could possibly serve as the trigger for the statute of limitations. Failure to comply with the mandatory notice of claim requirements is a basis for dismissal of a plaintiff's claims. *Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003). The Court, accordingly, concludes that Counts 10 and 14 are also time-barred, and therefore, these claims are DISMISSED with prejudice.

### C. Personal Involvement

**\*10** Liability under 🚩 § 1983 must be premised on a defendant's direct, personal involvement in the alleged violations. *See* 🚩 *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). A defendant cannot be held vicariously liable under 🚩 § 1983 for employing or supervising an employee that violated the plaintiff's rights—rather, a plaintiff must plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 🚩 *Iqbal*, 556 U.S. at 676.

As to Vance, Plaintiff only alleges that he served as the DA of New York County. Compl. ¶ 11. Vance may not be held liable for merely employing or supervising Kalra and Nasar. *See* 🚩 *Iqbal*, 556 U.S. at 676. And, Plaintiff neither pleads that Vance was personally involved in investigating the shooting or prosecuting him, nor is there any evidence in the record to support such a finding. Accordingly, Plaintiff's claims against Vance are DISMISSED with prejudice, because given the lack of evidence of Vance's personal involvement, the Court

finds that granting leave to amend would be futile. 🚩 *Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011).

Plaintiff similarly fails to specify Kalra and Nasar's personal involvement in his claimed constitutional violations, stating only that the "Prosecuting Attorneys" coached Jackson to provide testimony. Compl. ¶ 50. But, given Plaintiff's position as a *pro se* litigant, the Court recognizes that there may be additional information made available to Plaintiff through discovery that would enable Plaintiff to assert claims directly against Kalra and Nasar, such as if, for example, either of them prepared Jackson to testify. By **April 15, 2022**, accordingly, the DA Defendants shall, through counsel, inform Plaintiff and the Court whether Kalra or Nasar prepared Jackson to testify before the grand jury with respect to any potential criminal charges against Plaintiff, and/or conducted an examination of Jackson before the grand jury. No later than **May 16, 2022**, Plaintiff shall file an amended complaint, alleging with specificity Kalra and Nasar's direct, personal involvement in either "coaching" Jackson to testify falsely before the grand jury, or deliberately eliciting false testimony from Jackson during the grand jury proceedings. In addition, because, as detailed *infra* at 25–26, the Court finds that Plaintiff's malicious prosecution claim is deficient because he failed to allege that the underlying criminal proceedings terminated in his favor, an argument raised by the City Defendants but not the DA Defendants, any amended malicious prosecution claim that Plaintiff wishes to assert against Kalra and Nasar should also address this issue. Failure to do so shall result in dismissal with prejudice of Plaintiff's remaining claims against Kalra and Nasar.

### V. City's Motion to Dismiss

Plaintiff brings claims against the City Defendants, on the grounds that (1) Miller failed to conduct a thorough and complete investigation of the shooting, by not interviewing several witnesses, including the 911 caller, Compl. ¶¶ 36–37, 39; (2) in his investigation, Miller obtained—but disregarded—surveillance video from both the inside and outside of Highline Ballroom, *id.* ¶¶ 40–43; (3) that Miller "used his own added facts and embellished statements" in his investigative reports to target Plaintiff as the sole suspect in the shooting, *id.* ¶ 44, *see also* ¶ 39; (4) that Corrando, as Miller's supervisor, approved his investigative reports but failed to notice the inconsistencies and contradictions therein, *id.* ¶ 95; and (5) that Passamenti "authorized DNA tests," which revealed that the DNA evidence recovered at the scene "did not match

Plaintiff," *id.* ¶ 96. The Court addresses each remaining [11] cause of action.

## A. Time Bar

### 1. 🚩 Section 1983 Claims

**\*11** Plaintiff brings claims under 🚩 § 1983 for unlawful search and seizure (Count 1); false arrest (Count 2); malicious prosecution (Count 3); deprivation of a fair trial (Count 4); and abuse of process (Count 8). As noted, 🚩 § 1983 claims are subject to a three-year statute of limitations in this district. *See supra* at 15. And, for the reasons discussed with respect to the DA Defendants, the Court concludes that Counts 3 and 4 were timely pleaded. *See supra* at 16–17.

A 🚩 § 1983 unlawful search and seizure claim, however, accrues on the date the allegedly unlawful search occurred. *McClanahan v. Kelly*, No. 12 Civ. 5326, 2014 WL 1317612, at *4 (S.D.N.Y. Mar. 31, 2014). Plaintiff alleges that his property was searched on January 9, February 12, and February 15, 2016. Compl. ¶¶ 46–47. The applicable statute of limitations, therefore, expired no later than February 15, 2019, nearly two years before Plaintiff brought suit. Plaintiff's claims are, therefore, untimely, and Count 1 is DISMISSED with prejudice as time-barred.

🚩 Section 1983 false arrest claims and abuse-of-process claims accrue from the date of Plaintiff's arrest. *See Rivera v. City of N.Y.*, No. 16 Civ. 9709, 2019 WL 252019, at *4 (S.D.N.Y. Jan. 17, 2019) (false arrest); *Anderson v. Cnty. of Putnam*, No. 14 Civ. 7162, 2016 WL 297737, at *3 (S.D.N.Y. Jan. 22, 2016) (abuse-of-process). Plaintiff was arrested on January 27, 2016, and therefore, any such claims should have been brought no later than January 27, 2019. Counts 2 and 8 are, accordingly, DISMISSED with prejudice as untimely.

### 2. 🚩 Sections 1985(3) and 1986 Claims

Liberally construing the complaint, in Count 5, Plaintiff sets forth a conspiracy cause of action under 🚩 § 1985(3), alleging that the City Defendants engaged in a conspiracy to have Plaintiff wrongfully convicted, *see* Compl. ¶ 97. This claim appears predicated on the NYPD investigation into the January 6, 2016 shooting, and Miller's alleged embellishment of information, and focus on Plaintiff as the sole suspect. *Id.* ¶¶ 36–37, 39, 46, 90. Plaintiff also raises a failure-to-intervene claim under § 1986 (Count 6), seemingly arising from Corrando's alleged failure to notice the inconsistencies and contradictory statements allegedly included in Miller's police reports. *Id.* ¶ 95.

🚩 Section 1985(3) claims accrue "at the time of the events that caused the injury," and are subject to a three-year statute of limitations, *Panetta*, 2020 WL 2521533, at *5. Section 1986 claims based on a failure to intervene accrue when the defendant fails to intervene, *see* 🚩 *Thomas v. City of Troy*, 293 F. Supp. 3d 282, 303 (N.D.N.Y. 2018), and must be brought within one year, *see* 42 U.S.C. § 1986. Plaintiff's claims each began accruing no later than January 27, 2016, the date of Plaintiff's arrest, because Plaintiff does not suggest that any investigation took place after that date. The applicable limitations period extends no later than January 27, 2019, for Plaintiff's 🚩 § 1985(3) claim, and January 27, 2017 for Plaintiff's 🚩 § 1986 claim, two and four years, respectively, before the complaint was filed. Counts 5 and 6 are, therefore, DISMISSED with prejudice as time-barred.

### 3. State Claims

To the extent Plaintiff's state common-law claims, asserting various types of negligence, arise from the NYPD investigation into the shooting on January 6, 2016; the searches of Plaintiff's property on January 9, February 12, and February 15, 2016; and Plaintiff's arrest on January 27, 2016, Plaintiff was required to file a notice of claim within 90 days of those events, *see* 🚩 N.Y. Gen. Mun. L. § 50-e. As noted, Plaintiff did not file a notice of claim with the City until January 16, 2018—one year and eleven months after the latest of those dates. Compl. ¶ 16. Accordingly, each of Plaintiff's negligence claims (Counts 10–14) are DISMISSED with prejudice. [12]

### B. Claim Against the City [13]

**\*12** The Court reads Plaintiff's complaint as claiming, under 🚩 *Monell v. Department of Social Services*, 436 U.S. 658, that the City is liable for the allegedly unlawful conduct of the named NYPD officers. *See* Compl. ¶ 179. The City Defendants argue that Plaintiff does not include sufficient

factual allegations to support a municipal liability claim. City Defs. Mem. at 20–22, ECF No. 34. The Court agrees.

To bring a municipal liability claim under § 1983, the plaintiff must "prove the existence of a municipal policy or custom," then demonstrate a causal connection between the policy and the alleged constitutional deprivation. *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). Plaintiff pleads neither, offering only conclusory allegations that the City Defendants "engaged in a pattern and practice to commit the aforementioned unlawful acts," Compl. ¶ 179, and that a policy is "inferred" because the City Defendants "took no steps to reprimand or discharge the officers involved," ECF No. 39 at 27. These allegations cannot, without more, state a claim for municipal liability. *E.g.*, *Fleming v. City of New York*, No. 18 Civ. 4866, 2020 WL 5522871, at *6 (S.D.N.Y. July 23, 2020). Because Plaintiff offers no facts which suggest that the deficiencies in his *Monell* claim may be cured by amendment, any such claim is DISMISSED with prejudice. *Strong v. City of Syracuse*, No. 16 Civ. 1054, 2020 WL 137250, at *3–4 (N.D.N.Y. Jan. 13, 2020) (dismissing *Monell* claim, with prejudice, given "[p]laintiff's conclusory allegations are insufficient to plausibly infer a custom or policy to support municipal liability").

### C. Passamenti's Personal Involvement

Plaintiff's remaining claims are Counts 3 (malicious prosecution) and 4 (denial of a fair trial). As to Defendant Passamenti, Plaintiff alleges that Passamenti authorized DNA tests, which revealed that the DNA evidence recovered at the scene "did not match Plaintiff." Compl. ¶ 96. Plaintiff does not allege that Passamenti was involved in falsification of evidence, that he attempted to hide the results of the relevant DNA tests, or that he was otherwise responsible for, or even aware of, the alleged "embellishment" of statements in the NYPD's investigative reports. Plaintiff has not, therefore, sufficiently alleged Passamenti's direct, personal involvement in any constitutional violations under § 1983. *Tangreti*, 983 F.3d at 618. And, because the record does not establish that Plaintiff could cure this pleading defect by amendment, Plaintiff's claims against Passamenti are DISMISSED with prejudice.

### D. Malicious Prosecution

A claim for malicious prosecution under § 1983—Count 3 of the complaint—requires the plaintiff to show that the criminal proceedings against him were terminated "in his

favor," typically by an acquittal or another form of dismissal of the charges on the merits. *Janetka v. Dabe*, 892 F.2d 187, 189–90 (1989). The City Defendants argue that Plaintiff has not made such a showing. City Defs. Mem. at 10, 14–17. The Court agrees. Plaintiff asserts—citing no authority in support—that the dismissal of the indictment was a "termination in his favor" because dismissals that "include constitutional privilege assertions are considered favorable terminations." ECF No. 39 at 7, 10 (quotation marks omitted). It is not clear what Plaintiff means by this. And, from the Court's review of the state court transcript, it appears that, in dismissing the indictment, neither the prosecution, nor the court, made any statements indicating a belief in Plaintiff's innocence. *See Lanning v. City of Glens Falls*, 908 F.3d 19, 28 (2d Cir. 2018) (looking to the "reasons ... stated on the record for dismissing the charges" in determining whether the termination of the criminal case was in plaintiff's favor). Indeed, Kalra expressly declined to concede that Plaintiff was innocent, instead reaffirming her belief that Plaintiff "was the shooter." Dismissal Tr. at 15. The presiding judge similarly stated on the record that dismissal of the indictment was warranted even though he did not "see any prosecutorial misconduct." *Id.* at 16. The dismissal of the indictment, therefore, left open the question of Plaintiff's guilt or innocence, and Plaintiff cannot, accordingly, assert on that basis alone, that the proceedings were terminated in his favor.

**\*13** The Court notes, however, that because four years have passed since the dismissal of the indictment, Plaintiff may be able to plead additional facts from that time that support this relevant element of his claim. There is no information before the Court as to whether, for example, Plaintiff was ever informed by the prosecutors that he had been cleared of wrongdoing, whether Jackson or anyone else was later prosecuted for the shooting, or whether the state court made any further statements regarding the merits of the charges against Plaintiff. Count 3 is, accordingly, DISMISSED without prejudice, to provide Plaintiff with an opportunity to plead additional facts to support this claim.

### E. Denial of Fair Trial

To state a claim under § 1983 for denial of a fair trial based on the fabrication of evidence by a police officer—Count 4 of the complaint—a plaintiff must allege that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a

deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016) (citation omitted). The plaintiff need not show a favorable termination indicative of innocence to state such a claim. *Smalls v. Collins*, 10 F. 4th 117, 142–43 (2d Cir. 2021). The City Defendants argue that Plaintiff has failed to show a deprivation of his liberty interests because there was probable cause for his prosecution, in the form of corroborative ballistics evidence. City Defs. Mem. at 16 (citing Dismissal Tr. at 15); City Defs. Reply at 6–7, ECF No. 46.

Probable cause is not a complete defense to a fair trial claim. *Torres v. City of N.Y.*, No. 16 Civ. 6719, 2017 WL 4325822, at *5 (E.D.N.Y. Sept. 27, 2017) (noting that where "independent probable cause exists for the prosecution," a plaintiff must "show that the misconduct caused some deprivation above and beyond the fact of the prosecution itself." (citation omitted)). Plaintiff plausibly alleges that Miller fabricated and "embellished" Jackson's statements in his investigative report; that Miller provided these reports to prosecutors to secure Plaintiff's indictment and arrest; and that Corrando, as Miller's supervisor, reviewed and approved these reports without identifying any "embellishments" or obvious factual contradictions. *See* Compl. ¶¶ 44–49, 95. On a motion to dismiss, the Court cannot take as true the City Defendants' factual assertion that, regardless of any alleged fabrications in Miller's reports, the prosecution had independent ballistics evidence to satisfy the probable cause standard. *Compare* City Defs. Reply at 6–7, *with* ECF No. 39 at 9–12. It cannot, therefore, find as a matter of law, that the City Defendants had probable cause for Plaintiff's indictment and prosecution. *See Bullard v. City of N.Y.*, 240 F. Supp. 2d 292, 299 (S.D.N.Y. 2003). The Court concludes, therefore, that Plaintiff has sufficiently alleged a § 1983 denial of fair

trial claim against Miller and Corrando. The City Defendants' motion to dismiss Count 4 of the complaint is, accordingly, DENIED.

## CONCLUSION

For the reasons stated above, the State's motion to dismiss, ECF No. 20, is GRANTED, and Plaintiff's claims against the State are DISMISSED. The DA Defendants' motion to dismiss, ECF No. 22, is GRANTED—Plaintiff's claims against Vance are DISMISSED; and his claims against Kalra and Nasar are DISMISSED except for Counts 3 and 4, which are DISMISSED without prejudice to renewal in an amended complaint. By **April 15, 2022,** the DA Defendants shall make the disclosures directed in this order. The City Defendants' motion to dismiss is DENIED as to Count 4, and GRANTED in all other respects. Plaintiff's claims against Passamenti, the NYPD, and the City are DISMISSED; and his claims against Miller and Corrando are DISMISSED, except for Count 3, which is DISMISSED without prejudice to renewal in an amended complaint.

 **\*14** By **May 16, 2022,** Plaintiff shall file an amended complaint as to Counts 3 and 4, with the additional factual allegations detailed in this order. The Clerk of Court is directed to terminate the motions pending at ECF Nos. 20, 22, and 32, and mail a copy of this order to Plaintiff *pro se.* The Court shall separately provide Plaintiff with a copy of all unpublished cases cited herein.

SO ORDERED.

## All Citations

Slip Copy, 2022 WL 992885

## Footnotes

1  Unless otherwise stated, the following facts are taken from the complaint and assumed, for purposes of this motion, to be true. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

2  The relevant state court trial transcripts were submitted by the DA Defendants in their motion to dismiss. *See* Trial Tr.; Dismissal Tr., ECF No. 22-4. The Court may take judicial notice of these transcripts as a matter of public record. *See Shmueli v. City of N.Y.*, 424 F.3d 231, 233 (2d Cir. 2005).

3    Because the Court concludes that it lacks jurisdiction over Plaintiff's claims against the State under ⚑Rule 12(b)(1), it need not reach the State's alternative ground for dismissal, that Plaintiff's ⚑§ 1983 and ⚑§ 1985 claims must be dismissed because the State is not a suable "person" within the meaning of those statutes. State Mem. at 3–4.

4    Plaintiff makes this clarification for the first time in his opposition papers. ECF No. 28 at 14. The Court notes that because, as discussed, the Eleventh Amendment bars suits against states, *see supra* at 8–10, when a defendant is sued in his official capacity, the court treats the suit as one against the "entity of which an officer is an agent." ⚑*Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting ⚑*Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). And, where a "district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the State, and therefore immune from suit in her official capacity." *D'Alessandro v. City of N.Y.*, 713 F. App'x 1, 8 (2d Cir. 2017). Accordingly, any claims Plaintiff may raise against the DA Defendants in their "official capacity" would be precluded by immunity under the Eleventh Amendment. *See id.*

5    Although Plaintiff asserts that he pleads each of his claims against "all Defendants," even a liberal read of the complaint makes clear that certain of Plaintiff's claims cannot implicate the DA Defendants' conduct, including counts 1 (unreasonable search and seizure); 2 (false arrest/imprisonment); 11 (personal injury); 12 (property damage) and 13 (negligent hiring, training, supervision, and discipline of officers). Compl. ¶¶ 117–27, 168–81. As the Court has already dismissed Counts 7 and 9, *see supra* at 7–8, it only considers Counts 3 (malicious prosecution); 4 (deprivation of fair trial); 5 (conspiracy); 6 (failure to intervene); 8 (abuse of process); 10 (negligent misrepresentation); and 14 (negligent infliction of emotional distress) against the DA Defendants.

6    Because the Court finds that the DA Defendants are entitled to absolute immunity on any claims arising from the withholding of exculpatory evidence, the Court does not reach their alternative argument that Plaintiff fails to state a claim for an alleged *Brady* violation, *see* DA Defs. Mem. at 12–15.

7    As noted, the parallel state-law constitutional claims in Counts 4, 5, and 6 are dismissed with prejudice. *See supra* at 8.

8    The DA Defendants' reliance on *Johnson v. Fargione* is unavailing. In that case, the court found that the plaintiff's claims, which had expired weeks before the issuance of Executive Order 202.8, could not "be said to have been tolled" by that Executive Order, as the time for filing had already passed and the plaintiff had offered no excuse for the delay. 20 Civ. 764, ⚑2021 WL 1406683, at *3 (N.D.N.Y. Feb. 17, 2021), *report and recommendation adopted* 2021 WL 1404554 (Apr. 14, 2021). Although *Johnson* is instructive with respect to how claims that may have expired *before* the issuance of Executive Order 202.8 (*i.e.*, before March 20, 2020) should be treated, it does not address the applicability of the Executive Order to federal claims that, like Plaintiff's, had not yet expired by that date.

9    Executive Order 202.8 tolled applicable limitations periods from March 20, 2020 to November 3, 2020. The order amounted to a "pause" in the limitations period—that is, during the duration of the toll, the clock to file [did] not run," but "[o]nce the toll end[ed,] the clock resume[d] from where it was when the toll began, and the plaintiff ha[d] the rest of his limitations period to file his complaint," *Johnston v. City of Syracuse*, No. 20 Civ. 1497, 2021 WL 3930703, at *6 (N.D.N.Y. Sept. 2, 2021). Because, as of March 20, 2020, when the clock was "paused," Plaintiff had 211 days remaining before the expiration of the limitations period on October 17, 2020, the Court calculates 211 days after November 3, 2020, as the end of the relevant limitations period when tolled—which is June 2, 2021.

10    Even assuming, *arguendo*, that Plaintiff would not have had reason to know of the harm or injury that was the basis of his Section 1986 claim until the date the indictment was dismissed (October 17, 2017), the claim would still be time-barred, because this would only extend the limitations period to October 17, 2018—nearly three years before the commencement of this action.

11    As noted, the Court dismissed Count 7 for relying on a statute that does not provide a private right of action, *see supra* at 7; Count 9 for being duplicative of Count 4, *see id.* at 8, and all the state constitutional claims Plaintiff asserts analogously to his federal constitutional claims, *see id.*

12    As discussed *supra* at 18–19, even if the Court construes Plaintiff's notice of claim as timely based on the dismissal of Plaintiff's criminal case on October 17, 2017, Plaintiff still failed to commence this action within one year and 90 days, as required by statute. This provides an alternative ground for dismissal.

13    Plaintiff also names the NYPD as a defendant. *See* Compl. But, the NYPD is a non-suable agency of the City, and thus, to the extent any of Plaintiff's claims are brought against it, they fail as a matter of law. *See* *Jenkins v. City of N.Y.*, 478 F.3d 76, 93 n.19 (2d Cir. 2007). Any such claims are, accordingly, DISMISSED with prejudice.

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3037709
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rondue **GENTRY**, Plaintiff,
v.
State of **NEW YORK**; Kyle Filli; David Hurley; Heath McCrindle; Steven Sharp; and David Soares, Defendants.

1:



21
-
CV
-
0319

(GTS/ML)
|
Signed 06/14/**2021**

**Attorneys and Law Firms**

Rondue **Gentry**, Plaintiff, Pro Se, Lakeview Shock Incarceration Correctional Facility, P.O. Box T, Brocton, **New York** 14716.

**ORDER and REPORT-RECOMMENDATION**

Miroslav Lovric, U.S. Magistrate Judge

**I. INTRODUCTION**

**\*1** The Clerk has sent this *pro se* complaint (Dkt. No. 1) together with an amended application to proceed *in forma pauperis* (Dkt. No. 5) filed by Rondue **Gentry** ("Plaintiff") to the Court for review. For the reasons discussed below, I grant Plaintiff's amended *in forma pauperis* application (Dkt. No. 5) and recommend that the Complaint be accepted for filing in part, dismissed in part without leave to amend, and dismissed in part with leave to amend.

**II. BACKGROUND**

On March 22, **2021**, Plaintiff commenced this action by filing a verified Complaint and a motion to proceed *in forma pauperis*. (Dkt. Nos. 1, 2.) On March 23, **2021**, the Court denied Plaintiff's *in forma pauperis* application as incomplete and administratively closed the case. (Dkt. No. 4.) On April 9, **2021**, Plaintiff filed an amended *in forma pauperis*

application. (Dkt. No. 5.) As a result, the case was reopened and restored to the Court's active docket. (Dkt. No. 6.)

Construed as liberally [1] as possible, the Complaint generally alleges that Plaintiff's civil rights were violated by the State of **New York**, **New York** State Police Officers Kyle Filli, David Hurley, and Heath McCrindle, and Assistant District Attorney Steven Sharp and Albany County District Attorney David Soares (collectively "Defendants"). (*See generally* Dkt. No. 1.)

More specifically, Plaintiff alleges that on September 2, 2016, he was arrested on felony charges but released on bail on September 9, 2016. (*Id.* at 3.) While out on bail, Plaintiff alleges that on April 9, 2017, Defendant Filli stopped him while he was driving near a toll plaza. (*Id.* at 3 & Attach. 2 at 2 [Pl.'s Exs.].) [2] Plaintiff alleges that, during the stop, "Defendant [ ] Filli [ ] falsely accused Plaintiff of having a lit marijuana blunt in his ashtray" and that when instructed to exit his vehicle, Plaintiff put items down the side of his seat and eventually drove away from the officer. (Dkt. No. 1 at 3.) After he allegedly fled the scene, Plaintiff alleges that Defendant Filli falsely accused Plaintiff of making four "u-turns" on the interstate and, at one point, traveling at 127 miles per hour, and made "several [other] vehicle and traffic law violations." (*Id.*) Defendant Filli eventually lost sight of Plaintiff's vehicle. (Dkt. No. 1, Attach. 2 at 2.)

On or about April 11, 2017, Plaintiff alleges that he was contacted by his attorney, [3] who informed Plaintiff that he had received a call from Defendant Sharp, the Albany County District Attorney, regarding the incident with Defendant Filli on April 9, 2017. Plaintiff alleges that his attorney informed him that if he did not turn himself in, a warrant would be issued for his arrest. (Dkt. No. 1 at 4.) On the advice of his attorney, Plaintiff alleges that he appeared at the Albany City Courthouse on April 18, 2017, "to address the matter in good faith and resolve any and all confusion[.]" (*Id.*) Plaintiff alleges that when he arrived at the courthouse with his attorney, he was arrested by Defendant Hurley for charges "lo[d]ged against him by Defendant Kyle Filli ... which were all false allegations." (*Id.*)

**\*2** Plaintiff next alleges that he was then taken to the State Trooper Barracks where Defendant McCrindle "falsified a legal document alleging to have read Plaintiff his Miranda right warnings when this is not true." (*Id.*) The same day he was arrested, on April 18, 2017, Plaintiff alleges that he was transported to Guilderland County Courthouse and arraigned

on charges from both the Town of Guilderland and the City of Albany. (*Id.*)

Following his arraignment, Plaintiff alleges that he was transported to the Albany County Courthouse and "arraigned on a bail revocation hearing for a prior case." (*Id.* at 5.) Plaintiff alleges that his bail was then revoked, and he was transported to the Albany County Correctional Facility where he remained confined for eleven months. (*Id.*)

On April 20, 2017, Plaintiff alleges that Defendant Soares "maliciously prosecuted" him under case number 17040697 in the Town of Guilderland and case number 17-244811 in the City of Albany while "knowing the allegations [against Plaintiff] were false." (*Id.*) Plaintiff next alleges that, on March 16, 2018, "approximately eleven (11) months after being arraigned in Guilderland County Court ... Plaintiff received a certificate of disposition dismissing the entire [p]roceeding in favor of the accused." (*Id.*) The Complaint includes a "Certificate of Disposition" from Albany City Court for case number 17-244811, certifying that a "Judgment of Dismissal" was entered as to certain charges against Plaintiff. (Dkt. No. 1, Attach. 2 at 12.) The Complaint also includes a copy of a letter from the Deputy Court Clerk for the Town of Guilderland referencing "Case 17040697" and stating that "this case was transferred to Albany City Court as Guilderland Town Court did not have jurisdiction over this case." (*Id.* at 14.)

Liberally construed, the Complaint appears to allege the following claims: (1) the State of **New York** failed to "properly train" its state police officers, leading to his false arrest, malicious prosecution, violation of due process rights, and cruel and unusual punishment; (2) Defendants Filli and Hurley, in their individual and official capacities, fabricated evidence and falsely arrested Plaintiff in violation of the Fourth Amendment and Plaintiff's right to due process; (3) Defendant McCrindle, in his individual and official capacity, fabricated evidence and failed to read Plaintiff his *Miranda* warnings, in violation of Plaintiff's right to due process; (4) Defendant Sharp, in his individual and official capacity, had no "valid or proper warrant" to detain Plaintiff; and that (5) Defendants Sharp and Soares, in their individual and official capacities, "maliciously prosecuted" Plaintiff in violation of the Fourth Amendment and Plaintiff's right to due process. (Dkt. No. 1 at 4-8.)

As relief, Plaintiff seeks money damages from all Defendants, including $20,000,000 from the State of **New York**;

$5,000,000 from Defendant Filli; $5,000,000 from Defendant Hurley; $1,000,000 from Defendant McCrindle; $3,000,000 from Defendant Sharp; and $10,000,000 from Defendant Soares. (*Id.* at 7-8.)

For a more complete statement of Plaintiff's claims, refer to the Complaint. (Dkt. No. 1.)

### III. PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts."

*Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)). [4]

**\*3** Upon review, the Court finds that Plaintiff has submitted a completed *in forma pauperis* application (Dkt. No. 5) which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed an inmate authorization form. (Dkt. No. 3.) Accordingly, Plaintiff's amended application to proceed with this action *in forma pauperis* is granted.

### IV. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Having found that Plaintiff meets the financial criteria for commencing this action *in forma pauperis*, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A(a). Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that — ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [5]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a government entity or officer or employee of a government entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against governmental officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## V. ANALYSIS

**\*4** In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed the Complaint with this principle in mind, I recommend that the Complaint be accepted for filing in part and dismissed in part.

### A. *Heck* Delayed Accrual Claims

"A claim for damages [that would necessarily imply the invalidity of a plaintiff's state court] conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In *Covington v. City of New York*, the Second Circuit held that "if success on a § 1983 claim would necessarily impugn the validity of a conviction in a pending criminal prosecution, such a claim *does not accrue* so long as the potential for a judgment in the pending criminal prosecution continues to exist." *Covington v. City of New York*, 171 F.3d 117, 124 (2d Cir. 1999); *see also McDonough v. Smith*, 139 S. Ct. 2149, 2156-57 (2019) (holding that a plaintiff could not bring a "fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution"); *Perry v. City of Albany*, 20-CV-165, 2020 WL 3405636, at *4 (N.D.N.Y. May 6, 2020) (Stewart, M.J.) ("[c]laims of false arrest, false imprisonment, malicious prosecution, and fabrication of evidence are generally viewed as barred by the rule in *Heck*."), *report and recommendation adopted by*, 2020 WL 3403080 (N.D.N.Y. June 19, 2020) (Suddaby, C.J.); *McFadden v. Jaeon*, 12-CV-1255, 2012 WL 4107466, at *2 (N.D.N.Y Aug. 23, 2012) (Randolph, M.J.) (barring claims for false arrest and "faulty *Miranda* warnings" pursuant to *Heck*), *report and recommendation adopted by*, 2012 WL 4107465 (N.D.N.Y. Sept. 18, 2012) (Mordue, J.); *Harris v. Buffardi*, 08-CV-1322, 2011 WL 3794235, at *10 (N.D.N.Y. Aug. 24, 2011) (Sharpe, J.) (claims for "violation of his due process rights, fabrication of evidence, obstruction of justice, bad faith inadequate investigation, and §§ 1983 and 1985 conspiracy—all of which are patent attacks on the validity of [plaintiff's] conviction—[were] barred.").

Plaintiff specifically alleges that the case against him in the City of Albany, case number 17-244811, was "terminated in his favor" on March 16, 2018 when he received a "Judgement of Dismissal." (Dkt. No. 1 at 5, Attach. 2 at 12.) However,

Plaintiff does not similarly allege that the case against him in the Town of Guilderland, case number 17040697, was also dismissed or otherwise terminated in his favor. Instead, Plaintiff vaguely alleges that the "entire proceeding" was dismissed and that the charges against him were "terminated in his favor." (Dkt. No. 1 at 5, 7.) While the Complaint includes a copy of a letter from the Deputy Court Clerk for the Town of Guilderland referencing "Case 17040697" that states that "th[e] case was transferred to Albany City Court as Guilderland Town Court did not have jurisdiction[,]" Plaintiff does not specifically allege how the charges from that case were resolved. (Dkt. No. 1, Attach. 2 at 14.)

Because Plaintiff has failed to allege sufficient facts showing that the case filed against him in the Town of Guilderland terminated in his favor, the Court has a basis to dismiss all of Plaintiff's claims relating to that case as premature pursuant to *Heck*. However, because I also recommend that nearly all of Plaintiff's claims should be dismissed for the additional, independent reasons that follow, I only recommend that the fabrication of evidence claims relating to the charges against Plaintiff in the Town of Guilderland against Defendants Filli, Hurley, and McCrindle, in their individual capacities, be dismissed as premature pursuant to *Heck*. [6]

### B. Claims Against the State of New York

**\*5** The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment.

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "New York State has not consented to suit in federal court." *Abrahams v. Appellate Div. of Supreme Court*, 473 F. Supp. 2d 550, 556 (S.D.N.Y. 2007) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d. Cir. 1977)). Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. *See Quern v. Jordan*, 440 U.S. 332, 340-41 (1979). Therefore, I recommend dismissal of all claims brought by Plaintiff against the State of New York pursuant to the Eleventh Amendment. [7]

### C. Claims Against Defendants Sharp and Soares

#### 1. Individual Capacity

"It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursing a criminal prosecution is immune from a civil suit for damages under § 1983." *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (citation and internal quotation marks omitted) (collecting cases). "Because the immunity attaches to the official prosecutorial function ... and because the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions ... the prosecutor has absolute immunity for the initiation and conduct of a prosecution unless he proceeds in the clear absence of all jurisdiction." *Shmueli*, 424 F.3d at 237 (citations and internal quotation marks omitted).

These principles also protect a prosecutor against malicious prosecution claims brought under state law. *Id.* at 238; *see also* *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n.5 (1993) (indicating that the court's conclusion that absolute immunity protects a prosecutor against § 1983 claims in the nature of malicious prosecution was based in part on the "common-law tradition of immunity for a prosecutor's decision to bring an indictment, whether he has probable cause or not"); *Imbler v. Pachtman*, 424 U.S. 409, 424 (1976) (same principles require conferral of absolute immunity for damages claims under § 1983 and state law).

**\*6** However, "[a] prosecutor is not absolutely immune solely because she engaged in the conduct in question during her line of work." *D'Alessandro v. City of New York*, 713 F. App'x 1, 5 (2d Cir. 2017) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). A prosecutor is entitled to absolute immunity "when she acts as an 'advocate.'" *Id.* (citing *Warney v. Monroe Cnty.*, 587 F.3d 113, 121 (2d Cir. 2009)). To be sure, "[a] prosecutor wears many hats" including "administrat[or]," "investigator," and "advocate[ ]." *Id.* (quoting *Hill v. City of New York*, 45 F.3d 653, 656 (2d Cir. 1995)). The "functional" test of whether a prosecutor was acting as an advocate is an objective one, and a court only asks whether "the *conduct* in question could "reasonably" fall under the rubric of the prosecutor's function as an advocate." *Id.* at 5 n.6. (emphasis in original) (citations omitted). "If it does, then absolutely immunity attaches even

if the prosecutor engaged in those actions with vindictive or malicious intent." *Id.*

"Under our case law, a prosecutor unquestionably acts as an advocate—and therefore receives absolute immunity—when she initiates and pursues a criminal prosecution." *Id.* (citing *Shmueli,* 424 F.3d at 236). Indeed, "a prosecutor still acts within the scope of her duties even if she ... knowingly uses false testimony, ... engages in malicious prosecution, or attempts to intimidate an individual into accepting a guilty plea." *Id.* (citing *Shmueli,* 424 F.3d at 237-38; *Peay v. Ajello,* 470 F.3d 65, 67-68 (2d Cir. 2006)); *see also Parker v. Soares,* 19-CV-113, 2019 **WL** 2232591, at *6 (N.D.N.Y. May 23, 2019) (Hummel, M.J.) (holding that prosecutorial immunity barred certain false arrest claims against Assistant District Attorney David Soares), *report and recommendation adopted by,* 2019 **WL** 2491918 (N.D.N.Y. June 14, 2019) (Sharpe, J.).

Here, I find that the allegations against Defendants Sharp and Soares arise out of acts intimately associated with the judicial phase of the criminal process, in their role as advocates, including the initiation of criminal proceedings against Plaintiff in the City of Albany and Town of Guilderland. As a result, I recommend that any claims against Defendants Sharp and Soares, in their individual capacity, be dismissed.

### 2. Official Capacity

As previously stated, "[t]he Eleventh Amendment generally bars suits against a state in federal court." *Pikulin v. City Univ. of N.Y.,* 176 F.3d 598, 600 (2d Cir. 1999) (per curiam) (citation omitted). When a defendant is sued in his official capacity, we treat the suit as one against the "entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. 159, 165–66, (1985). If a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity. *D'Alessandro,* 713 F. App'x 1, 8 (2d Cir. 2017) (citing *Ying Jing Gan v. City of* **New** *York,* 996 F.2d 522, 536 (2d Cir. 1993)).

Here, the claims against Defendants Sharp and Soares, in their official capacities, are effectively claims against the State of **New York**. For that reason, these claims must be dismissed.

### D. Claims Against Defendants Filli, Hurley, and McCrindle

#### 1. Individual Capacity

Liberally construed, the Complaint alleges claims against Defendants Filli and Hurley for fabrication of evidence and false arrest, in violation of the Fourth Amendment and Plaintiff's right to due process. The Complaint also alleges claims against Defendant McCrindle for fabricating evidence and failing to read Plaintiff his *Miranda* warnings in violation of Plaintiff's right to due process. (*See generally* Dkt. No. 1 at 3-4, 6-8.) [8]

**\*7**  For the following reasons, I recommend dismissal of all claims against Defendants Filli, Hurley, and McCrindle in their official capacities. I also recommend dismissal of the false arrest claims against Defendants Filli and Hurley, in their individual capacities, and dismissal of the *Miranda* claim against Defendant McCrindle, in his individual capacity. However, I recommend that the fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, as relates to the case against Plaintiff in the City of Albany, be accepted for filing.

#### i. False Arrest Claims Against Defendants Filli and Hurley

"A § 1983 claim for false arrest, which derives from an individual's right under the Fourth Amendment to be free from unreasonable seizures, including arrest without probable cause, *see, e.g., Lennon v. Miller,* 66 F.3d 416, 423 (2d Cir. 1995), is substantially the same as a claim for false arrest under **New York** law." *Kates v. Greece Police Dep't,* 16-CV-6554, 2017 **WL** 11548970, at *3 (W.D.N.Y. Feb. 21, 2017) (citing *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996). Generally, the statute of limitations for a § 1983 action accruing in **New York** is three years. *Shomo v. City of* **New York,** 579 F.3d 176, 181 (2d Cir. 2009). Although the statute of limitations is an affirmative defense, where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on 28 U.S.C. § 1915(e)(2)(B) review. *See Pino v. Ryan,* 49 F.3d 51, 53-54 (2d Cir. 1995) (holding that a complaint can be dismissed on

initial review based on a defense that appears on the face of the complaint); *Syfert v. City of Rome*, 17-CV-0578, 2018 WL 3121611, at *3-5 (N.D.N.Y. Feb. 12, 2018) (Dancks, M.J.) (dismissing all claims as barred by the statute of limitations on initial review pursuant to 28 U.S.C. § 1915(e)(2)(B)).

With regard to Plaintiff's allegations that Defendants Filli and Hurley "falsely arrested" him, the Court must determine when the claims accrued. The Second Circuit in *Singleton* found that a false arrest claim accrued on the date of arrest because that "was the time at which plaintiff knew of his injury arising from the alleged ... false arrest." *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980). Applying *Wallace v. Kato*, 549 U.S. 384 (2007), the Second Circuit more recently held that a false arrest claim accrues when the "false imprisonment ends," or more specifically, "when 'the victim becomes held pursuant to legal process,' " *e.g.*, when he is arraigned on charges. *Lynch v. Suffolk Cty. Police Dep't, Inc.*, 348 F. App'x 672, 675 (2d Cir. 2009) (quoting *Wallace*, 549 U.S. at 388-89); *see also Thomas v. Heid*, 17-CV-1213, 2017 WL 9673716, at *3 (N.D.N.Y. Dec. 6, 2017) (recognizing that a false arrest claim accrues under § 1983 is when "the alleged false imprisonment ends: when the arrestee is bound over by a magistrate or arraigned on charges.") (Stewart, M.J.), *report and recommendation adopted*, 2018 WL 1773130 (N.D.N.Y. Apr. 12, 2018) (D'Agostino, J.). Other cases have simply held that a false arrest claim under § 1983 accrues on the date of arrest itself. *See Kislowski v. Kelley*, 19-CV-218, 2020 WL 495059, at *3 (N.D.N.Y. Jan. 30, 2020) (Stewart, M.J.) ("a false arrest claim accrues at the time of the arrest.").

The distinction between the date of arrest and the date of arraignment here is of no moment because Plaintiff alleges that he was arrested and arraigned on the same day, April 18, 2017. (Dkt. No. 1 at 4.) Even if the charges stemming from the April 9, 2017, incident were ultimately dismissed on March 16, 2018, as Plaintiff alleges,[9] his false arrest claims against Defendants Filli and Hurley first accrued on April 18, 2017, the date when he was both arrested and arraigned on those charges. As a result, the statute of limitations on his false arrest claims under § 1983 expired on or about April 18, 2020. The Complaint was signed on March 6, 2021 and filed with the Court on March 22, 2021, well after the three-year period had expired.[10] I therefore recommend that Plaintiff's Fourth Amendment false arrest claims against Defendants Filli and Hurley be dismissed as untimely.

#### ii. *Miranda* Claim Against Defendant McCrindle

**\*8** As a general matter, "no cause of action exists under 42 U.S.C. § 1983 for *Miranda* violations." *Hernandez v. Llukaci*, 16-CV-1030, 2019 WL 1427429, at *7 (N.D.N.Y. Mar. 29, 2019) (Hurd, J.) (citing *Chavez v. Martinez*, 538 U.S. 760, 767 (2003)). The failure to inform a plaintiff of his rights under *Miranda*, "does not, without more, result in § 1983 liability." *Deshawn E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998). Instead, the remedy for a violation of the right against self-incrimination is 'the exclusion from evidence of any ensuing self-incriminating statements' and 'not a § 1983 action.' " *Id.* (quoting *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995)). However, "[a] *Miranda* violation that amounts to actual coercion based on outrageous government misconduct is a deprivation of a constitutional right that can be the basis for a § 1983 suit, even when a confession is not used against the declaration in any fashion." *Id.* at 348 (internal citations omitted).

The Complaint does not allege any facts that would plausibly suggest that Defendant McCrindle coerced Plaintiff into giving any inculpatory statements that were later used against him. Additionally, much like Plaintiff's claims alleging false arrest, Plaintiff's *Miranda* claim against Defendant McCrindle is untimely because it was not made within three years from the date that it accrued. *See Rahn v. Erie County Sheriff's Dept.*, 96-CV-0756E, 1999 WL 1067560, at *2 (W.D.N.Y. Nov. 19, 1999) (finding that a *Miranda* claim accrued "about the time of [plaintiff's] arrest" and was subject to the three year statute of limitations bar to § 1983 claims). For these reasons, I recommend Plaintiff's *Miranda* claim against Defendant McCrindle be dismissed.

#### iii. Fabrication of Evidence Claims Against Defendants Filli, Hurley, and McCrindle

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused' constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42

U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (citations omitted). Unlike Plaintiff's claims for false arrest and for a *Miranda* violation, "[t]he statute of limitations for a fabricated-evidence claim ... does not begin to run until the criminal proceedings against the defendant (*i.e.*, the § 1983 plaintiff) have terminated in his favor." *McDonough v. Smith*, 139 S. Ct. 2149, 2154–55 (2019).

Mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed and without expressing an opinion as to whether the Complaint can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's fabrication of evidence claims relating to the case against Plaintiff in the City of Albany, against Defendants Filli, Hurley, and McCrindle, in their individual capacities.

### iv. Due Process Claims Against Filli, Hurley, and McCrindle

The Complaint makes several generalized references to being deprived of "due process" and his "life, liberty, and happiness" in connection with the claims against Defendants McCrindle, Filli, and Hurley. (Dkt. No. 1 at 6-7.) But where a plaintiff makes due process and false arrest claims stemming from the same set of facts, the Second Circuit has held that the two claims "merge," such that a plaintiff's due process claim is subsumed by the "false arrest" claim. *Fernandez-Bravo v. Town of* Manchester, 711 F. App'x 5, 8 (2d Cir. 2017); *Maliha v. Faluotico*, 286 F. App'x 742, 744 (2d Cir. 2008); *see also Lozado v. Weilminster*, 92 F. Supp. 3d 76, 102 (E.D.N.Y. 2015) (holding that a plaintiff's procedural due process claim merges with his false arrest claim, the constitutional source of which is the Fourth Amendment); *but see Sepulveda v. City of New York*, 15-CV-5187, 2017 **WL** 3891808, at *5 (E.D.N.Y. Feb. 14, 2017) (recognizing that a false arrest claim will not merge with a due process claim where the due process claim challenges the conditions of detention, as opposed to the wrongfulness of the detention itself), *report and recommendation adopted*, 15-CV-5187, 2017 **WL** 3887872 (E.D.N.Y. Sept. 5, 2017).

**\*9** It is clear from the face of the Complaint that Plaintiff's vague and conclusory references to being denied due process stem directly from the allegations relating to his false arrest. [11] I therefore find that any due process claims Plaintiff

alleges against Defendants Filli, Hurley, and McCrindle merge into his false arrest claims, and consistent with my prior analysis of those claims in Section V.D.1.i., I recommend that they are dismissed as untimely.

### 2. Official Capacity

" '[C]laims against a government employee in his official capacity are treated as a claim against the municipality,' and, thus, cannot stand under the Eleventh Amendment." *Jackson v. Gunsalus*, 16-CV-0647, 2016 **WL** 4004612, at *2 (N.D.N.Y. June 24, 2016) (Dancks, M.J.) (quoting *Hines v. City of Albany*, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008) (McCurn, J.)), *report and recommendation adopted by*, 2016 **WL** 3983635 (July 25, 2016) (Sharpe, J.); *see Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Graham*, 473 U.S. at 166-67) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").

Here, to the extent that Plaintiff asserts claims against Defendants Filli, Hurley, and McCrindle in their official capacities, I recommend that those claims be dismissed because they are, in reality, claims against the State of **New York**, which is immune from suit.

### VI. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993);

*accord, Brown v. Peters*, 95-CV-1641, 1997 **WL** 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [12]

**\*10** I recommend that Plaintiff's claims against Defendant State of **New York** be dismissed with prejudice and without leave to amend. *Sonnick v. Budlong*, 20-CV-0410, 2020 **WL** 2999109, at *10 (N.D.N.Y. June 4, 2020) (Lovric, M.J.) (recommending dismissal without leave to amend, claims against **New York** State Police), *report and recommendation adopted by*, 2020 **WL** 4345004 (N.D.N.Y. July 29, 2020) (McAvoy, J.). Similarly, I recommend that Plaintiff's claims against Defendants Filli, Hurley, and McCrindle, in their official capacities, be dismissed with prejudice and without leave to amend because they are immune from suit. *See Jackson v. Gunsalus*, 16-CV-0647, 2016 **WL** 4004612, at *2 (N.D.N.Y. June 24, 2016) (Dancks, M.J.) (dismissing with prejudice and without leave to amend claims against police officers, in their official capacities, as barred by the Eleventh Amendment), *report and recommendation adopted*, 2016 **WL** 3983635 (July 25, 2016) (Sharpe, J.). I also recommend that Plaintiff's claims against Defendants Soares and Sharp, in their official and individual capacities, be dismissed with prejudice and without leave to amend because they are also immune from suit. *See Lawrence v. Sherman*, 20-CV-0694, 2020 **WL** 5904789, at *3 (N.D.N.Y. Oct. 6, 2020) (D'Agostino, J.) (dismissing with prejudice claims against a defendant prosecutor based on the doctrine of prosecutorial immunity).

I also recommend dismissal with leave to amend the fabrication of evidence claims, that relate to the case against Plaintiff in the Town of Guilderland, against Defendants Filli, Hurley, and McCrindle, in their individual capacities. [13] *Perry v. City of Albany*, 20-CV-165, 2020 **WL** 3405636, at *4 (N.D.N.Y. May 6, 2020) (Stewart, M.J.) (recommending dismissal with leave to amend claims that appeared to be barred based on *Heck*), *report and recommendation adopted*, 20-CV-0165, 2020 **WL** 3403080 (N.D.N.Y. June 19, 2020) (Suddaby, C.J.).

As to Plaintiff's claims for false arrest against Defendants Filli and Hurley, in their individual capacities, and for a *Miranda* violation against Defendant McCrindle, in his individual capacity, although I have found that these claims are barred by the applicable statute of limitations for the reasons stated in Sections V.D.1.i. and V.D.1.ii., a district court typically should not dismiss claims as time-barred without providing a *pro se* plaintiff with "notice and an opportunity to be heard" as to whether there might be a meritorious tolling argument

or other reason why the complaint might be considered. *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). For that reason, I recommend that Plaintiff's false arrest and *Miranda* claims be dismissed with leave to amend, even though it appears very unlikely to the undersigned that Plaintiff can state plausible claims.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 **WL** 316935, at *7 (N.D.N.Y. May 23, 1995) (Pooler, J.). In any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. The revised pleading must also allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**\*11 ACCORDINGLY**, it is

**ORDERED** that Plaintiff's amended *in forma pauperis* application (Dkt. No. 5) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court (1) provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 3) and notify that official that Plaintiff has filed this action and is required to pay the Northern District of **New York** the entire statutory filing fee of $350.00 in installments, over time, pursuant to 28

U.S.C. § 1915; and (2) provide a copy of Plaintiff's inmate authorization form (Dkt. No. 3) to the Financial Deputy of the Clerk's Office; and it is further respectfully

**RECOMMENDED** that the Court **ACCEPT FOR FILING** Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, as those claims relate to the case against Plaintiff in the City of Albany; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD** Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, as those claims relate to the case against Plaintiff in the Town of Guilderland, as premature pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH PREJUDICE AND WITHOUT LEAVE TO REPLEAD** Plaintiff's claims against the State of New York, Defendants Filli, Hurley, and McCrindle, in their official capacities, and Defendants Sharp and Soares, in their official and individual capacities; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD**

Plaintiff's false arrest claims against Defendants Filli and Hurley, in their individual capacities, and Plaintiff's claim for *a Miranda* violation against Defendant McCrindle, in his individual capacity; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [14] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Slip Copy, 2021 WL 3037709

## Footnotes

1    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

2    "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.").

3    Plaintiff's references to "his attorney" in the Complaint appear to relate to his representation in certain criminal matters. Plaintiff has indicated to the Court that he is proceeding *pro se* in this matter. (Dkt. No. 1 at 1.)

4    Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access

to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 📁 28 U.S.C. § 1915(g) as of the date this action was commenced.

5   To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact." 📁 *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

6   The Complaint does not separate claims against the Defendants based on the two underlying criminal cases against Plaintiff in the City of Albany and Town of Guilderland. However, as discussed in Section V.D.1.iii. of this Report-Recommendation, Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, that relate to the criminal charges against Plaintiff in the City of Albany, should be accepted for filing.

7   Plaintiff also alleges that he "filed a claim in the **New York** State Court of Claims [against the State of **New York**] dealing with the same facts involved in this action[,]" but that the case was dismissed on July 25, 2019 "due to failure of establishing proper service." (Dkt. No. 1 at 2.) A court's dismissal for failure to establish proper service is not a final judgment such that *res judicata* would apply. 📁 *Martin v. **New York** State Dep't of Mental Hygiene*, 588 F.2d 371, 373 n.3 (2d Cir. 1978) ("a dismissal for failure of service of process, of course, has no *res judicata* effect."); *Troeger v. Ellenville Cent. Sch. Dist.*, 15-CV-1294, 2016 **WL** 5107119, at *7 (N.D.N.Y. Sept. 20, 2016) (D'Agostino, J.) ("The dismissal based upon failure to join a necessary party and improper service are not final decisions on the merits for *res judicata* purposes."). Based on the Court's review of the **New York** Court of Claims public docket, Plaintiff's case against the State of **New York**, Claim No. 132064, was indeed dismissed on June 3, 2019 for failure to properly serve the State of **New York** in accordance with the service requirements set forth in the 📁 **New York** Court of Claims Act § 11 and 22 N.Y.C.R.R. § 206.5(a). *Gentry v. State of **New York***, Claim No. 132064 (N.Y. Ct. Cl. June 3, 2019).

8   The Complaint makes other, sporadic legal conclusions. For example, Plaintiff alleges that, "as a result of the actions of all defendants [he has] suffered mental anguish, extreme emotion distress and cruel and unusual punishment." (Dkt. No. 1 at 7.) Plaintiff later clarifies that he seeks to hold the State of **New York** liable for his "cruel and unusual punishment." (*Id.*) However, as explained in Section V.A. above, the State of **New York** is immune from suit. To the extent that Plaintiff alleges that Defendants Filli, Hurley, and McCrindle, in their individual capacities, may have caused his "cruel and unusual punishment" or otherwise inflicted emotional distress upon him, his bare legal conclusions are insufficient to withstand the Court's review under 📁 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

9   Significantly, it is no longer the law of this circuit that a "false arrest" claim under § 1983 accrues only once a plaintiff received a favorable judgment stemming from the allegedly false arrest. *See Jones v. City of **New York***, 13-CV-929, 📁 2016 **WL** 1322443, at *3 (S.D.N.Y. Mar. 31, 2016) (explaining that the prior rule from 📁 *Covington v. City of **New York***, 171 F.3d 117 (2d Cir. 1999) that a false arrest claim may not accrue until a favorable verdict was reached was overruled by the Supreme Court's *Wallace* decision).

10   Under the prison mailbox rule, a prisoner's complaint is deemed filed when it is handed to prison officials— presumptively on the date that the complaint was signed. *Hardy v. Conway*, 162 Fed. App'x 61, 62 (2d Cir. 2006) (collecting cases).

11   Plaintiff also makes the conclusory allegation that he was "deprived of bail." (Dkt. No. 1 at 7.) However, it is clear from the face of the Complaint that Plaintiff was afforded bail, as he alleges that when the April 9, 2017 incident took place, he was out on bail from prior charges. (*Id.* at 3.) Only after he was arrested and arraigned

on charges stemming from that April 9, 2017 incident does he allege that his bail on the prior charges was revoked, "after [a] bail revocation hearing." (*Id.* at 5.)

12    *See also* *Carris v. First Student, Inc.,* 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

13    As discussed in Section V.D.1.iii. above, I recommend that the fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, that relate to the case against Plaintiff in the City of Albany be accepted for filing because Plaintiff specifically alleged that the City of Albany case was terminated in Plaintiff's favor. (Dkt. No. 1 at 5.)

14    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                             © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3032691
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rondue GENTRY, Plaintiff,

v.

State of NEW YORK; Kyle Filli; David Hurley; Heath
McCrindle; Steven Sharp; and David Soares, Defendants.

1:21-CV-0319 (GTS/ML)
|
Signed 07/19/2021

**Attorneys and Law Firms**

RONDUE GENTRY, 18-A-1238, Plaintiff, Pro Se, Lakeview
Shock Incarceration Correctional Facility, P.O. Box T,
Brocton, New York 14716.

### DECISION and ORDER

GLENN T. SUDDABY, Chief United States District Judge

 **\*1** Currently before the Court, in this *pro se* civil
rights action filed by Rondue Gentry ("Plaintiff") against
the State of New York, New York State Police Officers
Kyle Filli, David Hurley and Heath McCrindle, Assistant
District Attorney Steven Sharp, and Albany County District
Attorney David Soares ("Defendants"), is United States
Magistrate Judge Miroslav Lovric's Report-Recommendation
recommending that certain of Plaintiff's claims be dismissed
with prejudice (and without prior leave to amend), certain of
those claims be dismissed without prejudice (and with limited
leave to amend in this action), and the remainder of those
claims survive the Court's *sua sponte* review of his Complaint.
(Dkt. No. 7.) Plaintiff has not filed an Objection to the Report-
Recommendation, and the deadline by which to do so has
expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant papers herein,
including Magistrate Judge Lovric's thorough Report-
Recommendation, the Court can find no clear error in
the Report-Recommendation.[1] Magistrate Judge Lovric
employed the proper standards, accurately recited the facts,
and reasonably applied the law to those facts. As a result,

the Report-Recommendation is accepted and adopted in its
entirety for the reasons set forth therein.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Lovric's Report-
Recommendation (Dkt. No.7) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that the following claims are **DISMISSED
with prejudice** and **without prior leave to amend**: (1)
Plaintiff's claims against the State of New York; (2) Plaintiff's
claims against Defendants Filli, Hurley, and McCrindle in
their official capacities; and (3) Plaintiff's claims against
Defendants Sharp and Soares in their official and individual
capacities; and it is further

**ORDERED** that the following claims are **DISMISSED
without prejudice** to repleading during the pendency of
this action and **with leave to amend** within **THIRTY
(30) DAYS** of the date of this Decision and Order: (1)
Plaintiff's fabrication-of-evidence claims against Defendants
Filli, Hurley and McCrindle in their individual capacities
to the extent that those claims relate to the case against
Plaintiff in the Town of Guilderland; (2) Plaintiff's false
arrest claims against Defendants Filli and Hurley in their
individual capacities; (3) Plaintiff's claim for a *Miranda*
violation against Defendant McCrindle in his individual
capacity; and it is further

 **\*2** **ORDERED** that **SURVIVING** this Decision and
Order are Plaintiff's fabrication-of-evidence claims against
Defendants Filli, Hurley and McCrindle in their individual
capacities to the extent that those claims relate to the case
against Plaintiff in the City of Albany; and it is further

**ORDERED** that the Clerk of Court is directed to issue
Summonses and forward, along with copies of the Complaint,
to the U.S. Marshal for service upon Defendants Filli, Hurley
and McCrindle, and those Defendants are directed to respond
in accordance with the Federal Rules of Civil Procedure.

**All Citations**

Slip Copy, 2021 WL 3032691

## Footnotes

1    When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear-error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a clear-error review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

---

**End of Document**                                        © 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2023 Thomson Reuters. No claim to original U.S. Government Works.    2

2021 WL 3518439
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Myrna Althia Alicia WALKER, Plaintiff,
v.
CIBC LIMITED, Defendant.

1:20-CV-1337 (TJM/CFH)
|
Signed 04/13/2021

**Attorneys and Law Firms**

Myrna Althia Alicia Walker, 841 Western Avenue, Apartment 2A, Albany, New York 12203, Plaintiff pro se.

### REPORT-RECOMMENDATION & ORDER

CHRISTIAN F. HUMMEL, UNITED STATES MAGISTRATE JUDGE

#### I. In Forma Pauperis

**\*1** Plaintiff pro se Myrna Althia Alicia Walker purported to commence this action on October 28, 2020, by submitting a complaint and application to proceed in forma pauperis ("IFP") in lieu of paying the Court's filing fee. See Dkt. No. 1 ("Compl."); Dkt. No. 2. On March 15, 2021, plaintiff submitted a supplement to her complaint. Dkt. No. 4. On April 6, 2021, plaintiff submitted an additional filing entitled "Emergency Petition for the Death Penalty Against Adethia Keshia Fitten and Others on the Principle Found in the Law of Necessity." Dkt. No. 5. On April 7, 2021, plaintiff submitted additional 86 pages to supplement to her complaint. Dkt. Nos. 6, 7. On April 8, 2021, plaintiff submitted additional exhibits and a letter requesting to file those exhibits under seal. Dkt. No. 8.

The Court has reviewed plaintiff's IFP application and determines that she financially qualifies to proceed IFP for purposes of filing only.[1]

#### II. Legal Standards

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting her to proceed with her action. As plaintiff is representing himself, the court must afford plaintiff special solicitude; thus, it is to consider her claims "liberally" and "interpret them 'to raise the strongest arguments that they suggest.' " Cold Stone Creamery, Inc. v. Gorman, 361 F. App'x 282, 286 (2d Cir. 2010) (summary order) (quoting Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006)).

Pleading guidelines are set forth in the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought ....

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d).

**\*2** Further, Rule 10 of the Federal Rules provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs,

each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims."

Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted). In such cases of dismissal, particularly when reviewing a pro se complaint, the court generally affords the plaintiff leave to amend the complaint. Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

### III. Initial Review

#### A. Plaintiff's Complaint

Plaintiff purports to bring this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000, et seq. On her form Title VII complaint, she indicates that defendant discriminated against her due to her race and color, religion, sex, and "my date of birth – Easter." Compl. at 2. Plaintiff further indicates, through checking the boxes on the form complaint, that defendant terminated her employment, failed to promote, engaged in unequal terms and conditions of employment, retaliated against her, and "forced prostitution; [i]dentity theft, which is used to do Bank frauds & Poisonings." Id.

Plaintiff's complaint, inclusive of exhibits, is 158 pages long. Dkt. No. 1. Included with the exhibits to the complaint is an Equal Employment Opportunity Commission ("EEOC") dismissal notice [2] noting that plaintiff's EEOC charge was not timely filed and the EEOC was closing its file. Dkt. No. 1-1. The remainder of the exhibits appended to the complaint appear to be an 80-page letter relating to apparent visa fraud that plaintiff sent to The US Department of Justice; the United States Department of Homeland Security, Immigration and Customs Enforcement; and the Federal Bureau of Investigation; as well as an incident report dated May 29, 2019, regarding an apparent rape of plaintiff. Dkt. No. 1-2 at 81-82.

**\*3** The supplement plaintiff filed on March 15, 2021, is 112 pages long. Dkt. No. 4. The supplement appears to be filings from a complaint plaintiff had before Supreme Court, Rensselaer County against Unity House of Troy and Joseph Posa. Id. The "emergency motion," filed on April 4, 2021, is 22 pages long, with 70 additional pages of exhibits. Dkt. No. 5. These exhibits are (1) various transfer orders and orders of protection plaintiff either sought or obtained against various individuals in family court proceedings in different counties (dkt. no. 5-1); (2) a residential lease agreement from July 2018, for a property in Troy, New York, with landlord Joseph Posa (dkt. no. 5-2); (3) records from a proceeding before the Rensselaer County Supreme Court in a case captioned Myrna Althia Alicia Walker vs. "Change of Name" Heidi Elizabeth Zuach (dkt. no. 5-3); and (4) a lease agreement dated May 2, 2017, between Capital Group Management LLC and plaintiff for a property in Troy, New York (dkt. no. 5-4). The submission filed on April 7, 2021, is 59 pages long and includes various orders of protection, a USPS tracking number report, a Unity House Domestic Violence Services Transitional Housing Program Handbook, a form from the Rensselaer County Department of Social Services, earnings statements, a New York State

incident report from 2018, an eviction notice, a letter from the Unity House Transitional Housing program, a "notice" letter, and a "birth registration" form. Dkt. No. 6-6. The exhibits filed on April 7, 2021, appear to be letters plaintiff sent to the New York State Department of Labor, United States Department of Homeland Security, Immigration and Customs Enforcement, and the EEOC, apparently related to "pandemic unemployment compensation benefits." See dkt. no. 7.

Plaintiff's complaint discusses Allison Carolyn Rattray, the Corporate Secretary and Legal Counsel of defendant CIBC First Caribbean International Bank (Jamaica) Limited. Dkt. No. 1 at 3. Plaintiff contends that Ms. Rattray kills unidentified people "with her married name" and drinks plaintiff's blood. Id. Apparently, plaintiff contends that Ms. Rattray is or was her "employer" who "uses the drinking blood of the employee to kill the employing the employment agreement and the incomes paid by direct deposit as the consideration for the blood that is drank before the killings and the doomings if [sic] innocent persons." Id. at 4. Plaintiff also appears to suggest that Ms. Rattray and her husband, "Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica," force plaintiff to use "illegal psychotropic medicines," cocaine, and alcohol. Id. at 5. Plaintiff refers to an employment agreement she signed with Ms. Rattray in 1995 and appears to suggest that since that date, Ms. Rattray "has been stalking the Plaintiff inside her bedroom, bathroom mirror, on her cell phone from 1995 even until today October 20, 2020 even the bathroom stables has visual and audio devices inside of them." Id. at 6. The Complaint then appears to proceed to explain why Ms. Rattray and her various family members are carrying out unspecified killings. See generally Dkt. No. 1. Plaintiff further suggests that through her employment with defendant, both defendant and the Commercial Division of the Supreme Court of Jamaica

> has been using me as a sex doll; as sex services; as sex product also incorporating The University of the West Indies Hospital to do surgeries; using illegal force of The Jamaican police; using the illegal Force of the Jamaican Army; using the illegal force of the Jamaican parliament to have men from any where have sex with The Plaintiff because The Plaintiff was born on the day the crucifixion was

celebrated, that is Easter and Good Friday.

Id. at 13. Plaintiff asks the Court for

> an Injunction to stop, restrain and prevent Allison Carolyn Rattray (maiden name Smith), Corporate Secretary and Legal Counsel, CIBC FirstCarribean Jamaica; her husband, Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica, King Street, Kingston, Jamaica, West Indies Deryke Smith, her brother; Lacelles Smith retired lecturer The University of the West Indies, Jamaica, West Indies; and the Rhoda Ford children and others from practicing their religion in a way that results in the death or harm or injury of The Rights of The Plaintiff and or the mother of The Plaintiff and or the siblings of The Plaintiff; and or any member of The Public, which includes anyone in the global community.

Id. at 14.

As for plaintiff's causes of action, plaintiff lists:

> forced religion imposed on The Plaintiff whom is the employee by The Employer, CIBC Limited. The Forced Religion imposed on Myrna Althia Alicia Walker [ ] to kill innocent Persons. The daily murders of innocent Persons is used to supply the demands of the global organ Donor list. The staff is Allison Carolyn Rattray.

**\*4** Dkt. No. 1 at 69. As for a second cause of action is

employment discrimination – I chose a career path to be an Attorney-At-Law. Allison Carolyn Rattray (maiden name Smith) my (former) then manager at CIBC had be fired; told me that (1) I am not worthy to be an Attorney-at-Law because of my Race (2) I was not worthy to be in the same Profession as her. She has been defaming my character ever since.

Id. at 70. Third cause of action is listed as employment discrimination - compensation: denied increases in my salary verbally communicated to be by Ms. Cherlyn Blackman my Senior Manager of 3% in 2004; Denied Promotion communicated to be my Human Resources Regional Director, Jerime Cjnttihs-Bell; denied fringe benefits that accompanied my five (5) CIBC Achievers awards – my salary was split and part paid to my aunt." Id. In the prayer for relief, plaintiff requests:

> (1) an Injunction(s) for Criminal Indictment(s) of Allison Carolyn (Smith) Rattray, Corporate Secretary and Legal Counsel CIBC for her forced Prostitution of The Plaintiff and Others; (2)An Injunction to prevent and stop all Prostitution or abuse of The Plaintiff; (3) Restitution(s) by CIBC for lost Incomes and fringe benefits[; and] (4) Job Reference letter from CIBC and an apology and my land Title Deed.

Id. at 71.

### B. Analysis

First, plaintiff's complaint fails to meet the pleading requirements of Rules 8 and 10. Her complaint does not present a short and plain statement of the claim showing that she is entitled to relief. FED. R. CIV. P. 8. Further, she does not present her claims in numbered paragraphs, limited to one "circumstance" per paragraph. FED. R. CIV. P. 10. Instead, her complaint is a lengthy, disjointed, difficult to follow narrative. Her complaint clearly "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales, 167 F.R.D. at 355.

Second, plaintiff's claims, insofar as she seeks to bring them under Title VII are (1) barred by the statute of limitations, and (2) fail to state a claim for employment discrimination in violation of Title VII. [3] To the extent plaintiff suggests that she was discriminated against in violation of Title VII insofar as she was told that she was inadequate due to her race or denied promised promotions because of her race, dkt. no. 1 at 70, even if plaintiff could provide additional factual support and clarification for the alleged discrimination, plaintiff provides that the alleged discrimination occurred as early as 1995 until 2004, and would be beyond the statute of limitations of Title VII. Indeed, plaintiff's entire employment with defendant occurred outside of the statute of limitations as she suggests that her employment began in January 1995 and that she was terminated in March 2009. Dkt. No. 1 at 52-53. Thus, the complained-of actions occurred more than 300 days prior to when plaintiff appears to have filed a complaint with the EEOC. See Gunning v. New York State Just. Ctr. for Prot. of People with Special Needs, No. 1:19-CV-1446 (GLS/CFH), 2020 WL 5203673, at *3 (N.D.N.Y. Sept. 1, 2020) ("Title VII's statute of limitations bars claims based upon events that occurred more than 300 days prior to filing a charge of discrimination with a state or local employment agency, and, therefore, "[a] plaintiff may bring a claim under Title VII only for acts of discrimination that occurred within the statutory period set by 42 U.S.C. § 2000e–5(e)(1).") (quoting Patterson v. Cnty. of Oneida, 375 F.3d 206, 220 (2d Cir. 2004)). The undersigned notes that plaintiff does not indicate when she filed a complaint with the EEOC. However, she submits the EEOC's dismissal letter, dated September 10, 2020, which states that plaintiff did not timely file a complaint with the EEOC. Dkt. No. 1-1. As plaintiff likely filed her EEOC complaint in 2020, [4] appears to have been last employed by defendant in 2009, and complains of alleged employment discrimination occurring as early as 1995, her filing of an EEOC complaint in 2020 is clearly more than 300 days after the alleged discrimination occurred. Thus, any

cognizable Title VII claims arising out of her employment with defendant are barred by the statute of limitations.

**\*5** However, even if the statute of limitations was not an issue, plaintiff's claims still must fail because plaintiff's claims fail to state any cognizable legal claim under the United States Constitution, federal statute, or state law, and ultimately fails establish this Court's jurisdiction under federal question or diversity jurisdiction. [5] Plaintiff makes several disjointed, confusing claims about being sold as a prostitute against her will by defendant's employees and other nonparties, defendant's employees and others murdering innocent people, defendant's employees drinking plaintiff's blood, and being stalked and prostituted by various officials from Jamaica and employees of defendant's company. See generally dkt. nos. 1, 4, 6, 7. Plaintiff makes several allegations against her former supervisor, Ms. Rattray, and says the various physical wrongdoings Ms. Rattray committed against plaintiff were all due to "The employment agreement between The Plaintiff and CIBC FirstCarribean Jamaica." Dkt. No. 1 at 60-61. Although plaintiff's submissions seem to suggest that she was employed by defendant at some point in time, and that a supervisor told her she could not be a lawyer due to her race and denied promised salary increases for unclear reasons, nothing about the factual allegations pleadings suggest that she presents a valid employment discrimination claim under Title VII or any other statute.

The Court is at a loss as to how the allegations in the complaint relate to a valid employment discrimination claim or any valid legal claim. Plaintiff presents a difficult to comprehend series of allegations against various individuals – many of whose connections to her apparent former employer is difficult, if not impossible, to comprehend – who she alleges forced her into prostitution, performed plastic surgeries on her against her will, installed "spying devices" into plaintiff's body, forced her to undergo various injections, and involved plaintiff in murder scheme that is somehow related to her Easter birthday. See Dkt. No. 1 at 56-60. Plaintiff also sets forth unexplained allegations that appear to involve Ms. Rattray and others, such as "an abuse of a veteran of the United States Army by the said Allison Carolyn Rattray" (dkt. no. 1 at 54). Plaintiff submits dozens of pages of exhibits and supplements that appear to relate to cases filed in other courts, orders of protection obtained in other courts, unemployment insurance issues, police reports, and documents sent to various federal agencies. See dkt. nos. 4, 5, 6, 7. The relevance of this deluge of documents is entirely unclear.

Further, to the extent plaintiff requests injunctions (dkt. no. 1 at 71) to prevent defendant's employees from prostituting or harming plaintiff or seeks some kind of prosecution of defendant's employees for criminal conduct, this Court does not have authority to direct persons to cease engaging in illegal activity through a civil suit as it is not a law enforcement agency. It appears plaintiff is either seeking the criminal prosecution of an individual or individuals or a law enforcement investigation, which is beyond this Court's jurisdiction. See generally [image] Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); McFadden v. Ortiz, 5:12-CV-1244(MAD/ATB), 2013 WL 1789593 (N.D.N.Y. Apr. 26, 2013) (noting that there is no private right of action to enforce either state or federal criminal statutes).

Next, plaintiff files an "emergency motion" for the Death Penalty, [6] which appears to ask the United States Supreme Court to enforce the death penalty against various individuals who plaintiff contends engaged in "drug assisted surgeries on The Plaintiff herein to induce The Coronavirus ahead of the proposed mass vaccination of the US public, which is set for May 1, 2021[,]" implanting maggots into plaintiff's bones, releasing poisons into plaintiff's body, "install[ing] television" and "Netflix Television" into plaintiff's eye and spinal cord, "alter[ing]" plaintiff's "joints to make [her] walk in [sic] all four" to be "displayed as a naked dog on a lease [sic]," and other similar allegations. See Dkt. No. 5. As discussed above, this Court does not have the authority or jurisdiction to sua sponte impose the death penalty in a civil case nor can it seek the criminal prosecution of individuals or at the request of a plaintiff or decide the ultimate punishment if convicted after a criminal trial.

**\*6** Generally, in cases involving pro se plaintiffs, a court should not dismiss a complaint without granting leave to amend "at least once" "when a liberal reading of the complaint gives any indication that a valid claim might be stated." [image] Branum v. Clark, 927 F.2d 698, 704-05 (2d Cir. 1991). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." [image] Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); see also [image] Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be

dismissed with prejudice."). The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may sua sponte dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint."). Thus, although the Court must show special solicitude to pro se litigants, see Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and is to exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, ..." Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), the Court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis.

Even if, arguendo, the statute of limitations was not a jurisdictional bar and plaintiff had been able to establish this Court's jurisdiction, the undersigned would still recommend dismissal with prejudice on its initial review as plaintiff's complaint is "factually frivolous." See Bennett v. Mnuchin, 6:20-CV-243 (BKS/TWD), 2020 WL 1674068 (citing Denton v. Hernandez, 504 U.S. 25, 32-33 (1992)) (holding that a court may dismiss a factually frivolous claim when the allegations are "clearly baseless," including claims that

"describ[e] fantastic or delusional scenarios."); Brown v. New York State Educ. Dept., 8:18-CV-169 (TJM/CFH), 2018 WL 1865547, at *2 (N.D.N.Y. Mar. 19, 2018) (dismissing pro se plaintiff's complaint with prejudice where "it is clear that no federal claim can be stated on these facts[.]"). Accordingly, the undersigned recommends dismissal with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as any leave to amend would be clearly futile.

### IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be granted for purposes of filing only; and it is

**RECOMMENDED**, that plaintiff's complaint (dkt. no. 1) be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED**, that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) be **DISMISSED**; and it is further

**RECOMMENDED**, that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) be **DISMISSED AS MOOT**.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has FOURTEEN (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [7]

### All Citations

Slip Copy, 2021 WL 3518439

## Footnotes

1   Plaintiff is still financially responsible for any other fees or costs she may incur.

2   It appears that the EEOC dismissal notice is dated September 10, 2020. Dkt. No. 1-1.

3   A plaintiff establishes "a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class." Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005) overruled on other grounds Zarda v. Altitude Express, Inc., 883 F.3d 100 (2d Cir. 2018).

4   As the EEOC dismissal notice is dated September 10, 2020, the Court makes the reasonable inference that plaintiff filed her EEOC complaint some time in 2020.

5   Even if this Court were to assess this case as seeking to proceed under diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), the plaintiff has also failed to set forth a cognizable state law claim. Scherer v. Equitable Life Assur. Soc'y of the United States, 347 F.3d 394, 397 (2d Cir. 2003) (quoting 28 U.S.C. § 1332(a)) (noting that diversity jurisdiction "confers original jurisdiction on the federal district courts with respect to 'all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States.' ").

6   This "emergency motion" notes that it is presented to the United States Supreme Court, but contains a caption including this Court. It is unclear if this is a document plaintiff intends to submit before this Court, or before the United States Supreme Court. See dkt. no. 5.

7   If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

---

**End of Document**                                          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3204860
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Myrna Althia Alicia WALKER, Plaintiff,

v.

CIBC LIMITED, Defendant.

1:20-CV-1337 (TJM/CFH)
|
Signed 07/29/2021

**Attorneys and Law Firms**

Myrna Althia Alicia Walker, Albany, NY, Pro Se.

**DECISION and ORDER**

THOMAS J. McAVOY, Senior United States District Judge

## I. INTRODUCTION

**\*1** This case was before the Hon. Christian F. Hummel, United States Magistrate Judge, for an initial review of plaintiff's complaint and other filings pursuant to 28 U.S.C. § 1915(e)(2)(B). Judge Hummel recommends that plaintiff's complaint (dkt. no. 1) be dismissed with prejudice; that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) be dismissed; and that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) be dismissed as moot. *See* April 13, 2021 Report-Recommendation & Order, dkt. no. 10. Plaintiff did not file objections directed to Judge Hummel's recommendations, and the time to do so has expired. Plaintiff did, however, file an amended complaint. For the reasons that follow, the Court adopts Judge Hummel's recommendations, and independently reviews plaintiff's amended complaint and finds it fails to assert viable causes of action.

## II. DISCUSSION

### a. Complaint

As Judge Hummel explains, plaintiff *pro se* Myrna Althia Alicia Walker purported to commence this action on October 28, 2020, by submitting a complaint and application to proceed in forma pauperis ("IFP") in lieu of paying the Court's filing fee. *See* Dkt. No. 1 ("Compl."); Dkt. No. 2. On March 15, 2021, plaintiff submitted a supplement to her complaint.

Dkt. No. 4. On April 6, 2021, plaintiff submitted an additional filing entitled "Emergency Petition for the Death Penalty Against Adethia Keisha Fitten and Others on the Principle Found in the Law of Necessity." Dkt. No. 5. On April 7, 2021, plaintiff submitted an additional 86 pages to supplement to her complaint. Dkt. Nos. 6, 7. On April 8, 2021, plaintiff submitted additional exhibits and a letter requesting to file those exhibits under seal. Dkt. No. 8.

Plaintiff purports to bring this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000, *et seq.* On her form Title VII complaint, she indicates that defendant discriminated against her due to her race and color, religion, sex, and "my date of birth – Easter." Compl. at 2. Plaintiff further indicates, through checking the boxes on the form complaint, that defendant terminated her employment, failed to promote, engaged in unequal terms and conditions of employment, retaliated against her, and "forced prostitution; [i]dentity theft, which is used to do Bank frauds & Poisonings." *Id.* Plaintiff's complaint, inclusive of exhibits, is 158 pages long. Dkt. No. 1. The exhibits include an 80-page letter relating to apparent visa fraud that plaintiff sent to the US Department of Justice, the United States Department of Homeland Security, Immigration and Customs Enforcement, and the Federal Bureau of Investigation, as well as an incident report dated May 29, 2019, regarding an apparent rape of plaintiff.

The supplement plaintiff filed on March 15, 2021 is 112 pages long. Dkt. No. 4. The supplement appears to be filings from a complaint plaintiff had before the Supreme Court, Rensselaer County against Unity House of Troy and Joseph Posa. *Id.* The "emergency motion," filed on April 4, 2021, is 22 pages long, with 70 additional pages of exhibits. Dkt. No. 5. These exhibits are (1) various transfer orders and orders of protection plaintiff either sought or obtained against various individuals in family court proceedings in different counties (dkt. no. 5-1); (2) a residential lease agreement from July 2018, for a property in Troy, New York, with landlord Joseph Posa (dkt. no. 5-2); (3) records from a proceeding before the Rensselaer County Supreme Court in a case captioned Myrna Althia Alicia Walker vs. "Change of Name" Heidi Elizabeth Zuach (dkt. no. 5-3); and (4) a lease agreement dated May 2, 2017, between Capital Group Management LLC and plaintiff for a property in Troy, New York (dkt. no. 5-4). The submission filed on April 7, 2021, is 59 pages long and includes various orders of protection, a USPS tracking number report, a Unity House Domestic Violence Services Transitional Housing Program

Handbook, a form from the Rensselaer County Department of Social Services, earnings statements, a New York State incident report from 2018, an eviction notice, a letter from the Unity House Transitional Housing program, a "notice" letter, and a "birth registration" form. Dkt. No. 6-6. The exhibits filed on April 7, 2021 appear to be letters plaintiff sent to the New York State Department of Labor, United States Department of Homeland Security, Immigration and Customs Enforcement, and the EEOC, apparently related to "pandemic unemployment compensation benefits." *See* dkt. no. 7.

**\*2** Plaintiff's complaint discusses Allison Carolyn Rattray, allegedly the Corporate Secretary and Legal Counsel of defendant CIBC First Caribbean International Bank (Jamaica) Limited. Dkt. No. 1 at 3. Plaintiff contends that Ms. Rattray kills unidentified people "with her married name" and drinks plaintiff's blood. *Id.* Apparently, plaintiff contends that Ms. Rattray is or was her "employer" who "uses the drinking blood of the employee to kill employing the employment agreement and the incomes paid by direct deposit as the consideration for the blood that is drank before the killings and the doomings if [sic] innocent persons." *Id.* at 4. Plaintiff also appears to suggest that Ms. Rattray and her husband, "Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica," forced plaintiff to use "illegal psychotropic medicines," cocaine, and alcohol. *Id.* at 5. Plaintiff refers to an employment agreement she signed with Ms. Rattray in 1995 and appears to suggest that since that date, Ms. Rattray "has been stalking the Plaintiff inside her bedroom, bathroom mirror, on her cell phone from 1995 even until today October 20, 2020 even the bathroom staples [sic] has visual and audio devices inside of them." *Id.* at 6. The Complaint then appears to proceed to explain why Ms. Rattray and her various family members are carrying out unspecified killings. *See generally* Dkt. No. 1. Plaintiff further suggests that through her employment with defendant, both defendant and the Commercial Division of the Supreme Court of Jamaica

has been using me as a sex doll; as sex services; as sex product also incorporating The University of the West Indies Hospital to do surgeries; using illegal force of The Jamaican police; using the illegal Force of the Jamaican Army; using the illegal force of the Jamaican parliament to have

men from any where have sex with The Plaintiff because The Plaintiff was born on the day the crucifixion was celebrated, that is Easter and Good Friday.

*Id.* at 13. Plaintiff asks the Court for

an Injunction to stop, restrain and prevent Allison Carolyn Rattray (maiden name Smith), Corporate Secretary and Legal Counsel, CIBC First Carribean Jamaica; her husband, Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica, King Street, Kingston, Jamaica, West Indies Deryke Smith, her brother; Lacelles Smith retired lecturer The University of the West Indies, Jamaica, West Indies; and the Rhoda Ford children and others from practicing their religion in a way that results in the death or harm or injury of The Rights of The Plaintiff and or the mother of The Plaintiff and or the siblings of The Plaintiff; and or any member of The Public, which includes anyone in the global community.

*Id.* at 14.

As for plaintiff's first cause of action, plaintiff lists:

forced religion imposed on The Plaintiff whom is the employee by The Employer, CIBC Limited. The Forced Religion imposed on Myrna Althia Alicia Walker [ ] to kill innocent Persons. The daily murders of innocent Persons is used to supply the demands of the global organ Donor list. The staff is Allison Carolyn Rattray.

Dkt. No. 1 at 69. As for a second cause of action is

> employment discrimination – I chose a
> career path to be an Attorney-At-Law.
> Allison Carolyn Rattray (maiden name
> Smith) my (former) then manager at
> CIBC had me fired; told me that (1)
> I am not worthy to be an Attorney-at-
> Law because of my Race (2) I was not
> worthy to be in the same Profession
> as her. She has been defaming my
> character ever since.

*Id.* at 70. The third cause of action is listed as

> employment        discrimination -
> compensation: denied increases in my
> salary verbally communicated to me
> by Ms. Cherlyn Blackman my Senior
> Manager of 3% in 2004; Denied
> Promotion communicated to me by
> Human Resources Regional Director,
> Jerime Cjnttihs-Bell; denied fringe
> benefits that accompanied my five (5)
> CIBC Achievers awards – my salary
> was split and part paid to my aunt.

*Id.* In the prayer for relief, plaintiff requests:

> (1) an Injunction(s) for Criminal
> Indictment(s) of Allison Carolyn
> (Smith) Rattray, Corporate Secretary
> and Legal Counsel CIBC for her
> forced Prostitution of The Plaintiff and
> Others; (2) An Injunction to prevent
> and stop all Prostitution or abuse of
> The Plaintiff; (3) Restitution(s) by
> CIBC for lost Incomes and fringe
> benefits[; and] (4) Job Reference letter
> from CIBC and an apology and my
> land Title Deed.

*Id.* at 71.

Judge Hummel found (a) that plaintiff's complaint fails to meet the pleading requirements of Fed. R. Civ. P. 8 and 10, *see* Dkt. 10 at 8-9; (b) plaintiff's claims under Title VII (1) are barred by the statute of limitations, and (2) fail to state a claim for employment discrimination in violation of Title VII, *see id.* at 9-10; and (c) apart from the Title VII claims, "plaintiff's claims fail to state any cognizable legal claim under the United States Constitution, federal statute, or state law, and ultimately fails [to] establish this Court's jurisdiction under federal question or diversity jurisdiction." *Id.* at 10. Judge Hummel indicated that he was

> **\*3** at a loss as to how the allegations in the
> complaint relate to a valid employment discrimination
> claim or any valid legal claim. Plaintiff presents a
> difficult to comprehend series of allegations against
> various individuals – many of whose connections to her
> apparent former employer is difficult, if not impossible, to
> comprehend – who she alleges forced her into prostitution,
> performed plastic surgeries on her against her will, installed
> "spying devices" into plaintiff's body, forced her to undergo
> various injections, and involved plaintiff in a murder
> scheme that is somehow related to her Easter birthday. *See*
> Dkt. No. 1 at 56-60. Plaintiff also sets forth unexplained
> allegations that appear to involve Ms. Rattray and others,
> such as "an abuse of a veteran of the United States Army by
> the said Allison Carolyn Rattray" (dkt. no. 1 at 54). Plaintiff
> submits dozens of pages of exhibits and supplements that
> appear to relate to cases filed in other courts, orders
> of protection obtained in other courts, unemployment
> insurance issues, police reports, and documents sent to
> various federal agencies. See dkt. nos. 4, 5, 6, 7. The
> relevance of this deluge of documents is entirely unclear.

*Id.* at 11.

Judge Hummel also concluded that to the extent plaintiff requests injunctions (dkt. no. 1 at 71) to prevent defendant's employees from prostituting or harming plaintiff or seeks some kind of prosecution of defendant's employees for criminal conduct, this Court does not have authority to direct persons to cease engaging in illegal activity through a civil suit as it is not a law enforcement agency. *Id.* at 11-12.

As to plaintiff's "emergency motion" for the Death Penalty, Judge Hummel found that it appears to ask the United States Supreme Court to enforce the death penalty against various

individuals who plaintiff contends engaged in "drug assisted surgeries on The Plaintiff herein to induce The Coronavirus ahead of the proposed mass vaccination of the US public, which is set for May 1, 2021[,]" implanting maggots into plaintiff's bones, releasing poisons into plaintiff's body, "install[ing] television" and "Netflix Television" into plaintiff's eye and spinal cord, "alter[ing]" plaintiff's "joints to make [her] walk in [sic] all four" to be "displayed as a naked dog on a leash [sic]," and other similar allegations. *See* Dkt. No. 5. Judge Hummel concluded that "this Court does not have the authority or jurisdiction to *sua sponte* impose the death penalty in a civil case nor can it seek the criminal prosecution of individuals or at the request of a plaintiff or decide the ultimate punishment if convicted after a criminal trial." Dkt. 10 at 12.

Judge Hummel concluded that although the Court must show special solicitude to *pro se* litigants, and is to exercise "extreme caution ... in ordering sua sponte dismissal of a *pro se* complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, ..." *id.* at 14 (quoting 🔖 *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted)), the Court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action *in forma pauperis. Id.* Judge Hummel concluded:

> Even if, *arguendo*, the statute of limitations was not a jurisdictional bar and plaintiff had been able to establish this Court's jurisdiction, the undersigned would still recommend dismissal with prejudice on its initial review as plaintiff's complaint is "factually frivolous." *See Bennett v. Mnuchin*, 6:20-CV-243 (BKS/TWD), 2020 WL 1674068 (citing 🔖 *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992))* (holding that a court may dismiss a factually frivolous claim when the allegations are "clearly baseless," including claims that "describ[e] fantastic or delusional scenarios."); *Brown v. New York State Educ. Dept.*, 8:18-CV-169 (TJM/CFH), 2018 WL 1865547, at *2 (N.D.N.Y. Mar. 19, 2018)* (dismissing *pro se* plaintiff's complaint with prejudice where "it is clear that no federal claim can be stated on these facts[.]"). Accordingly, the undersigned recommends dismissal with prejudice pursuant to 🔖 28 U.S.C. § 1915(e)(2)(B)(i) as any leave to amend would be clearly futile.

**\*4** *Id.* at 14. As indicated above, Judge Hummel also recommends that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) be dismissed, and that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) be dismissed as moot. *Id.* at 15.

After examining the record, this Court has determined that the recommendations in the Report-Recommendation and Order are not subject to attack for plain error or manifest injustice. Further, even if plaintiff's amended complaint is treated as an objection, the Court has completed a *de novo* review and has determined to adopt Magistrate Judge Hummel's recommendations for the reasons stated in his report.

**b. Amended Complaint**

As indicated, plaintiff filed an amended complaint after Judge Hummel recommended that the complaint be dismissed with prejudice. After a review of the amended complaint, the Court finds that it too must be dismissed with prejudice.

Plaintiff's amended complaint is a form Title VII complaint. *See* dkt. no. 11. She indicates that the defendant is "CIBC Limited/Michael Capatide CEO CIBC." *Id.* at ¶ 3(b). [1] Plaintiff checks the boxes indicating that the defendant discriminated against her on account of her "race or color," "religion," "sex (or sexual harassment)," "national origin," and "other" indicating on the line that follows: "my right to marry; my right to life; my right to work and provide for my daily living expenses." *Id.* at ¶ 6. Where plaintiff is asked to indicate what the complained-of conduct involves, she checked the boxes for "failure to employ," "termination of employment," "failure to promote," "unequal terms and conditions of employment," "retaliation," and "other acts as specified below" after which she writes: "I am being sex trafficked by CIBC First Caribbean staff in lieu of my salary." *Id.* at ¶ 7. In the section of the amended complaint asking for the facts underlying her claims, plaintiff asserts she is being sex trafficked because she was born on Easter and that the sex trafficking is in lieu of her salary paid to her by CIBC First Caribbean Jamaica." *Id.* ¶ 8. She also asserts that "the force" of the Jamaican Police, the Jamaican Judiciary, the Jamaican Hospital, and the University of the West Indies are conspiring with her "Walker relatives used to commit crimes with my identity using identity theft of Myrna Suzette Walker employed by Jamaican government Judge Barrington Andrew Rattray & Allison Carolyn Rattray." *Id.* In addition, she asserts that "Adethia Keisha Fitten is physically cutting me to create presumed consent for the crimes organized by Judge Barrington Andrew Rattray." *Id.*

The First Cause of Action alleges "forced organized criminality using the salary that was paid to the plaintiff by CIBC First Caribbean Jamaica January 1, 1995 to March 28, 2009." It also asserts that Myrna Suzette Walker "is a thief," and that "Allison Carolyn Rattray ... hired Myrna Suzette Walker and her five (5) children and Adethia Keisha Fitten to steal and to say that the stealing was done by the plaintiff." Plaintiff also appears to indicate that "to do the stealing," Myrna Suzette Walker "and others" repeatedly physically injure plaintiff. As discussed by Judge Hummel, these allegations do not provide plaintiff with a timely Title VII cause of action, *see, e.g.,* Am. Compl. attach. 4, dkt. no. 11-4 at 1, [2] nor do they provide a basis for the relief plaintiff seeks. *See* Dkt. 11, at 5. [3]

**\*5** The Second Cause of Action asserts violations of the "Human Rights Act of 1998." The Human Rights Act of 1998 appears to be a law or act of Parliament in the United Kingdom. *See Brady v. Wks. Med. Ctr.*, No. 19-CV-00655-SM, 2019 WL 6529870, at \*2 (D.N.H. Nov. 12, 2019)("A law in effect in the United Kingdom bears that title.")(citing Human Rights Act 1998, ch. 42, http://www.legislation.gov.uk/ukpga/1998/42/contents), *report and recommendation approved*, No. 19-CV-655-SM, 2019 WL 6529459 (D.N.H. Dec. 4, 2019); *Simpson v. Dauphin Cty. Hous. Auth.*, No. 1:16-CV-01747, 2017 WL 2375702, at \*2, n. 4 (M.D. Pa. Apr. 26, 2017) ("Simpson also references a 'Human Rights Act of 1998,' which as best we can tell refers to an Act of Parliament of the United Kingdom, not applicable in this jurisdiction."), *report and recommendation adopted*, No. 1:16-CV-1747, 2017 WL 2362510 (M.D. Pa. May 31, 2017). The Human Rights Act of 1998 does not provide plaintiff with a viable cause of actions against the defendant for any events occurring in the Northern District of New York over which this Court would have jurisdiction. *See Brady*, 2019 WL 6529870, at \*2.

The Third Cause of Action is confusing but appears to be a claim seeking unpaid wages. *See* dkt. no. 11 at 4 (stating at the start of Third Cause of Action: "The right to my paycheck."). Plaintiff asserts that her aunt Myrna Suzette Walker "assisted by CIBC First Caribbean staff Allison Carolyn Rattray has been falsely selling me as a whore in lieu of my current income(s) from JC Penney, Aerotek, Walmart, Fidelis Care and more." However, Myrna Suzette Walker, Allison Carolyn Rattray, JC Penney, Aerotek, Walmart, or Fidelis Care are not defendants in this action. Further, plaintiff does not assert when it was that she worked at JC Penney, Aerotek, Walmart, or Fidelis Care, or when or where it was that Myrna

Suzette Walker and Allison Carolyn Rattray purportedly took actions preventing plaintiff from receiving her wages from these employers. The claim in this regard fails to assert a viable cause of action under Title VII. In addition, in nearly incomprehensible fashion plaintiff ends the Third Cause of Action by asserting: "The rapes of me by co-workers is [sic] recorded and published. Walmart staff a [sic] man named Donnell she [sic] gave permission to live in my apartment as well as Fidelis Care Health Insurance staff- Rashid Rardon." These allegations fail to provide a sufficient basis for the Court to discern any viable cause of action under Title VII or any other law or statute over which the Court would have jurisdiction.

Accordingly, for the reasons set forth above plaintiff's amended complaint will be dismissed. Because the allegations in the amended complaint are factually frivolous, and because plaintiff filed an amended complaint that did not cure the pleading defects pointed out by Judge Hummel, dismissal will be with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as any leave to amend would be futile.

### III. CONCLUSION

For the reasons discussed above, the Court **ACCEPTS AND ADOPTS** Judge Hummel's recommendations in the April 13, 2021 Report-Recommendation & Order, dkt. no. 10. Thus, it is hereby

**ORDERED** that plaintiff's complaint (dkt. No. 1) is **DISMISSED with prejudice**; and it is further

**ORDERED** that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) is **DENIED and DISMISSED**; and it is further

**ORDERED** that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) is **DENIED and DISMISSED as moot**.

Based on the Court's review of the amended complaint, it is hereby

**ORDERED** that plaintiff's amended complaint (dkt. No. 11) is **DISMISSED with prejudice**.

The Clerk of the Court may mark this file as closed.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2021 WL 3204860

## Footnotes

1    At paragraph 3(a) asking to identify the defendant, plaintiff writes: "Not Applicable"

2    Dkt. no. 11-4 is a letter from Maureen Kielt, Director of the EEOC Buffalo Local Office to plaintiff in the matter of *Walker v. CIBC* confirming that plaintiff indicated that her "last date of harmed occurred on March 24, 2009, when [she] was terminated," thus making her EEOC administrative claim against CIBC untimely. Dkt. No. 11-4 at 1.

3    In the Prayer for Relief, plaintiff requests the Court to grant the following relief:

    1. The plaintiff <u>do</u> <u>not</u> [sic] want to be a party to the religious killing business of Myrna Suzette Walker; her five children; and CIBC First Caribbean Jamaica staff, Allison Carolyn Rattray and her husband Judge Barrington Andrew Rattray, Supreme Court of Jamaica;

    2. The plaintiff do not [sic] want cocaine nor any thing to ingest from anyone, by force or otherwise.

    3. The plaintiff wants full restitution socially, physically, professionally.

    Dkt. 11, at 5 (emphasis in original).

---

**End of Document**    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2023 Thomson Reuters. No claim to original U.S. Government Works.    6

2013 WL 1789593
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Alexander McFADDEN, Plaintiff,

v.

Jose D. ORTIZ, Executive Officer Chase JP
Morgan Chase & Co., and James Simon, Manager
Chase JP Morgan Chase & Co., Defendants.

No. 5:12–CV–1244 (MAD/ATB).
|
April 26, 2013.

**Attorneys and Law Firms**

Alexander McFadden, Pine City, NY, pro se.

Jose D. Ortiz, Executive Officer for Chase JP Morgan Chase & Co., Houston, TX.

James Simon, Manager for Chase JP Morgan Chase & Co., New York, NY.

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

**I. INTRODUCTION**

 *1 Plaintiff *pro se* Alexander McFadden ("McFadden"), an inmate at the Southport Correctional Facility ("SCF"), filed this action pursuant to 42 U.S.C. § 1983. In his complaint, Plaintiff appears to allege that Defendants, two executives of Chase JP Morgan Chase & Co. ("Chase"), violated his constitutional rights through conduct that, in some way, involved a bank account. *See* Dkt. No. 1 at ¶ 4.

On August 7, 2012, Magistrate Judge Andrew T. Baxter issued an Order and ReportRecommendation, recommending that the Court dismiss Plaintiff's complaint in its entirety with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). *See* Dkt. No. 5. Currently before the Court are Plaintiff's objections to Magistrate Judge Baxter's August 7, 2012 Order and ReportRecommendation.

**II. BACKGROUND**

In his Order and Report–Recommendation dated August 7, 2012, Magistrate Judge Baxter recommended that Plaintiff's motion to proceed *in forma pauperis* ("IFP") should be denied by the Court and, upon review of the complaint, that this action be dismissed in its entirety with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). *See* Dkt. No. 5 at 9. Further, Magistrate Judge Baxter recommended that if the Court approves his report, the Court should certify that any appeal from this matter will not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3). *See id.*

Regarding Plaintiff's complaint, Magistrate Judge Baxter's Order and ReportRecommendation recommends that because there is no indication that either Defendant acted under "color of state law," and because there are no allegations that either or both Defendants "conspired" with any state actors to bring this action under section 1983, Plaintiff's complaint should be dismissed. *See* Dkt. No. 5 at 5.

Regarding Plaintiff's claim that Defendants violated New York Penal Law by offering false documents for filing, tampering with public records, and falsifying business records, Magistrate Judge Baxter recommended that because there is no private right of action to enforce either state or federal criminal statutes, Plaintiff is barred from bringing a claim to enforce these provisions of the New York State Criminal Law. *See* Dkt. No. 5 at 6.

Accordingly, Magistrate Judge Baxter recommended this Court hold that, due to Plaintiff's failure to state a claim under 42 U.S.C. § 1983 upon which relief can be granted, combined with the courts inability to determine what venue might be appropriate, Plaintiff's motion for IFP should be denied, and Plaintiff's complaint should be dismissed in its entirety with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). *See* Dkt. No. 5 at 9.

In his "objections" to Magistrate Judge Baxter's Order and Report–Recommendation, Plaintiff simply provides the Court with language from various cases discussing various types of objections and the Court's authority to review unpreserved errors. *See* Dkt. Nos. 14, 15.

### III. DISCUSSION

**A. Review of a magistrate judge's decision**

**\*2** If a party files specific objections to a magistrate judge's report-recommendation, the district court performs a *"de novo* determination of those portions of the report of specified proposed findings or recommendations to which objections is made." 28 U.S.C. § 636(b)(1) (2006). However, if a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that were presented] to the magistrate judge," the court simply reviews those recommendations for clear error. *O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL 933846, \*1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). At the conclusion of the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**B. *In Forma Pauperis* application**

In order for a plaintiff to proceed without payment of any fees, he must first meet the financial criteria for IFP status. *See* 28 U.S.C. § 1915(a)(1). The plaintiff must submit an affidavit, including a statement of all assets, establishing his inability to pay the filing fee of $350.00. *See id.* Here, Plaintiff submitted a standard IFP application form, but answered only some of the relevant questions. Furthermore, while Plaintiff is incarcerated and has filed a motion to proceed IFP, his application states that, in the past twelve months, he has had income from "[b]usiness, profession or other self employment," and has "millions of dollars" in "cash, checking or savings accounts." *See* Dkt. No. 2 at ¶¶ 3, 4. Plaintiff, however, does not answer the question that asks him to "describe the source of money and state the amount received and what you expect you will continue to receive ." *See id.* at ¶ 3. Plaintiff answers "yes" to the questions asking whether he owns "real estate, stocks, bonds, securities, other financial instruments, automobile or any other assets." *See id.* at ¶ 5. Once again, however, Plaintiff does not complete the question by describing the property and stating its value. *See id.* Lastly, the form indicates that Plaintiff only has $9.60 in his prison account, and that during the last six months prior to this application, the average balance in his prison account was $4.03. *See* Dkt. No. 2 at 2.

If Plaintiff's claims are true and he does in fact have millions of dollars and real estate or other valuable property, then he cannot meet the financial requirements for proceeding IFP. Generally, when plaintiff has failed to properly complete the IFP request, the court will deny IFP without prejudice and allow plaintiff to resubmit the form with proper information. However, in this case, based upon the inadequacy of Plaintiff's responses, combined with his failure to state a plausible cause of action and the fact that amendment would be futile as discussed below, even if Plaintiff met the financial requirements for IFP, the Court would still find dismissal of this action to be proper.

**C. Sufficiency of the complaint**

*1. Legal Standard*

**\*3** In addition to determining whether Plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if it determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B) (i)-(iii).

*2. Application*

*a. Color of state law*

Plaintiff brings this complaint pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1. To state a claim under section 1983, a plaintiff must allege two elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a deprivation of her rights or privileges as secured by the Constitution of the United States. *See Annis v.*

*County of Westchester,* 136 F.3d 239, 245 (2d Cir.1998). Under extremely limited circumstances not alleged here, private actors, such as Defendant, may be held liable under section 1983. *See White v. Monarch Pharmaceuticals,* Inc., No. 08–CV–0430, 2009 WL 3068217, \*1 (2d Cir. Sept. 28, 2009); *see also Rendell—Baker v. Kohn,* 457 U.S. 830, 838–42 (1982). The law does not reach private conduct, no matter how "discriminatory or wrongful." *Annis,* 136 F.3d at 245 (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1002 (1982)).

In the present matter, Plaintiff names two executives of Chase as Defendants. Along with being very difficult to determine what these Defendants allegedly did to Plaintiff, there is no indication that either Defendant acted under color of state law. Moreover, the complaint does not allege or suggest that Defendants conspired with a state actor to violate his constitutional rights. Further, Plaintiff does not allege any conduct attributable to either Defendant sufficient to establish their personal involvement in any alleged constitutional deprivation. *See* 🚩 *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quotation and other citations omitted).

Based on the foregoing, the Court finds that Magistrate Judge Baxter correctly recommended that the Court should dismiss the complaint.

### b. Criminal statutes

Plaintiff states in the "Causes of Action" section of his complaint that Defendants violated the New York Penal Law regarding falsifying business records, tampering with public records, and offering false documents for filing. *See* Dkt. No. 1 (citing 🚩 N.Y. PENAL LAW §§ 175.10, 175.25, and 175.35). Even if this is true, however, there is no private right of action to enforce either state or federal criminal statutes. *See Abrahams v. Incorporated Village of Hempstead,* No. 08–CV–2584, 2009 WL 1560164, *8 (E.D.N.Y. June 2, 2009) (holding that dismissal of civil suit for perjury was proper because there is no private right of action for perjury under New York Law). Therefore, even assuming, *arguendo,* that Defendants violated some criminal statutes, Plaintiff may not bring a claim based on those statutes to enforce New York Criminal Law.

**\*4** As such, Magistrate Judge Baxter correctly recommended the Court find that Plaintiff has failed to allege a plausible cause of action.

### c. Venue

Venue in federal-question cases is generally determined by 🚩 28 U.S .C. § 1391(b) which provides that

> [a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise

provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, ... or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

🚩 28 U.S.C. § 1391(b). In this case, one of the Defendants is listed with a Houston, Texas address, while the other Defendant is listed as having a New York City address. *See* Dkt. No. 1 at ¶¶ 3(a) and (3)(b). Thus, neither of the Defendants reside, or are located, in the Northern District of New York. Plaintiff is incarcerated at Southport Correctional Facility, located in the Western District of New York. Therefore, since both Plaintiff and one of the Defendants are New York residents, this case could clearly not be brought as a diversity action. Moreover, under Plaintiff's 🚩 section 1983 claim, venue is not proper in the Northern District of New York. All Defendants do not reside in the same state, neither Defendant is located in this district, and the complaint does not allege any conduct that occurred in the Northern District of New York.

Under 28 U.S.C. § 1406, a district court faced with a case brought "laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The Second Circuit has suggested that "a district court should not dismiss for improper venue on its own motion except in extraordinary circumstances." 🚩 *Concession Consultants, Inc. v. Mirisch,* 355 F.2d 369 (2d Cir.1966).

In the present matter, the Court finds and agrees with Judge Baxter's Order and ReportRecommendation that this case presents precisely the extraordinary circumstances making it proper for the Court to dismiss for improper venue *sua sponte.*

### d. Leave to amend

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint

gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citations omitted). Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it ." *Id.* (citation omitted); *see also* *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993).

 **\*5**  Here, the Court agrees with Magistrate Judge Baxter that any attempt by Plaintiff to amend his complaint would be futile. As discussed, although Plaintiff alleges "due process violations," section 1983 does not permit such actions to be brought against private individuals absent some involvement by the state. Moreover, Plaintiff does not have the right to enforce New York State criminal statutes.

Based on the foregoing, the Court finds that Magistrate Judge Baxter correctly recommended that the Court should dismiss Plaintiff's complaint with prejudice.

## IV. CONCLUSION

After carefully considering Magistrate Judge Baxter's Order and Report–Recommendation, the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Baxter's August 7, 2012 Order and Report–Recommendation is **ADOPTED** in its entirety for the reasons stated therein; and the Court further **ORDERS** that Plaintiff's application to proceed *in forma pauperis* is **DENIED;** and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii); and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve Plaintiff with a copy of this Memorandum–Decision and Order in accordance with Local Rules.

**IT IS SO ORDERED.**

## All Citations

Not Reported in F.Supp.2d, 2013 WL 1789593

---

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 198143
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Shanise SHIDAGIS, Plaintiff,

v.

BROOME COUNTY D.S.S.; and Jill
Dominguez, Case Manager, Defendants.

3:23-CV-0031 (BKS/ML)
|
Signed January 17, 2023

**Attorneys and Law Firms**

SHANISE SHIDAGIS, Plaintiff, Pro Se, 202 Oak Hill
Avenue, Endicott, New York 13760.

**ORDER and REPORT-RECOMMENDATION**

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent a *pro se* complaint in the above
captioned action together with an application to proceed *in
forma pauperis*, filed by Shanise Shidagis ("Plaintiff") to the
Court for review. (Dkt. Nos. 1, 2.) For the reasons discussed
below, I grant Plaintiff's *in forma pauperis* application, and
recommend that Plaintiff's Complaint be dismissed in its
entirety without leave to amend. (Dkt. Nos. 1, 2.)

**I. BACKGROUND**

Construed as liberally [1] as possible, Plaintiff's Complaint
alleges that her rights were violated by defendants Broome
County Department of Social Services and Jill Dominguez
(collectively "Defendants"). (*See generally* Dkt. No. 1.)
Plaintiff's Complaint is difficult to decipher but she appears
to allege that Defendant Dominguez submitted documents
—presumably to the state family court—titled "Permanency
Hearing Report," which stated that Plaintiff threatened case
planner John Zawiski via text message on October 20, 2022,
stating "I will knock you out." (Dkt. No. 1 at 5; Dkt. No.
1, Attach. 1 at 1.) Plaintiff alleges that this was incorrect
information. (Dkt. No. 1 at 5.)

Based on these factual allegations, Plaintiff asserts the
following two claims: (1) one claim for forgery, and (2) one
claim for falsification of documents. (Dkt. No. 1 at 5.) As

relief, Plaintiff requests that the "law [be] pressed to the
fullest." (*Id.*)

**II. PLAINTIFF'S APPLICATION TO PROCEED *IN
FORMA PAUPERIS***

"When a civil action is commenced in a federal district court,
the statutory filing fee, currently set at $402, must ordinarily
be paid." 28 U.S.C. § 1914(a). A court is authorized,
however, to permit a litigant to proceed *in forma pauperis*
status if a party "is unable to pay" the standard fee for
commencing an action. 28 U.S.C. § 1915(a)(1). [2] After
reviewing Plaintiff's *in forma pauperis* application (Dkt.
No. 2), the Court finds that Plaintiff meets this standard.
Therefore, Plaintiff's application to proceed *in forma pauperis*
is granted. [3]

**III. LEGAL STANDARD FOR INITIAL REVIEW OF
THE COMPLAINT**

**\*2** "Notwithstanding any filing fee, or any portion thereof,
that may have been paid, the court shall dismiss the case at any
time if the court determines that ... the action ... (i) is frivolous
or malicious; (ii) fails to state a claim on which relief may be
granted; or (iii) seeks monetary relief against a defendant who
is immune from such relief." 28 U.S.C. § 1915(e)(2).

In addition, the Court shall dismiss any action where the
Complaint fails to allege facts plausibly suggesting subject
matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see Steel
Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89
(1988) (holding that subject matter jurisdiction is a "threshold
question that must be resolved ... before proceeding to the
merits."); *Humphrey v. Syracuse Police Dep't*, 758 F. App'x
205, 205-06 (2d Cir. 2019) (citing *United States v. Bond*,
762 F.3d 255, 263 (2d Cir. 2014)) ("[b]efore deciding any
case on the merits, a district court must determine that it has
subject matter jurisdiction over the matter."); *Koziel v. City
of Yonkers*, 352 F. App'x 470, 471 (2d Cir. 2009) (summary
order) (affirming *sua sponte* dismissal of complaint on
initial review for lack of subject matter); *Talley v. LoanCare
Serv., Div. of FNF*, 15-CV-5017, 2018 WL 4185705, at
\*5 (E.D.N.Y. Aug. 31, 2018) (dismissing on initial review,
action challenging state court mortgage foreclosure judgment
because the court lacked jurisdiction); *Eckert v. Schroeder,
Joseph & Assoc.*, 364 F. Supp. 2d 326, 327 (W.D.N.Y. 2005)
(citing *Hughes v. Patrolmen's Benevolent Ass'n of the City*

*of N.Y., Inc.*, 850 F.2d 876, 881 (2d Cir. 1988), *cert. denied*, 488 U.S. 967 (1988)) ("[a] court shall, *sua sponte*, dismiss a complaint for lack of subject matter jurisdiction as soon as it is apparent that it lacks subject matter jurisdiction.").

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

**IV. ANALYSIS**

In addressing the sufficiency of a plaintiff's complaint, the court must construe her pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

Plaintiff does not have standing to compel any law enforcement agency to prosecute suspected criminal acts because there is no private right of action to enforce state or federal criminal statutes. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *see also Walker v. CIBC Ltd.*, 20-CV-1337, 2021 WL 3518439, at *5 (N.D.N.Y. Apr. 13, 2021) (Hummel, M.J.) ("It appears plaintiff is either seeking the criminal prosecution of an individual or individuals or a law enforcement investigation, which is beyond this Court's jurisdiction."), *report-recommendation adopted by* 2021 WL 3204860 (N.D.N.Y. July 29, 2021) (McAvoy, J.); *McFadden v. Ortiz*, 12-CV-1244, 2013 WL 1789593, at *3 (N.D.N.Y. Apr. 26, 2013) (D'Agostino, J.) (holding that "there is no private right of action to enforce either state or federal criminal statutes.").

**\*3** Moreover, this Court does not have authority to commence its own investigation, commence criminal prosecution, compel a law enforcement agency to investigate suspected criminal activity, or compel a prosecutor to prosecute. Prosecutors possess discretionary authority to bring criminal actions, and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). [4]

As a result, I recommend that Plaintiff's claims be dismissed. *See Sentemetes v. General Elec. Co.*, 14-CV-0131, 2014 WL 2881441, at *14 (D. Conn. June 25, 2014) ("The Court knows of no private action for 'forgery' or 'fabrication of evidence.' "); *Reeves v. Wilkins*, 10-CV-2766, 2012 WL 3835902, at *6 (E.D.N.Y. Aug. 31, 2012) ("New York does not provide a private cause of action for ... forgery."). [5]

**V. OPPORTUNITY TO AMEND**

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [6]

**\*4** Here, leave to amend would be futile because there is no private cause of action to enforce criminal violations. As a result, I recommend that Plaintiff's claims be dismissed without leave to amend. *See McFadden v. Ortiz*, 12-CV-1244, 2013 WL 1789593, at \*5 (N.D.N.Y. Apr. 26, 2013) (D'Agostino, J.) (dismissing without leave to amend the plaintiff's claims seeking to enforce New York State criminal statutes).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED only for purposes of filing and any appeal unless the trial court certifies in writing that the appeal is not taken in good faith**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE BUT WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) because the Court lacks subject matter jurisdiction over Plaintiff's claims; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [7]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [8] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)). [9]

**All Citations**

Slip Copy, 2023 WL 198143

---

### Footnotes

1    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

2    The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

3    Plaintiff is reminded that, although her application to proceed *in forma pauperis* has been granted, she is still required to pay fees that she may incur in this action, including copying and/or witness fees.

4    Further, to the extent that Plaintiff's claims were liberally construed seeking to overturn any state court finding based on the allegedly false information contained in the document submitted by Defendant Dominguez, I recommend that it be dismissed based on the doctrine of abstention set forth in *Younger v. Harris*, 401 U.S. 37 (1971). *See Walker v. Family Court Judge Catherine Cholakis*, 19-CV-1288, 2020 WL 3503158, at \*4 (N.D.N.Y. June 29, 2020) (Kahn, J.) (where the plaintiff challenged a temporary order in an ongoing child custody dispute, alleging that the temporary custody order was gained under "lies and false pretenses and

therefore should be considered invalid," the court found that application of *Younger* abstention barred the plaintiff's federal claims for injunctive relief).

5    The Court also notes that "[a]lthough a municipality is subject to suit pursuant to section 1983, *see* *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal ... department does not have the capacity to be sued as an entity separate from the municipality in which it is located." *White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")), *report and recommendation adopted by*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.). Thus, Defendant Broome County D.S.S. is not a proper party amenable to suit.

6    *See also* *Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

7    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

8    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

9    Plaintiff is reminded that she must immediately notify the Court of any change of address consistent with N.D.N.Y. L.R. 10.1(c)(2), and that her failure to notify the Court of a change of address could result in the involuntary dismissal of her cases for failure to prosecute pursuant to Fed. R. Civ. P. 41(b) and N.D.N.Y. L.R. 41.2(b).

---

**End of Document**                       © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 6274449
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Patrick GUILLORY, Plaintiff,

v.

UPSTATE UNIVERSITY POLICE, et al., Defendants.

5:21-CV-1117 (GLS/ATB)
|
Signed 12/14/2021

**Attorneys and Law Firms**

PATRICK GUILLORY, Plaintiff, pro se.

### REPORT-RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge

**\*1** Plaintiff filed this complaint on October 14, 2021 together with an application to proceed in forma pauperis ("IFP"). (Dkt. Nos. 1, 2). On October 25, 2021, after my initial review of the complaint, I found that plaintiff failed to state a claim in many respects. However, rather than recommending dismissal at that time, I issued an order, granting plaintiff's IFP application for purposes of filing, and giving plaintiff the opportunity to amend his complaint if he chose to do so. (Dkt. No. 4).

I afforded plaintiff forty five (45) days to submit an amended complaint, and noted that if plaintiff did not submit a proposed amended complaint or request an extension of time within which to do so, I would issue a report-recommendation based on the original filing. (Dkt. No. 4 at 9). The deadline for plaintiff to file his proposed amended complaint or request an extension of time to do so has now passed, and the original complaint has been returned to me for further action.

### I. IFP Application

In my October 25, 2021 order, I found that plaintiff was financially eligible for IFP status, and granted his motion for purposes of filing. I also noted that, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any

time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i) - (iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

### II. Complaint

**\*2** For clarity, I will repeat the facts as I stated in my October 25, 2021 order. Plaintiff has captioned his complaint as a "federal lawsuit for retaliation for engaging in protective [sic] conduct" under § 1983.[1] (Compl. at 5-6). He states that on or about September 2, 2021, his "soon to be wife"[2] Karrie Poirier was a patient of defendant Upstate Hospital. (*Id.* at 6). Plaintiff further states that he had an "issue" with several charge nurses who he names as Jane Doe defendants, "on the grounds that [he] objected to [their] medical advice regarding [Ms. Poirier] who currently resides on 6K at Upstate Medical University." (*Id.*). Specifically,

plaintiff alleges that the "defendants" were "trying to release" Ms. Poirier from their care. (*Id.*). Plaintiff "objected" to this decision, citing the fact that Ms. Poirier "has to walk up 21 steps to go back into her home," and the defendants "knew or should have known that [Ms. Poirier] can go up only six steps." (*Id.*). Plaintiff alleges that upon learning of the defendants' decision to discharge Ms. Poirier, he responded by stating, "[Oh] hell no ... you are not releasing her ... I have to call the Fire Department and call 911 to assist my girl up the stairs." (*Id.*). Plaintiff states that Ms. Poirier is a "type 1 diabetic" who requires "dialysis three (3) times a week and four (4) hours a day." (*Id.* at 7).

Plaintiff alleges that after hearing his "objection," the defendant "nurses asserted that since [plaintiff] objected to their bogus medical malpractice," he is now "not allowed to visit [Ms. Poirier]." (*Id.*). He states that he "filed a complaint ... [and] now [he] is banned from seeing [her]." (*Id.*). Plaintiff states that the defendant Upstate University Police subsequently contacted him to advise that he is also prohibited from "even calling Upstate Hospital and speaking to nurses and doctors." (*Id.*). He can only communicate with Ms. Poirier on her cell phone. (*Id.*).

Plaintiff states that "the nurse" alleges that he threatened her by stating that he would file a lawsuit with respect to this incident. (*Id.*). Plaintiff disputes that he "threatened" the nurse, and states that it is his "constitutional right to file a lawsuit." (*Id.*). He states that the nurse did not call security or the defendant Upstate University Police that day. (*Id.*). Plaintiff states that Ms. Poirier "may soon die," and that he will "not be able to see her remains." (*Id.*).

Plaintiff alleges that the defendants have denied him the ability to see or communicate with Ms. Poirier in retaliation for "filing a complaint" and "object[ing] to a safety issue" relative to Ms. Poirier's medical care. (*Id.* at 6-8). In addition to actual and punitive damages, plaintiff seeks an injunction against the defendants "for coming up with bogus charges ... because [he] objected and filed a complaint prior to their retaliation for engaging in protected conduct." (*Id.* at 8).

### III. First Amendment Retaliation

#### A. Legal Standards
"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions

caused him some injury." *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (citing *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)).

With respect to the first prong, the Second Circuit has held that the right to complain to public officials is conduct protected by the First Amendment, and the rights incorporated in the First Amendment include the right to be free from retaliation for exercising those rights. *See Nolen v. Aldrich Pub. Libr.*, No. 2:11-CV-183, 2013 WL 3967924, at *6 (D. Vt. July 31, 2013) (citing *inter alia Dougherty v. Town of North Hempstead*, 282 F.3d 83, 91 (2d Cir. 2002)); *see also Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 240 (E.D.N.Y. 2009).

**\*3** As to the third prong, the Second Circuit has held that the "the harm or injury required to allege a First Amendment retaliation claim varies depending on the factual context." [3] *Morales v. Valley Stream Union Free Sch. Dist. 24*, No. CV 18-3897, 2019 WL 5874136, at *4 (E.D.N.Y. Aug. 14, 2019), *report and recommendation adopted*, 2019 WL 4253975 (E.D.N.Y. Sept. 9, 2019) (citing *Zherka v. Amicone*, 634 F.3d 642, 643 (2d Cir. 2011)). Private citizens alleging retaliation for their criticism of public officials are generally required to show that the alleged adverse action taken in retaliation resulted in actual chilling of their exercise of their constitutional right to free speech. *See Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 430 (S.D.N.Y. 2013); *see also Zherka*, 634 F.3d at 643. "In other private citizen cases, however, the Second Circuit has dispensed with the "chilling" requirement, where the retaliation is alleged to have caused an injury separate from any chilling effect." *Morales*, 2019 WL 5874136, at *4 (citing *Gill v. Pidlypchak*, 389 F.3d 379, 383 (2d Cir. 2004) (holding that "chilling" is only required in cases where a plaintiff states no harm independent of the chilling of speech)); *see also Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) ("Chilled speech is not the *sine qua non* of a First Amendment claim. A plaintiff has standing if he can show either that his speech has been adversely affected by the ... retaliation ... or that he has suffered some other concrete harm."). [4]

#### B. Application

Liberally construed, plaintiff's complaint alleges that the defendants banned him from Upstate Hospital and prohibited him from communicating with Ms. Poirier and her providers, in retaliation for "objecting" to the medical care being provided to her. For the following reasons, the court finds that plaintiff's complaint is subject to dismissal.

### 1. Upstate Hospital and Upstate University Police

Plaintiff has named Upstate Hospital and Upstate University Police as defendants in this matter. The court presumes that the plaintiff is referring to Upstate University Hospital, which is a part of the State University of New York ("SUNY") Upstate Medical University. [5] It is well settled that neither the State of New York, nor its agencies, may be sued under § 1983 because Congress did not abrogate the State's immunity for such claims. *See Barnes v. New York State Div. of Human Rights*, No. 14 Civ. 2388, 2016 WL 110522, at *7 (S.D.N.Y. Jan. 8, 2016) (section 1983 did not abrogate states' immunity) (citing inter alia *Jones v. New York State Metro D.D.S.O.*, 543 F. App'x 20, 22 (2d Cir. 2013)). Accordingly, plaintiff's § 1983 retaliation claim against the hospital is barred by the sovereign immunity protection of the Eleventh Amendment. *See Campbell v. New York City*, No. 12-CV-2179, 2012 WL 3027925, at *3 (E.D.N.Y. July 23, 2012) ("[P]laintiff's § 1983 claims against the Hospital are barred by the ... Eleventh Amendment because this hospital is a branch of SUNY.");

*Dube v. State University of New York*, 900 F.2d 587, 594-95 (2d Cir. 1990) (Eleventh Amendment bars § 1983 suit against SUNY, which is an integral part of the State of New York); *Ding v. Bendo et al.*, No. 03-CV-1237, 2006 WL 752824, at * 3-4 (E.D.N.Y. Mar. 23, 2006) (dismissing plaintiff's § 1983 claims against SUNY Downstate Medical Center because "SUNY and the defendant doctors in their official capacity enjoy immunity from suit under the Eleventh Amendment").

 **\*4** The Upstate Police Department likewise operates as an 'arm of the State,' [6] and is equally subject to Eleventh Amendment immunity. *See Reese v. Breton*, No. 3:18-CV-1465, 2020 WL 998732, at *5 (D. Conn. Mar. 2, 2020)

(citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)) (Eleventh Amendment immunity extends to "government entities that are considered 'arms of the State' ").

Furthermore, neither entity is considered a "person" within the meaning of § 1983. *See Stewart v. John Dempsey Hospital*, No. 3:03-CV-1703, 2004 WL 78145, at *2 (D. Conn. Jan. 9, 2004) (holding that John Dempsey Hospital University of Connecticut Health Center is not a person within the meaning of Section 1983); *Gilliam v. Black*, No. 3:18-CV-1740, 2019 WL 3716545, at *5 (D. Conn. Aug. 7, 2019) ("[A]s state agencies or departments or divisions within state departments, neither UCONN, nor the Connecticut State Police, nor the Department of Correction is a person subject to liability under Section 1983.").

For these reasons, plaintiff's § 1983 retaliation claims against Upstate Hospital and the Upstate University Police should be dismissed.

### 2. John/Jane Doe Nurses and Doctor

Unlike the aforementioned state entities, plaintiff may sue individual state employees for retaliation under § 1983, such as the unidentified nurses and doctor named in his complaint. However, as discussed in my prior order, plaintiff's allegations against the unnamed defendants in this case fail to state a claim upon which relief may be granted. To begin, plaintiff has failed to sufficiently articulate the specific, protected speech which forms the basis of his retaliation claim. At one point in the complaint, the plaintiff describes the protected speech at issue as his verbal "objection" to the hospital staff. (Compl. at 6-7). Later, plaintiff asserts that the protected speech at issue is some, unspecified "filed ... complaint." (*Id.* at 7). It is unclear, however, if plaintiff filed an internal complaint with the hospital, or if he is referring to the instant federal complaint which he subsequently filed. To be sure, the latter does not suffice to form the basis of plaintiff's claim. *See Figueroa v. Holmes*, No. 9:13-CV-48 (FJS/ATB), 2013 WL 5702269, at *7 (N.D.N.Y. Oct. 18, 2013) (adverse action occurring before the alleged protected conduct could not have been in retaliation for the exercise of plaintiff's constitutional rights).

Plaintiff's complaint is further flawed for failure to allege the actionable conduct attributable to each individual defendant. Instead, plaintiff vaguely refers to the defendants and their alleged actions in the collective, failing to provide any factual basis distinguishing between the acts of each defendant. *See, e.g., Atuahene v. City of Hartford*, 10 Fed. App'x 33, 34 (2d Cir. 2001) (noting that the complaint "alleging a host of constitutional and state common law claims" initially "failed to differentiate among the defendants, alleging instead violations by 'the defendants,' " and then later "still fail[ed]

to identify which defendants were alleged to be responsible for which alleged violations" when the plaintiff "replaced the allegations against 'the defendants' with the names of all of the defendants"); *Elias v. City of New York*, No. 10-CV-5495, 2010 WL 5475809, at *3 (S.D.N.Y. Dec. 30, 2010) (dismissing complaint that "attribute[d] discrimination, retaliation, and disparate treatment generally to 'Defendants,' without distinguishing their individualized conduct") (internal citation omitted).

**\*5** "Simply stated, the allegations contained within plaintiff's complaint are not drafted in a manner that allows for the court to meaningfully analyze plaintiff's claims pursuant to 28 U.S.C. § 1915(e), nor would the allegations permit any of the defendants a fair opportunity to intelligently respond and thereby allow this case to proceed in an orderly manner." *Maretta-Brooks v. Hanuszczak*, No. 5:18-CV-0426 (DNH/DEP), 2018 WL 2021480, at *7 (N.D.N.Y. Apr. 26, 2018). Accordingly, I recommend that plaintiff's remaining retaliation claims be dismissed as frivolous. *See Gonzalez v. Ocwen Home Loan Servicing*, 74 F. Supp. 3d 504, 520 (D. Conn. 2015), *aff'd*, 632 Fed. App'x 32 (2d Cir. 2016) (Where a complaint is "fatally vague, ambiguous, or otherwise unintelligible, it is properly subject to dismissal as 'frivolous.' ").

**IV. Opportunity to Amend**

**A. Legal Standards**

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

**B. Application**

This court has already afforded plaintiff the opportunity to amend, which plaintiff has squandered. [7] Thus, the court will recommend dismissing plaintiff's complaint without the further opportunity to amend.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **DISMISSED** under 28 U.S.C. § 1915(e)(2)(B)(ii).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Slip Copy, 2021 WL 6274449

## Footnotes

1    Plaintiff has included a form Age Discrimination in Employment Act ("ADEA") complaint with his filing. (*See* Compl. at 1–4). The majority of the form ADEA complaint refers the court to the attached § 1983 complaint prepared by plaintiff. Because plaintiff's allegations have nothing to do with his employment, and he has explicitly labeled his complaint as a "lawsuit for retaliation under Title 42 Section 1983," the court assumes that the form complaint pursuant to the ADEA was included in error, and will not assess the sufficiency of plaintiff's allegations to raise a claim based on employment discrimination.

2    Plaintiff later refers to Ms. Poirier as his girlfriend. (Compl. at 7-8).

3    "For example, public employees must show adverse employment action ... [and] [f]or their part, inmates must show retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising ...

constitutional rights." ▭ *Zherka v. Amicone*, 634 F.3d 642, 645 (2d Cir. 2011) (internal citations and quotation marks omitted).

4      *But see* ▭ *Zherka*, 634 F.3d at 645 (Explaining that the purpose of § 1983 is that it "provide[s] a remedy when federal rights have been violated through the use or misuse of a power derived from a State. To that end, a requirement that plaintiffs allege 'actual chilling' ensures an identified injury to one's right to free speech is established. Hurt feelings or a bruised ego are not by themselves the stuff of constitutional tort.") (internal quotation marks and citations omitted).

5      *See* https://www.upstate.edu/ (Last visited December 10, 2021).

6      *See* https://www.upstate.edu/universitypolice/about/index.php (Last visited December 10, 2021).

7      It bears noting that as a result of his repeated frivolous filings in this district, and in conjunction with a separate pro se matter, plaintiff has been referred for the issuance of a pre-filing injunction permanently enjoining him from filing any other pro se cases in the Northern District without leave of the Chief Judge. *See Guillory v. Nursing Supervisor*, No. 5:21-CV-1177 (ATB/DNH), 2021 WL 5585926, at *1 (N.D.N.Y. Nov. 30, 2021).

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 35926
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Patrick GUILLORY, Plaintiff,

v.

UPSTATE UNIVERSITY POLICE et al., Defendants.

5:21-cv-1117 (GLS/ATB)
|
Signed 01/04/2022

**Attorneys and Law Firms**

FOR THE PLAINTIFF: PATRICK GUILLORY, Pro Se, 50
Caton Drive, Apt. No. 54-C, Syracuse, NY 13214.

**ORDER**

Gary L. Sharpe, Senior District Judge

 **\*1** The above-captioned matter comes to this court
following a Report-Recommendation (R&R) by Magistrate
Judge Andrew T. Baxter duly filed December 14, 2021. (Dkt.

No. 5.) Following fourteen days from the service thereof, the
Clerk has sent the file, including any and all objections filed
by the parties herein.

No objections having been filed, and the court having
reviewed the R&R for clear error, it is hereby

**ORDERED** that the Report-Recommendation (Dkt. No. 5) is
**ADOPTED** in its entirety; and it is further

**ORDERED** that plaintiff's complaint (Dkt. No. 1) is
**DISMISSED** pursuant to 🚩 28 U.S.C. § 1915(e)(2)(B)(ii);
and it is further

**ORDERED** that the Clerk is directed to close this case; and
it is further

**ORDERED** that the Clerk provide a copy of this Order to
plaintiff in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2022 WL 35926

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:22-cv-01030-MAD-ML   Document 8   Filed 02/17/23   Page 92 of 135

Barnes v. New York State Division of Human Rights, Not Reported in Fed. Supp. (2016)

2016 WL 110522

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Billy BARNES, Plaintiff,

v.

NEW YORK STATE DIVISION OF
HUMAN RIGHTS, et al., Defendants.

14 Civ. 2388 (LTS)(HBP)

|

Signed 01/07/2016

|

Filed 01/08/2016

**Attorneys and Law Firms**

Billy Barnes, Copiague, NY, pro se.

Angel Manuel Guardiola, II, New York State Office of the
Attorney General, David Roger Marshall, Locke Lord LLP,
New York, NY, for Defendants.

OPINION AND ORDER

PITMAN, United States Magistrate Judge

I. Introduction

 **\*1**   By notice of motion dated March 2, 2015 (Docket Item
51), pro se plaintiff Billy Barnes moves for leave to file an
amended complaint. The proposed amended complaint would
add Edith Aquino-Salem [1] and Merle Nazares as defendants.
It also would add claims of unlawful discrimination and
retaliation under 🚩42 U.S.C. § 1981 against defendant
Beth Israel Medical Center ("BIMC") and denial of equal
protection under 🚩42 U.S.C. § 1983 against defendant the
New York State Division of Human Rights (the "NYSDHR"),
in addition to plaintiff's previously asserted claims against
BIMC and the NYSDHR for denial of due process under
🚩Section 1983 and unlawful discrimination and retaliation
under Title VII of the Civil Rights Act of 1964, 🚩42
U.S.C. §§ 2000e et seq. ("Title VII"), and the New York
State Human Rights Law, 🚩N.Y. Exec. Law §§ 290 et seq.
(the "NYSHRL"). For the reasons set forth below, plaintiff's
motion is denied. [2]

II. Facts

Plaintiff, an African-American male, was hired as a
cardiovascular technician by BIMC in July 2006 (Plaintiff's
Proposed Amended Complaint (Docket Item 52-1) ("Am.
Compl."), at 10 [3] ). On January 26, 2011, BIMC terminated
plaintiff for "gross misconduct" because he allegedly put his
hands around the neck of Aquino-Salem, a Filipina nurse,
during an argument the two had two days earlier (Am.
Compl., at 3-6 & Ex. A, at 16).

The day after the incident, plaintiff provided BIMC with a
written statement in which he denied placing his hands around
Aquino-Salem's neck but acknowledged that he told Aquino-
Salem "in a joking matter [sic] I will choke you woman" (Am.
Compl., Ex. 5, at 32). On the same day, Nazares, plaintiff's
supervisor, who is also a Filipina nurse, informed plaintiff
that she was going to conduct a "complete investigation"
into the altercation between plaintiff and Aquino-Salem (Am.
Compl., Ex. A, at 16). The following day, BIMC informed
plaintiff that he was being terminated based on testimony
from Aquino-Salem and Heather Best-Pilgrim, an African-
American female nurse who witnessed the incident, that
plaintiff had put his hands around Aquino-Salem's neck (Am.
Compl., 3-6 & Ex. 6, at 36). Plaintiff filed a grievance with
BIMC challenging his termination, and his termination was
sustained following a grievance hearing (Am. Compl., at 11).

 **\*2**   On November 9, 2011, plaintiff filed a complaint against
BIMC with the NYSDHR (Am. Compl., at 10 & Exs. A-
B). In his NYSDHR complaint, which plaintiff attaches
to his proposed amended complaint as Exhibit A, plaintiff
challenged his termination as discriminatory on the basis
of both his sex and his race and retaliatory (Am. Compl.,
Ex. A). Specifically, plaintiff's NYSDHR complaint alleged
that Nazares failed to conduct a proper investigation of the
incident between plaintiff and Aquino-Salem because (1)
plaintiff had claimed in the statement he provided to BIMC
on January 25, 2011 that Nazares was "very discriminative"
and (2) Nazares wanted "to protect her fellow phillipino
[sic] friend coworker [Aquino-Salem] from any type of
disciplinary action" (Am. Compl., Ex. A, at 16). During the
NYSDHR's investigation of plaintiff's complaint, plaintiff
also claimed to the NYSDHR that Nazares and Lisa Allen, a
BIMC administrator, prevented witnesses from testifying at
his grievance hearing (Am. Compl., Ex. 4, at 29). Plaintiff's
NYSDHR complaint was later amended to add a charge of
national-origin discrimination (Am. Compl., at 10 & Ex. C at
24).

Case 5:22-cv-01030-MAD-ML   Document 8   Filed 02/17/23   Page 93 of 135

Barnes v. New York State Division of Human Rights, Not Reported in Fed. Supp. (2015)

The NYSDHR investigated plaintiff's complaint (Am. Compl., at 10-11 & Exs. A-C). During the investigation, the NYSDHR investigator, James D. Moffatt, received evidence from both BIMC and plaintiff and attempted to contact three individuals that plaintiff had identified as witnesses—Christine Taylor, Yi Li Huang and Marilou Cristobal—by leaving telephone voice messages for each witness (Am. Compl., Ex. C, at 25-26). These witnesses, however, never responded to Moffatt's messages (Am. Compl., Ex. 6, at 37). On April 20, 2012, Moffatt reported the results of his investigation of plaintiff's complaint to Leon C. Dimaya, Regional Director of the NYSDHR (Am. Compl., Ex. B).

On the same day, Dimaya issued a Determination and Order After Investigation, which found that "there is NO PROBABLE CAUSE to believe that [BIMC] has engaged in or is engaging in the unlawful discriminatory practice complained of" and "[t]here is a lack of evidence in support of complainant's allegations of retaliation, and race/color and sex discrimination" (Am. Compl., at 10). The Determination and Order After Investigation instead stated that the "record suggests ... that [BIMC] terminated complainant's employment for the non-discriminatory reason that [BIMC] believed complainant ha[d] engaged in gross misconduct by placing his hands around the neck of a co-worker" (Am. Compl., at 10). The Equal Employment Opportunity Commission ("EEOC") subsequently adopted the NYSDHR's findings and issued a Dismissal and Notice of Rights to plaintiff on September 12, 2012 (EEOC Dismissal and Notice of Rights, attached as Ex. 10 to the Declaration of David Marshall (Docket Item 40) ("Marshall Decl.")).[4]

**\*3** Plaintiff also commenced an Article 78 proceeding against the NYSDHR and BIMC in the Supreme Court of New York, New York County, on May 15, 2012 (Article 78 Notice of Petition & Verified Petition ("Article 78 Petition"), attached as Ex. 11 to Marshall Decl., at 2-5 [5] ). In his Article 78 petition, plaintiff asked that "the court ... overturn the decision of [the NYSDHR] for the lack of investigation" (Article 78 Petition, at 2). Specifically, plaintiff's petition challenged the NYSDHR investigator's findings and his decision to attempt to contact plaintiff's witnesses by telephone instead of conducting field interviews (Article 78 Petition). On November 5, 2012, the New York Supreme Court dismissed plaintiff's petition, finding that (1) "an adequate investigation was done" and (2) the NYSDHR's decision was not arbitrary and capricious. Barnes v. N.Y. State

Div. of Human Rights, 2012 NY Slip Op 32908(U), *10-*12 (Sup. Ct. Nov. 5, 2012).

Plaintiff appealed the Supreme Court's decision to the Appellate Division of the Supreme Court for the State of New York, which found that (1) "[NYS]DHR's determination had a rational basis in the record and was not arbitrary and capricious"; (2) "[plaintiff] was not prevented from showing pretext by [the NYSDHR]'s failure to make additional attempts to contact witnesses" and (3) "the investigation conducted by [NYS]DHR was sufficient and not one-sided, and ... [plaintiff] had a full and fair opportunity to present his own case." Barnes v. Beth Israel Med. Ctr., 113 A.D.3d 431, 431, 977 N.Y.S.2d 888, 888 (1st Dep't 2014).

On April 9, 2014, plaintiff commenced the instant action (Docket Items 1-2).

III. Analysis

A. Legal Standards
The standards applicable to a motion for leave to amend a pleading are well-settled and require only brief review. A motion for leave to amend is generally governed by Fed.R.Civ.P. 15(a), which provides that leave to amend should be freely granted "when justice so requires." Foman v. Davis, 371 U.S. 178, 182 (1962); McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007). "Nonetheless, a 'district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" Sissel v. Rehwaldt, 519 F. App'x 13, 17 (2d Cir. 2013) (summary order), quoting Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009). The party opposing the amendment has the burden of demonstrating that leave to amend would be prejudicial or futile. Staskowski v. Cty. of Nassau, No. 05CV5984 (SJF) (WDW), 2007 WL 4198341 at *4 (E.D.N.Y. Nov. 21, 2007); see also Lugosch v. Congel, No. 00-CV-784, 2002 WL 1001003 at *1 (N.D.N.Y. May 14, 2002).

A motion for leave to amend may be denied as futile if the proposed amendments would not withstand a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) or failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Germany, 615 F.3d 97, 99 (2d Cir. 2010) ("We determine that leave to amend would be

Case 5:22-cv-01030-MAD-ML Document 8 Filed 02/17/23 Page 94 of 135

Barnes v. New York State Division of Human Rights, Not Reported in Fed. Supp. (2016)

futile because the proposed amended complaint did not cure the original complaint's deficiencies ... [with respect to] subject matter jurisdiction ....”); Bridgeport Music, Inc. v. Universal Music Grp., Inc., 248 F.R.D. 408, 416 (S.D.N.Y. 2008) (Marrero, D.J.) (“A motion to amend may be denied as futile if the amendment would not withstand a motion to dismiss pursuant to Rule 12(b)(6).”); accord Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990) (“Although Fed.R.Civ.P. 15(a) provides that leave to amend should be given freely when justice so requires, where ... there is no merit in the proposed amendments, leave to amend should be denied.”).

**\*4** “A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.” Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). “In considering a motion to dismiss for lack of subject matter jurisdiction, a district court 'must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs'” Rosen v. N. Shore Towers Apartments, Inc., 11-CV-00752 RRM LB, 2011 WL 2550733 at *2 (E.D.N.Y. June 27, 2011) (brackets in original), quoting J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004). Additionally, a court “may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but ... may not rely on conclusory or hearsay statements contained in the affidavits.” J.S. ex rel. N.S. v. Attica Cent. Sch., supra, 386 F.3d at 110. “The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.” Aurecchione v. Schoolman Transp. Sys. Inc., 426 F.3d 635, 638 (2d Cir. 2005).

In order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege “enough facts to state a claim to relief that is plausible on its face.” Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible when its factual content “allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.” Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted). Additionally, while a court must “assume

that all well-pleaded factual allegations are true and draw all reasonable inferences in the plaintiff's favor” when considering a motion to dismiss under Rule 12(b)(6), Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005) (citation omitted), “mere conclusory statements” or legal conclusions contained in the complaint are not entitled to the presumption of truth. Ashcroft v. Iqbal, supra, 556 U.S. at 678.

Finally, where, as here, a plaintiff proceeds pro se, the proposed amended complaint “must be construed liberally 'to raise the strongest arguments [it] suggest[s].'” Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013), quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006).

**B.** Application

**1.** Plaintiff's Claims against BIMC, Aquino-Salem and Nazares

BIMC argues that plaintiff's motion should be denied for reasons of futility because (1) plaintiff's Title VII and NYSHRL claims against BIMC, Aquino-Salem and Nazares are barred by the doctrine of collateral estoppel and (2) plaintiff's Title VII, NYSHRL and Section 1981 claims against BIMC, Aquino-Salem and Nazares are barred by the doctrine of res judicata.[6]

**a.** Collateral Estoppel

28 U.S.C. § 1738 “requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.” Kremer v. Chemical Const., Corp., 456 U.S. 461, 466 (1982); accord Rullan v. N.Y.C. Dep't of Sanitation, No. 10 Civ. 8079 (RPP), 2011 WL 1833335 at *3 (S.D.N.Y. May 12, 2011) (Patterson, D.J.). Under New York law, collateral estoppel applies where “(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate the issue in the first proceeding.” Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 94 (2d Cir. 2005) (citation omitted).

Case 5:22-cv-01030-MAD-ML   Document 8   Filed 02/17/23   Page 95 of 135

Barnes v. New York State Division of Human Rights, Not Reported in Fed. Supp. (2016)

*5  In ⚑ Kremer v. Chemical Const., Corp., supra, 456 U.S. 461, the Supreme Court addressed the issue of whether a NYSDHR "no probable cause" determination that had been reviewed and affirmed by the New York Appellate Division barred a subsequent Title VII action pursuant to the doctrine of collateral estoppel. The Court held that the Appellate Division's affirmance of the NYSDHR determination was entitled to preclusive effect as to the subsequent Title VII action because (1) the plaintiff's allegations of employment discrimination had been raised earlier in his NYSDHR complaint, (2) the Appellate Division had resolved the plaintiff's claim and (3) the NYSDHR's procedure for investigating the complaint, in combination with the opportunity for full judicial review, provided the plaintiff with a full and fair opportunity to litigate his claim of discrimination. See ⚑ Kremer v. Chemical Const., Corp., supra, 456 U.S. at 483-85.

Since Kremer, federal courts within this Circuit have repeatedly applied collateral estoppel in similar situations where, as here, (1) discrimination claims were made to the NYSDHR, (2) the NYSDHR issued a finding of no probable cause, (3) the plaintiff challenged the NYSDHR's determination and procedures in state court and (4) the NYSDHR's determination was affirmed by the New York courts. E.g., Gomez v. N.Y. State Dep't of Transp., No. 09-CV-05184, 2011 WL 2940623 at *2 (E.D.N.Y. July 19, 2011) (dismissing discrimination and failure to accommodate claims where the plaintiff's complaint relied on the same facts that were asserted in his NYSDHR complaint and the New York Supreme Court had addressed and rejected plaintiff's argument that the NYSDHR investigation was deficient for failing to call witnesses on his behalf); Rullan v. N.Y.C. Dep't of Sanitation, supra, 2011 WL 1833335 at *5 (dismissing the plaintiff's federal complaint alleging discrimination and retaliation where those issues were already raised before the NYSDHR and affirmed in an Article 78 proceeding); Aumporn Wongkiatkachorn v. Capital One Bank, 09 Civ. 9553 (CM)(KNF), 2010 WL 3958764 at *5 (S.D.N.Y. Oct. 5, 2010) (McMahon, D.J.) (same); Wilson v. Ltd. Brands, Inc., 08 Civ. 3431 (LAP), 2009 WL 1069165 at *2 (S.D.N.Y. Apr. 17, 2009) (Preska, D.J.) (same); accord Yan Yam Koo v. Dep't of Bldgs. of City of N.Y., 218 F. App'x 97, 99 (2d Cir. 2007) (summary order) ("While the agency determination in and of itself did not preclude [plaintiff's] action, preclusive effect attached once the state court reviewed and affirmed the [NY]SDHR's finding of no probable cause.").

Here, plaintiff's proposed amended complaint raises the same issues and makes the same discrimination and retaliation claims that were asserted in his NYSDHR complaint and dismissed by the NYSDHR. Indeed, in support of the allegations made in his proposed amended complaint, plaintiff attaches, among other things, (1) his NYSDHR complaint form, (2) a letter he submitted to the NYSDHR on January 22, 2012 and (3) the written statement plaintiff prepared for BIMC on January 25, 2011 (Am. Compl., Exs. A, 4-5). Further, both the New York Supreme Court and the Appellate Division affirmed the NYSDHR's "no probable cause" determination and rejected plaintiff's argument that the NYSDHR investigation was inadequate because the NYSDHR investigator did not conduct field interviews of the witnesses identified by plaintiff. Barnes v. N.Y. State Div. of Human Rights, supra, 2012 NY Slip Op 32908(U) at *10-*12, aff'd, 113 A.D.3d at 431, 977 N.Y.S.2d at 888 ("[T]he record shows that the investigation conducted by [NYSHDR] was sufficient and not one-sided, and that [plaintiff] had a full and fair opportunity to present his own case.").

Finally, while plaintiff contends in his motion papers that he has uncovered new evidence "that support[s] that there were attempts to intimidate and silence" Christine Taylor, Marilou Cristobal and Yi Li Huang so that they would not testify on his behalf at his grievance hearing (Pro Se Motion for Leave to Amend Complaint (Docket Item 52) ("Pl. Memo"), at 2), the same claims of witness intimidation and coercion were previously raised in plaintiff's NYSDHR complaint, Article 78 Petition and Pre-Argument Statement to the Appellate Division. For example, plaintiff's NYSDHR complaint stated that Cristobal was coerced by Nazares not to make a statement and Taylor was coerced not to attend plaintiff's grievance hearing (Am. Compl., Ex. A, at 15). Similarly, plaintiff's Article 78 Petition stated that Cristobal and Huang were "cohearsed [sic] and told not to get involved or give a statement" (Article 78 Petition, at 6). Finally, plaintiff's Pre-Argument Statement to the Appellate Division asserted that Huang "was told by our employer not to get involved" and that Taylor, Huang and Cristobal were coerced not to testify or provide statements on plaintiff's behalf (Notice of Appeal and Pre-Argument Statement to the First Department, attached as Ex. 13 to Marshall Decl., at 10-11). [7]

*6  Because the issues raised in plaintiff's Title VII and NYSHRL claims were actually and necessarily decided in the prior proceedings and plaintiff had a full and fair opportunity to litigate those issues, plaintiff's Title VII and NYSHRL

Case 5:22-cv-01030-MAD-ML   Document 8   Filed 02/17/23   Page 96 of 135

Barnes v. New York State Division of Human Rights, Not Reported in Fed. Supp. (2016)

claims against BIMC, Aquino-Salem and Nazares are barred by collateral estoppel. [8]

### b. Res Judicata

Like collateral estoppel, where a federal court is considering the res judicata effect of a state court judgment, the federal court must afford the state court judgment the same preclusive effect it would have under the law of the state in which it was entered. Marrese v. Am. Acad. of Orthopedic Surgeons, 470 U.S. 373, 380-81 (1985); Burka v. N.Y.C. Transit Auth., 32 F.3d 654, 657 (2d Cir. 1994). New York law applies the "transactional" approach to res judicata, meaning that "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." Giannone v. York Tape & Label, Inc., 548 F.3d 191, 194 (2d Cir. 2008) (per curiam) (citation omitted).

Federal courts within this Circuit have applied the doctrine of res judicata to preclude employment discrimination claims arising out of the same set of facts that were previously alleged in support of unsuccessful claims before the NYSDHR and the New York Supreme Court. See, e.g., Rullan v. N.Y.C. Dep't of Sanitation, supra, 2011 WL 1833335 at *3-*4; Arnold v. Beth Abraham Health Servs., Inc., 09 Civ. 6049 (DLC), 2009 WL 5171736 at *4 (S.D.N.Y. Dec. 30, 2009) (Cote, D.J.), aff'd on other grounds sub nom., Arnold v. 1199 SEIU, 420 F. App'x 48 (2d Cir. 2011) (summary order). As discussed in Section III.B.1.a, supra, plaintiff's Section 1981, NYSHRL and Title VII claims arise out of the same facts that were alleged before the NYSDHR and the New York courts. Thus, even though plaintiff did not expressly raise any Section 1981 claims before either the NYSDHR or the New York state courts, his Section 1981 claims against BIMC, Aquino-Salem and Nazares, as well as his NYSHRL and Title VII claims, are precluded by res judicata. Kirkland v. City of Peekskill, 828 F.2d 104, 109-10 (2d Cir. 1987) (applying res judicata to Section 1981 and Section 1983 claims where the underlying facts had been previously raised in a NYSDHR complaint and plaintiff's appeal of the NYSDHR's decision had been dismissed by the Appellate Division); accord Loucar v. Boston Mkt. Corp., 294 F. Supp. 2d 472, 482 (S.D.N.Y. 2003) (Pauley, D.J.); Evans

v. N.Y. Botanical Garden, 02 Civ. 3591 (RWS), 2002 WL 31002814 at *5 (S.D.N.Y. Sept. 4, 2002) (Sweet, D.J.). [9]

### 2. Plaintiff's Claims against the NYSDHR [10]

**\*7** The NYSDHR argues that plaintiff's motion should be denied for reasons of futility because plaintiff's Section 1983 and NYSHRL claims against it are barred by the Eleventh Amendment. The NYSDHR also argues that plaintiff's claims against it are barred by the Rooker-Feldman doctrine. Finally, the NYSDHR contends that plaintiff's employment discrimination and Section 1983 claims against it fail to state claims and that plaintiff's Section 1983 claims are precluded by res judicata.

### a. Sovereign Immunity

Under "the Eleventh Amendment ..., state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citations omitted; brackets in original); accord Gonzalez v. N.Y. State Div. of Human Rights, 10 Civ. 98 (WHP), 2011 WL 4582428 at *3 (S.D.N.Y. Sept. 29, 2011) (Pauley, D.J.) ("The Eleventh Amendment to the United States Constitution bars federal actions against a state for monetary damages absent the state's waiver of its sovereign immunity or an abrogation of that immunity by the United States Congress."). "[T]he Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." Gollomp v. Spitzer, supra, 568 F.3d at 366 (citation omitted).

In enacting Section 1983, Congress did not abrogate the states' sovereign immunity, Gaby v. Bd. of Trustees of Cmty. Tech. Colleges, 348 F.3d 62, 63 (2d Cir. 2003) (per curiam) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."), quoting Will v. Michigan Dep't of State Police, 491 U.S. 58, 64 (1989), nor has New York consented to being sued in federal court under either Section 1983 or the NYSHRL. Jones v. N.Y. State

Case 5:22-cv-01030-MAD-ML   Document 8   Filed 02/17/23   Page 97 of 135

Barnes v. New York State Division of Human Rights, Not Reported in Fed. Supp. (2016)

Metro D.D.S.O., 543 F. App'x 20, 22 (2d Cir. 2013) (summary order) ("New York has not waived sovereign immunity from suits for damages under 🚩 Section 1983."); Trivedi v. N.Y. State Unified Court Sys. Office of Court Admin., 818 F. Supp. 2d 712, 722 (S.D.N.Y. 2011) (Crotty, D.J.) ("New York [has not] explicitly and unequivocally waived its sovereign immunity with respect to claims brought under ... 🚩 Section 1983 ... [or the] NYSHRL ...."), aff'd subnom., Seck v. Office of Court Admin., 582 F. App'x 47 (2d Cir. 2014) (summary order).

Accordingly, plaintiff's NYSHRL and 🚩 Section 1983 claims against the NYSDHR are barred by the Eleventh Amendment. Baba v. Japan Travel Bureau Int'l, Inc., 111 F.3d 2, 5 (2d Cir. 1997) (per curiam) ("As the district court ruled, Baba's suit 'seek[s] equitable and legal relief for past conduct' against [the NYSDHR], and it is beyond cavil that 'the Eleventh Amendment bars this [type of] suit.'" (citation omitted)); McPherson v. Plaza Athenee, NYC, 12 Civ. 0785 (AJN), 2012 WL 3865154 at *6 (S.D.N.Y. Sept. 4, 2012) (Nathan, D.J.) ("Federal civil rights lawsuits against the NYSDHR are barred by the Eleventh Amendment."), aff'd sub nom., McPherson v. Hotel Plaza Athenee, NYC, 538 F. App'x 109 (2d Cir. 2013) (summary order); Gonzalez v. N.Y. State Div. of Human Rights, supra, 2011 WL 4582428 at *3 (dismissing NYSHRL claims against the NYSDHR due to sovereign immunity). [11]

### b. The Rooker-Feldman Doctrine

*8 Under the Rooker-Feldman doctrine, "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." 🚩 Hoblock v. Albany Cty. Bd. of Elections, supra, 422 F.3d at 84. The Rooker-Feldman is "confined to ... cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 🚩 Hoblock v. Albany Cty. Bd. of Elections, supra, 422 F.3d at 85 (citation omitted). In Hoblock, the Court of Appeals clarified that the Rooker-Feldman doctrine only bars claims when the plaintiff (1) "lost in state court"; (2) "complain[s] of injuries caused by [the] state-court judgment"; (3) seeks "district court review and rejection of [that] judgment" and (4) commences the federal action after

the state court judgment was rendered. 🚩 Hoblock v. Albany Cty. Bd. of Elections, supra, 422 F.3d at 85.

The Hoblock court also explained that the "core requirement" of Rooker-Feldman is "that federal plaintiffs are not subject to the Rooker–Feldman bar unless they complain of an injury caused by a state judgment." 🚩 Hoblock v. Albany Cty. Bd. of Elections, supra, 422 F.3d at 87 (emphasis in original). In explaining the limitations of the doctrine, the Court of Appeals provided an example—which is very similar to the present case—of the type of case to which Rooker-Feldman does not apply:

> Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by Rooker–Feldman, of the state-court judgment.

🚩 Hoblock v. Albany Cty. Bd. of Elections, supra, 422 F.3d at 87-88.

Hoblock has been applied to a plaintiff's federal challenge of an adverse decision made by a state agency and affirmed by the New York courts. For example, in Ponterio v. Kaye, 06 Civ. 6289 (HB), 🚩 2007 WL 141053 (S.D.N.Y. Jan. 22, 2007) (Baer, D.J.), aff'd, 328 F. App'x 671 (2d Cir. 2009) (summary order), the New York Administrative Board of Courts denied recertification for service to a retired New York state judge. The retired judge commenced an action challenging the denial of his recertification in New York Supreme Court. The Supreme Court dismissed the retired

Barnes v. New York State Division of Human Rights, Not Reported in Fed. Supp. (2016)

Case 5:22-cv-01030-MAD-ML   Document 8   Filed 02/17/23   Page 98 of 135

judge's claims, and the Appellate Division affirmed the Supreme Court's dismissal. The retired judge then brought a federal action challenging the denial of his recertification and named as defendants the New York Administrative Board of Courts, the Chief Judge of the State of New York, the Chief Administrative Judge of the New York Courts and the Presiding Justices of each of the four Departments of the Appellate Division. The defendants moved to dismiss the federal complaint, arguing, among other things, that the claims were barred by Rooker-Feldman. The court rejected this argument:

> [The] federal action complains of injuries allegedly committed upon [plaintiff] by the Board ... and subsequently ratified by the New York state courts. [Plaintiff's] action falls squarely into Hoblock's ... category of lawsuits that do not complain of injuries caused by state court judgments. Thus, Rooker-Feldman doctrine does not bar [the] instant claims.

Ponterio v. Kaye, supra, 2007 WL 141053 at *1-*5.

**\*9** Accordingly, because plaintiff does not complain of an injury caused by the New York courts, but rather of injuries caused by BIMC, the NYSDHR, Aquino-Salem and Nazares, the Rooker-Feldman doctrine does not bar his claims.

### c. Plaintiff's Claims against the NYSDHR under Title VII, Section 1983 and the NYSHRL

The NYSDHR next argues that plaintiff's Title VII and NYSHRL claims against it fail to state claims because plaintiff does not allege that the NYSDHR was his employer.

"[T]he existence of an employer-employee relationship is a primary element of [a] Title VII claim[ ]. An employer-employee relationship is also required to sustain analogous claims under the NYSHRL." Brown v. Daikin Am. Inc.,

756 F.3d 219, 226 (2d Cir. 2014) (citations omitted; brackets in original). Here, plaintiff does not allege that the NYSDHR was his employer. Rather, he asserts in his motion papers that his NYSDHR complaint "was a signed contract between me and NYSDHR in which [I] became there [sic] employer" (Pl. Memo, at 2). Even assuming this were the case, plaintiff's argument is without merit because, as the Supreme Court has noted, "employers are [not] members of the class for whose especial benefit ... Title VII was enacted." N.W. Airlines, Inc. v. Transport Workers Union of Am., AFL-CIO, 451 U.S. 77, 92 (1981). Accordingly, plaintiff fails to state claims against the NYSDHR under Title VII or the NYSHRL. [12]

Finally, for the same reasons discussed in Section III.B.1.b, supra, plaintiff's Section 1983 claims against the NYSDHR are also barred by the doctrine of res judicata because plaintiff had the opportunity, and in fact did, challenge the sufficiency of the NYSDHR's investigation and determination in both his Article 78 proceedings and his appeal to the Appellate Division. See Gomez v. N.Y. State Dep't of Transp., supra, 2011 WL 2940623 at *2 ("[Plaintiff's] Due Process violation [ ] was thoroughly examined and rejected by the New York Supreme Court in the Article 78 proceeding. The state court found as a matter of law that the [NYS]DHR's investigation was proper. Coupled with Article 78 judicial review, [NYS]DHR's investigative procedures were sufficient under the Due Process Clause." (citations omitted)).

Accordingly, plaintiff's proposed amended complaint does not state an actionable claim against the NYSDHR.

### IV. Conclusion

Because all of plaintiff's claims are futile and would be subject t o dismissal under Fed.R.Civ.P. 12(b)(1) or Fed.R.Civ.P. 12(b)(6), plaintiff's motion for leave to amend is denied.

**\*10** SO ORDERED

### All Citations

Not Reported in Fed. Supp., 2016 WL 110522

# Footnotes

1   Plaintiff's proposed amended complaint refers to Aquino-Salem as both "Aquino-Salen" and "Aquino-Salem." Because plaintiff uses "Aquino-Salem" in the caption of his proposed amended complaint, I assume that the individual's correct name is "Aquino-Salem" and shall refer to her by that name throughout this opinion.

2   This action has been referred to me for all pretrial supervision. Accordingly, I can decide plaintiff's instant motion for leave to amend the complaint. Fielding v. Tollaksen, 510 F.3d 175, 178 (2d Cir. 2007) ("[A] district judge may refer nondispositive motions, such as a motion to amend the complaint, to a magistrate judge for decision without the parties' consent.").

3   Because plaintiff's proposed amended complaint and the accompanying submissions lack consistent internal pagination, all page citations to plaintiff's submissions refer to the page numbers provided by the Court's ECF system.

4   Because defendants oppose plaintiff's motion on the grounds of futility and raise the defenses of collateral estoppel and res judicata, the court may consider plaintiff's proposed amended complaint, the documents attached thereto, documents of which judicial notice may be taken, including state court and agency records and decisions, and documents which are integral to the claims. White v. Anchor House, Inc., No. 11 CV 3232 NGG LB, 2011 WL 5402162 at *1 (E.D.N.Y. Nov. 3, 2011) ("In deciding a motion to dismiss or a motion to amend, the Court may consider, in addition to the complaint, documents that plaintiff attached to the pleadings, documents referenced in the complaint, documents that plaintiff relied on in bringing the action which were in plaintiff's possession or of which plaintiff had knowledge, and matters of which judicial notice may be taken."), citing Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see also Griffin v. Goldman, Sachs & Co., 08 Civ. 2992 (LMM), 2008 WL 4386768 at *2 (S.D.N.Y. Sept. 23, 2008) (McKenna, D.J.) ("[W]hen a motion to dismiss is premised on the doctrine of collateral estoppel, a court is permitted to take judicial notice of and consider the complaints and the record generated in both actions without having to convert the motion to dismiss into a summary judgment motion." (citation and internal quotation marks omitted)); Evans v. N.Y. Botanical Garden, 02 Civ. 3591 (RWS), 2002 WL 31002814 at *4 (S.D.N.Y. Sept. 4, 2002) (Sweet, D.J.) ("A court may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment."); Burrowes v. Brookdale Hosp. & Med. Ctr., No. 01 CV 2969 SJ, 2002 WL 32096575 at *3 (E.D.N.Y. Mar. 28, 2002) (opposition to a motion for leave to amend based on "[f]utility is assessed by the same standards applied to a motion to dismiss."), aff'd, 66 F. App'x 229 (2d Cir. 2003) (summary order); Nickens v. N.Y. State Dep't of Corr. Servs., No. 94 CV 5425 (FB), 1996 WL 148479 at *1 (E.D.N.Y. Mar. 27, 1996) (taking judicial notice of documents the plaintiff had filed with the EEOC on a motion to dismiss).

5   Because the exhibits to the Marshall Decl. lack consistent internal pagination, I use the page numbers assigned by the Court's ECF system.

6   Because I conclude below that plaintiff's claims against BIMC, Aquino-Salem and Nazares are barred under collateral estoppel and res judicata, I do not address BIMC's alternative arguments that plaintiff's claims against Aquino-Salem and Nazares are untimely and procedurally defective.

7   Plaintiff also contends that he has "new found evidence" showing that the NYSDHR did not fully investigate his complaint because Dimaya, the Regional Director of the NYSDHR who issued the NYSDHR's determination, is of Filipino descent like Aquino-Salem and Nazares (Pl. Memo, at 2; see also Am. Compl., at 5 ("The regional director who started this case is Phillipino [sic] and did not address any of the allegations [plaintiff] had brought to his attention.")). This assertion does not change the analysis of defendants' collateral estoppel defense.

Case 5:22-cv-01030-MAD-ML   Document 8   Filed 02/17/23   Page 100 of 135

Barnes v. New York State Division of Human Rights, Not Reported in Fed. Supp. (2016)

As discussed above, plaintiff's challenges to the sufficiency of the NYSDHR's investigation were previously raised before the New York Supreme Court and the Appellate Division. Further, plaintiff's allegation that the NYSDHR did not fully investigate his complaint because Dimaya is Filipino is unsupported by any factual allegations other than the fact of Mr. Dimaya's alleged national origin; such a conclusory allegation is not afforded the presumption of truth. Ashcroft v. Iqbal, supra, 556 U.S. at 678; see also Bermudez v. City of New York, 783 F. Supp. 2d 560, 581 (S.D.N.Y. 2011) (McMahon, D.J.) ("a recitation of a false syllogism [such as] (1) I am (insert name of a protected class); (2) something bad happened to me at work; (3) therefore, it happened because I am (insert name of protected class)" does not meet the standard promulgated by the Supreme Court in Twombly and Iqbal).

8       Although plaintiff did not name Aquino-Salem or Nazares as respondents in his NYSDHR complaint, the requirements of collateral estoppel are met with respect to plaintiff's proposed claims against them because (1) whether their conduct constituted retaliation or discrimination on the part of BIMC was actually and necessarily decided in the prior proceedings, and (2) plaintiff had a full and fair opportunity to litigate those issues in the prior proceedings. The fact that neither Aquino-Salem nor Nazares were parties to the NYSDHR and state court proceedings is immaterial. Yan Yam Koo v. Dep't of Bldgs. of City of N.Y., supra, 218 F. App'x at 99 ("That the plaintiff did not name the identical parties in the state and federal actions does not disturb our finding of preclusiveness."), citing LaFleur v. Whitman, 300 F.3d 256, 274 (2d Cir. 2002) ("Our inquiry with regard to the 'full and fair opportunity' prong of the collateral estoppel doctrine is whether [the plaintiff], as the petitioner-plaintiff in the previous state court proceeding, was fully able to raise the same factual or legal issues as she asserts here—not whether the respondent-defendants were identical in both cases." (emphasis in original)); see also 3 E. 54 St. N.Y., LLC v. Patriarch Partners Agency Servs. LLC, 110 A.D.3d 516, 516-17, 972 N.Y.S.2d 549, 549-50 (1st Dep't 2013) (Under New York law, "only the party sought to be collaterally estopped must have been a party to the action when the prior determination was made. New York has long ago abandoned the 'mutuality of estoppel' requirement." (citations omitted)).

9       In his motion papers, plaintiff indicates that his Section 1983 claims are asserted against the NYSDHR only, and not BIMC, Nazares or Aquino-Salem (Pl. Memo, at 1). In any event, to the extent plaintiff wishes to assert Section 1983 claims against BIMC, Nazares or Aquino-Salem, such claims would also be precluded by res judicata. Kirkland v. City of Peekskill, supra, 828 F.2d at 109-10.

10      The NYSDHR appears to assert that both its Eleventh Amendment and Rooker-Feldman arguments are jurisdictional (see Memorandum of Law in Opposition to Plaintiff's Motion for Leave to Amend the Complaint and in Further Support of Defendant's Motion to Dismiss (Docket Item 53), at 4-7). The case law as to the Eleventh Amendment is not so clear, see Woods v. Rondout Central Sch. Dist. Bd. of Educ., 466 F.3d 232, 237-38 (2d Cir. 2006), and, in its most recent statement on the issue, the Supreme Court has stated that it has never decided whether the Eleventh Amendment is jurisdictional. Wisconsin Dep't of Corr. v. Schacht, 524 U.S. 381, 391 (1998). The NYSDHR's Rooker-Feldman argument, on the other hand, does appear to be jurisdictional. Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 427 (2d Cir. 2014) ("The Rooker-Feldman doctrine pertains not to the validity of the suit but to the federal court's subject matter jurisdiction to hear it."). I conclude that I need not decide whether the NYSDHR's Eleventh Amendment argument is jurisdictional. The outcome of the present motion would be the same regardless of whether the argument is jurisdictional.

11      To the extent that plaintiff's proposed amended complaint attempts to bring a Section 1981 claim against the NYSDHR, such a claim is also barred by the Eleventh Amendment. Benzo v. N.Y. State Div. of Human

**Barnes v. New York State Division of Human Rights,** Not Reported in Fed. Supp. (2016)

Case 5:22-cv-01030-MAD-ML   Document 8   Filed 02/17/23   Page 101 of 135

Rights, 95 Civ. 5362 (LAP), ⚑1997 WL 37961 at *10 (S.D.N.Y. Jan. 31, 1997) (Preska, D.J.) aff'd, 141 F.3d 1151 (2d Cir. 1998).

12    The NYSDHR also argues that plaintiff's ⚑Section 1983 equal protection claim against it fails to state a claim because plaintiff does not allege that the NYSDHR had "a policy or custom" that violated his equal protection rights, as required to establish municipal liability under ⚑Section 1983. The NYSDHR's argument is inapposite because "policy or custom" liability under ⚑Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), applies to municipalities, not state agencies. Barnes v. Fischer, 9:13-CV-164 GLS/RFT, 2014 WL 5293672 at *5 n.8 (N.D.N.Y. Oct. 15, 2014) ("Monell is 'limited to local government which are not considered part of the State for Eleventh Amendment purposes.'" (citation omitted)).

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 3027925

Only the Westlaw citation is currently available.

NOT FOR PUBLICATION

United States District Court,

E.D. New York.

Clive CAMPBELL, Plaintiff,

v.

NEW YORK CITY; N.Y.C. Police Department,
Commissioner; N.Y.C. Department of Corrections,
Commissioner; Liu Long Island University Hospital,
Brooklyn Campus; Police Officer Omar Rackoff,
77th Precinct; Police Sergeant Michael Malone, 77th
Precinct; John Doe # 1, Long Island University
Attending Physician; John Doe # 2, Rikers Island
Prison Attending Physician; John Doe # 3, Rikers
Island Prison Correction Officer, Defendants.

No. 12 CV 2179(CBA).
|
July 23, 2012.

**Attorneys and Law Firms**

Clive Campbell, Brooklyn, NY, pro se.

### MEMORANDUM & ORDER

AMON, Chief Judge.

**\*1**  In this *pro se* action brought pursuant to 42 U.S.C. §
1983 the plaintiff alleges that he was denied adequate medical
care. The plaintiff's request to proceed *in forma pauperis*
pursuant to 28 U.S.C. § 1915 is granted. For the reasons
discussed below, the plaintiff's claims against the City of
New York, the New York City Police Department ("NYPD"),
the New York City Department of Correction ("NYDOC"),
L.I.U. Long Island University Hospital Brooklyn Campus
("the Hospital"), and JOHN DOE # 1, Long Island University
Attending Physician, are dismissed. The plaintiff's claim will
proceed against the remaining defendants.

### BACKGROUND

The plaintiff alleges that he was arrested on March 16, 2012
by Omar Rackoff, a police officer with the 77th Precinct.
(Compl. at ¶ 1.) He alleges that at the time of his arrest,
Rackoff took his glycoma [sic] drops. (*Id.* ¶ 2.) When the
plaintiff informed Rackoff that he needed his eye drops,
Rackoff stated that "he is the law and refused to give the
drops back to [plaintiff]." (*Id.*) Two days later, while still
in police custody, the plaintiff was taken to a hospital for
medical treatment, where the attending physician allegedly
prescribed the wrong medicine for his glaucoma. (*Id.* ¶¶ 13,
15.) That same day, the plaintiff was transferred to Rikers
Island Correctional Center. The plaintiff alleges that at Rikers
he was denied the correct prescription eye drops and was
forced to take the "incorrect" medicine from March 19, 2012
until March 24, 2012, when he made bail. (*Id.* ¶¶ 26, 34.) The
plaintiff alleges that he has late stage glaucoma and that the
initial deprivation of his medication, as well as the subsequent
use of the wrong medication, aggravated his condition and
caused further damage to his eyes. (*Id.* ¶ 17.) The plaintiff also
alleges that the City of New York failed to properly train its
employees to protect his right to medical care. (*Id.* ¶ 6, 15.)
The plaintiff seeks monetary damages.

### STANDARD OF REVIEW

When reviewing a *pro se* litigant's complaint, a court must
construe it liberally and interpret it as raising the strongest
arguments it suggests. *See Chavis v. Chappius,* 618
F.3d 162, 171 (2d Cir.2010); *Sealed Plaintiff v. Sealed
Defendant # 1,* 537 F.3d 185, 191–93 (2d Cir.2008). However,
under 28 U.S.C. § 1915(e) (2)(B), a district court shall
dismiss an *in forma pauperis* action where it is satisfied that
the action is "(i) frivolous or malicious; (ii) fails to state a
claim on which relief may be granted; or (iii) seeks monetary
relief against a defendant who is immune from such relief."

### DISCUSSION

The Court has reviewed the complaint and finds that the
claims asserted by the plaintiff against the City of New
York, the NYPD, the NYDOC, LIU Long Island University
Hospital Brooklyn Campus, and JOHN DOE # 1, Long
Island University Attending Physician, must be dismissed
because, for various reasons described below, the plaintiff
cannot maintain a cause of action against these defendants

under 42 U.S.C. § 1983. The claims against the City of New York, NYPD Officer Rackoff, NYPD Sergeant Malone, JOHN DOE # 2, Rikers Island Prison Attending Physician, and JOHN DOE # 3, Rikers Island Prison Correction Officer, shall go forward.

### A. *City Agencies*

**\*2** The plaintiff names as defendants in this action the "N.Y.C. Police Department, Commissioner" and the "N.Y.C. Department of Corrections, Commissioner." It is unclear whether the plaintiff intends to name the respective agencies as defendants, or whether he intends to name the Commissioner of each agency in his individual capacity. The Court will address both possibilities.

To the extent that the plaintiff intends to name the Commissioners in their individual capacities, the complaint does not allege that they had any direct involvement with, knowledge of, or responsibility for the alleged deprivation of plaintiff's rights. It is settled law in the Second Circuit that a plaintiff bringing a civil rights action for money damages must demonstrate each defendant's direct or personal involvement in the actions which are alleged to have caused the constitutional deprivation. *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006); *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1991); *Kneitel v. Hynes,* 2011 WL 2747668, at \*2 (E.D.N.Y.2011). Liability under § 1983 cannot be generally imposed on a supervisor solely based on his position because there is no respondeat superior or vicarious liability under § 1983. *See Iqbal,* 556 U.S. 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003). Instead, a plaintiff must "allege a tangible connection between the acts of the defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). Because the complaint does not mention any action taken by the Commissioners that might have contributed to the plaintiff's alleged injuries, they cannot be held liable under § 1983. Accordingly, the claims against the Commissioners are dismissed.

To the extent that plaintiff seeks to name the agencies as defendants, his claims must also be dismissed. The New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter § 396. The NYPD and NYDOC are non-suable agencies of the City of New York. *See Maier v. New York City Police Dep't,* 2009 WL 2915211, at \*2 (E.D.N.Y.2009) (dismissing claims against the NYPD and NYDOC as non-suable entities); *Wingate v. City of New York,* 2008 WL 203313, at \*2 (E.D.N.Y.2008) (holding that 113th Precinct of NYPD is not a suable entity). Accordingly, the plaintiff's claims against the NYPD and NYDOC are dismissed.

### B. *The City of New York*

"In order to sustain a claim for relief under 42 U.S.C. § 1983 against a municipal defendant such as the City of New York, a plaintiff must show the existence of an officially adopted policy or custom that caused injury, and a direct causal connection between that policy or custom and the deprivation of a constitutional right." *Steele v. City of New York,* 2010 WL 1946290, at \*1 (E.D.N.Y.2010) (citing *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). A single incident described in a complaint, particularly one that involves actors below the policymaking level, does not raise an inference of the existence of a policy or custom. *Hartnagel v. City of New York,* 2012 WL 1514769, at \*4 (E.D.N.Y.2012); *Gordon v. City of New York Police Dept. 84th Precinct,* (E.D.N.Y.2012) (' "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which can be attributed to a municipal policymaker.' " (quoting *Citv of Oklahoma v. Turtle,* 471 U.S. 808,823–24(1985)).

**\*3** In support of his claims against the City, the plaintiff alleges only that the City, the NYPD, and the DOC failed to properly train and supervise its employees to provide the plaintiff with adequate medical care. (Compl.¶¶ 14, 17–18, 30.) These allegations, without more, are insufficient to support a *Monell* claim against the City, and the isolated incident described in the complaint is not sufficient to support an inference that the police officer defendants acted pursuant to a municipal policy or custom. *See Walker v. City of New York,* 2007 WL 1340252, at \*2 (E.D.N.Y.2007) (dismissing complaint against City of New York where "even liberally construing plaintiff's claim, nothing suggest[ed] that the alleged constitutional violations were attributable

to any municipal policy or custom"). Accordingly, the plaintiff's claims against the City shall be dismissed, unless the plaintiff filed an amended complaint within thirty (30) days of this order that alleges facts suggesting that the alleged constitutional violation can be attributed to an official municipal policy or custom.

C. *The Long Island University Hospital and John Doe # 1*
The plaintiff names as a defendant "L.I.U. Long Island University Hospital Brooklyn Campus" but, as far as the Court can tell, there is no such hospital. The Court presumes that the plaintiff intended to name University Hospital of Brooklyn at Long Island College Hospital ("Long Island College Hospital") which is a part of the State University of New York ("SUNY") Downstate Medical Center. *See* http://www.downstate.edu/lich/ (Last visited June 19, 2012). If this is the hospital the plaintiff intends to name, then the plaintiff's § 1983 claims against the Hospital are barred by the sovereign immunity protection of the Eleventh Amendment because this hospital is a branch of SUNY. *See* *Dube v. State University of New York,* 900 F.2d 587, 59495 (2d Cir.1990) (Eleventh Amendment bars § 1983 suit against SUNY, which is an integral part of the State of New York); *Ding v. Bendo et al.,* 2006 WL 752824, at * 3–4 (E.D.N.Y.2006) (dismissing plaintiff's § 1983 claims against SUNY Downstate Medical Center because "SUNY and the defendant doctors in their official capacity enjoy immunity from suit under the Eleventh Amendment"); *Cassells v. Univ. Hosp. at Stony Brook,* 1987 WL 3717 (E.D.N.Y.1987) (holding that Eleventh Amendment barred suit against State University Hospital).

Similarly, insofar as the plaintiff asserts claims against the John Doe # 1, the attending physician at the Long Island College Hospital, in his official capacity as a physician, the Eleventh Amendment shields the physician from suit as well. *See Ding,* 2006 WL 752824, at *4 (holding that Eleventh Amendment immunity extends to SUNY doctors acting in their official capacity); *Castells,* 1987 WL 3717, at *4 (holding that SUNY employees are "also entitled to claim Eleventh Amendment immunity from damages for actions taken in their official capacities.").

**\*4** To the extent that the plaintiff seeks to assert a claim against John Doe # 1 in his individual capacity, that claim would fail on the merits. The plaintiff alleges only

that "the attending physician (JOHN DOE # 1) refused to contact the Veteran Hospital to find out the medication I was prescribed and did prescribe me the wrong medication causing further damage to my eyes." (Compl.¶ 15.) At best, this allegation would support a finding that the attending physician was negligent. However, allegations of negligent medical treatment, even those which rise to the level of medical malpractice, do not state a valid claim for medical mistreatment under the Eighth Amendment. *Martinez v. Ravikumar,* 616 F.Supp.2d 455, 458–59 (S.D.N.Y.2009) (" 'Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.' " (quoting *Estelle v. Gamble,* 429 U.S. 97, 107, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)); *Smith v. Carpenter,* 316 F.3d 178, 184 (2d Cir.2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation.").

For these reasons, any claims brought by the plaintiff against the Long Island College Hospital and the John Doe attending physician at the Long Island College Hospital are dismissed. If the plaintiff intended to name a different hospital unaffiliated with the State University of New York, the plaintiff shall file an amended complaint within 30 days of the date of this order naming the correct hospital.

## CONCLUSION

Accordingly, it is hereby:

ORDERED that plaintiff's claims against the New York City Police Department, Commissioner, the New York City Department of Corrections, Commissioner, LIU Long Island University Hospital, Brooklyn Campus, and John Doe # 1, Long Island University Attending Physician, are hereby dismissed. No summons shall issue as to these defendants, and it is further

ORDERED that the plaintiff's claims against the City of New York are dismissed unless the plaintiff files an amended complaint stating a plausible *Monell* claim against the City of New York within thirty (30) days of this Order. If the plaintiff intended to name as a defendant a different hospital unaffiliated with the State University of New York, the amended complaint shall also name that defendant. The amended complaint must be captioned, "Amended

Complaint," and shall bear the same docket number as this order. It is further

ORDERED that the United States Marshals Service is directed to serve the summons and complaint upon the remaining defendants, without prepayment of fees, and it is further

ORDERED that a courtesy copy of the summons, complaint, and this order shall be served upon the Corporation Counsel for the City of New York, Federal Litigation Unit.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 3027925

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 752824
Only the Westlaw citation is currently available.
FOR ONLINE PUBLICATION ONLY
United States District Court,
E.D. New York.

Zhong Kun DING, M.D., Plaintiff,

v.

Audrea BENDO, M.D., Director, Residency Program,
Vice-Chair for Education, James Cotrell, M.D., Chair,
Anesthesiology Department, Senior Associate Dean
for Clinical Practice, College of Medicine, Joseph
Giffin, M.D., Executive Vice-Chair of Anesthesiology
Department, David Wlody, M.D., Vice-Chair, Anesthesia
Department, Co-Chair, Clinical Competence Committee,
[in their individual capacities and in their official
capacities], Suny Downstate Medical Center, Defendants.

No. 03 CV 1237.
|
March 23, 2006.

**Attorneys and Law Firms**

Zhong Kun Ding, M.D., Flushing, New York, Plaintiff pro se.

Eliot Spitzer, Attorney General of the State of New York, New
York, New York, By: Antoinette W. Blanchette, Assistant
Attorney General, for Defendants.

*MEMORANDUM AND ORDER*

JOHN GLEESON, United States District Judge:

**\*1** Dr. Zhong Kun Ding, an American citizen of Chinese
national origin, filed this action after he was terminated
from the anesthesiology residency program at the State
University of New York ("SUNY") Downstate Medical
Center ("Downstate"). In his third amended complaint, Dr.
Ding alleges his discharge and other adverse treatment was
motivated by the defendants' animus against persons of
Chinese origin in violation of the Equal Protection and
Due Process Clauses of the Fourteenth Amendment and
seeks damages pursuant to 42 U.S.C. §§ 1981, 1983,
1985, and 2000e, et seq. (Title VII). Dr. Ding also
asserts claims under New York law for *prima facie* tort,
intentional infliction of emotional distress, breach of contract,

tortious interference with contract, and tortious interference
with prospective business relationships.

The defendants have moved for summary judgment on all of
these claims. I heard oral argument on the motion on March
17, 2006. For the reasons set forth below, the defendants'
motion for summary judgment is granted with respect to all
but two of Dr. Ding's claims. The remaining claims, which
arise under state law, are dismissed without prejudice, as
I decline to exercise supplemental jurisdiction over them
pursuant to 28 U.S.C. § 1367(c).

BACKGROUND

After earning his medical degree in China, Dr. Ding came to
the United States for his residency training in anesthesiology.
In order to obtain certification from the American Board
of Anesthesiologists ("ABA"), a medical graduate must
complete a four-year program consisting of a "clinical base
year," or intern year, and three years of clinical anesthesiology
training, referred to as CA-1 through CA-3. Dr. Ding
completed his intern year at West Virginia University and his
CA-1 year at New York University ("NYU"). The clinical
competence committee ("CCC") at NYU noted that Dr.
Ding had "received a satisfactory evaluation for the CA1
year ... although the members felt that he had some difficulty
integrating clinical skills and knowledge in the care of
patients." Def. Ex. 16.

Although it is not entirely clear from the record why he left
NYU, Dr. Ding applied for a position in the SUNY Downstate
Medical Center clinical anesthesia residency program in the
Spring of 1999, hoping to finish the remaining two years
of his residency there. Dr. Ding interviewed with several
faculty members, including two defendants in this action,
Drs. Audrea Bendo and David Wlody, and thereafter the
resident selection committee unanimously recommended that
he be offered a position at the CA-2 level. The Chair of the
Department, defendant Dr. James Cotrell, agreed and offered
Dr. Ding a job by a "Letter of Intent," noting that the offer
was "with the condition that you understand that by the
completion of your CA-2 year you will function at the level
with your peers." Def. Ex. 17. Dr. Ding accepted.

The residents at Downstate receive frequent evaluations
of their performance from the attending physicians, and
during the 1999-2000 academic year, Dr. Ding received
many evaluations that were satisfactory. He received several

unsatisfactory evaluations, however, along with a complaint filed by a patient. At the end of his first six months at Downstate, the CCC rated his overall clinical competence as unsatisfactory, explaining that Dr. Ding's "anesthetic management skills [were] not appropriate for his level of training" and that he was "unable to function independently." Def. Ex. 23. Dr. Ding was then temporarily removed from handling CA-2 level patient care cases. After a set of more unsatisfactory reviews, Dr. Ding again received an overall clinical competence rating of unsatisfactory for his second six-month period at Downstate. Def. Ex. 33. As a result, and pursuant to ABA regulations, the CCC recommended that Dr. Ding not be matriculated to the CA-3 level, and Dr. Cottrell agreed. *See* Def. Ex. 12, ABA Booklet of Information § 2.02(c). Further, in a meeting with Dr. Ding on May 11, 2000, Dr. Bendo informed Dr. Ding that although "residents are [normally] given a three year letter of intent, stating the full length of the residency program.... [Dr. Ding] was only given a one-year contract and Letter of Intent because of problems he had at NYU." Bendo Aff. ¶ 21. Dr. Ding was accordingly advised that his contract would not be renewed for the 2000-01 academic year.

**\*2** Dr. Ding appealed this decision, along with the decisions to give him unsatisfactory evaluations for his first two six-month periods at Downstate, to the Graduate to Medical Education Committee ("GMEC"), which recommended by letter of July 25, 2000 that the "anesthesiology residency program's decision to terminate you as a resident be rescinded .... because the ... program's 'letter of intent' ... did not make it sufficiently clear that [Dr. Ding's] appointment was a 'conditional one year agreement.' " Def. Ex. 43. Accordingly, the GMEC recommended that Dr Ding "be reappointed as a resident for 2000-2001 and that if the program intends to make the appointment conditional or probationary that this be clearly stated in writing in your resident contract." Def. Ex. 43. By a second letter of August 17, 2000, after review of Dr. Ding's full academic file and the supporting documentation he submitted, the GMEC advised Dr. Ding it "found [that] the Program's decision to not grant [him] [ABA] credit [was] fully supported and documented in the record of [his] evaluations by the faculty." Def. Ex. 45.

Notably, throughout this appeals process, Dr. Ding did not claim that any of his unsatisfactory evaluations were motivated by an animus against persons of Chinese national origin.

In accordance with the GMEC's recommendations, by letter of August 21, 2000, the residency program reinstated Dr. Ding, again at the CA-2 level, this time making clear that his appointment was for a provisional term of one year, with renewal conditioned upon his satisfactory progress. Def. Ex. 47. Dr. Ding again accepted.

Soon thereafter, however, Dr. Ding received several unsatisfactory evaluations, and he failed his cardiac sub-specialty rotation twice. Of the 27 residents who participated in the cardiac rotation, only three failed on their first try; none but Dr. Ding failed on the second. Two of the residents who passed on their first try were of Chinese national origin.

On March 21, 2001, Dr. Ding performed an intubation that drew sharp criticism from the attending physicians, who felt that Dr. Ding's "anesthetic management of this patient was grossly inadequate." Def. Ex. 58. Further, the CCC found Dr. Ding had failed to call for assistance when he needed it, to communicate what had occurred to his attending physician, and to document adequately the basis for his medical judgment in performing the intubation. As a result of this incident, Dr. Ding was issued a letter of reprimand from the CCC on July 10, 2001. Def. Ex. 60. Although Dr. Ding appealed the reprimand, the GMEC concluded by letter of August 28, 2001 that the warning "was appropriate and justified." Def. Ex. 64. At the end of the six-month period from January to June, 2001, the CCC for a third consecutive time rated Dr. Ding's overall clinical competence as "unsatisfactory." Def. Ex. 61. Dr. Ding took sick leave from the program from September 4, 2001 to October 22, 2001.

**\*3** Dr. Ding has steadfastly maintained, including in this action, that he performed the March 16, 2001 intubation properly, even according to the medical textbooks authored by the defendant attending physicians and members of the CCC. Specifically, on October 6, 2001, while he was out on leave, Dr. Ding sent an e-mail message to numerous people within the hospital, including faculty, residents, certified registered anesthetists, and student nurse anesthetists, explaining "what happened to [him]" and seeking their "judgment based on ... fairness, equality, justice and professionalism." Def. Ex. 69. The explanation contained a detailed description of the March 16 intubation and included the patient's name, date of birth, and medical records number, along with the patient's relevant medical history.

Dr. Ding's explanation did not contain any allegation that the criticism of his intubation was because of his race. Dr.

Ding had, however, filed a complaint in September 2001 with the SUNY Affirmative Action Officer in the Office of Opportunity and Diversity alleging that he was being discriminated against on the basis of his national origin.

On October 24, 2001, the Office of the University Counsel sent Dr. Ding a letter stating: "It has come to our attention that you have disclosed personal and confidential departmental case information by email ... in violation of law. You are hereby directed to immediately cease and desist from any such further disclosures." Def. Ex. 70. The letter further advised Dr. Ding that "effective immediately, you are directed not to be on the premises of the State University of New York, Health Science Center at Brooklyn.... If you are on the premises for any reason, you will be considered trespassing and subject to arrest." *Id.* The next day, Dr. Cotrell notified Dr. Ding by letter that his e-mail communication "was unprofessional and irresponsible" and left "the department with no other choice but to terminate you from the program effective immediately." Def. Ex. 71.

After Dr. Ding was terminated he received notice that his affirmative action complaint with SUNY had been denied. Dr. Ding filed a verified complaint with the EEOC on December 28, 2001, alleging he was terminated from his residency because of his national origin. On October 10, 2002 the EEOC dismissed his complaint, concluding that there was "no probable cause to believe that [Downstate] has engaged in or is engaging in the unlawful discriminatory practice" of which Dr. Ding complained. Def. Ex. 74. Dr. Ding then filed this action, and the defendants have moved for summary judgment. [1]

## DISCUSSION

SUNY and the defendant doctors in their official capacity enjoy immunity from suit under the Eleventh Amendment to the Constitution of the United States, and therefore several of Dr. Ding's claims against them must be dismissed for lack of jurisdiction. *Dube v. State Univ. of New York,* 900 F.2d 587, 594 (2d Cir.1990); *Garcia v. State Univ. of New York Health Science Ctr. of Brooklyn,* 280 F.3d 98, 107 (2d Cir.2001). Pursuant to its powers under Section 5 of the Fourteenth Amendment, the Congress may abrogate the sovereign immunity of the states, and it has done so with respect to claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C.2000e, et seq. *See Fitzpatrick v. Bitzer,*

427 U.S. 445, 456-57 (1976). The Eleventh Amendment thus poses no bar to Dr. Ding's Title VII claims for invidious discrimination and retaliation.

**\*4** Dr. Ding's other federal claims against SUNY, however, based upon provisions of the Civil Rights Act of 1871, including 42 U.S.C. §§ 1981 & 1983, are foreclosed by New York's state sovereign immunity, as the Congress did not evince any intent to deprive the states of their immunity in enacting those provisions. *Howlett v. Rose,* 496 U.S. 356, 365 (1990) (*§ 1983*); *Pikulin v. City University of New York,* 176 F.3d 598, 600-01 (2d Cir.1999) (*§ 1981*). [2] The Congress has not attempted to abrogate states' sovereign immunity with respect to pendent claims arising under state law, *Raygor v. Regents of the Univ. of Minn.,* 534 U.S. 533, 540-41 (2002), and the State of New York has not consented to claims for damages against it in the federal courts. *See Bertoldi v. State of New York,* 712 N.Y.S.2d 113, 115 (1st Dep't 2000) ("It is well-settled that the Court of Claims has exclusive jurisdiction over actions for money damages against the State, State agencies, [and] State officials acting in their official capacities...."). Accordingly, all of Dr. Ding's claims against SUNY and the defendant doctors in their official capacities, except his Title VII claims, are dismissed.

Dr. Ding's Title VII claims against the defendant doctors in their individual capacities must be dismissed, however, because "individual defendants with supervisory control over a plaintiff may not be held liable under Title VII." *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir.1995).

Turning then to the merits of Dr. Ding's remaining claims, under Rule 56 of the Federal Rules of Civil Procedure, the moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The substantive law governing the case identifies the facts that are material, and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is warranted only if "the

evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Id.*

Moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quotation marks omitted); *see also, e.g., Michalski v. Home Depot, Inc.,* 225 F.3d 113, 116 (2d Cir.2000) ("[W]e ... view [the facts] in the light most favorable to, and draw inferences in favor of, the non-moving party .... " (internal quotation marks omitted)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial." ' *Id.* at 586-87 (quoting Fed.R.Civ.P. 56(e)).

**\*5** In order to make out a prima facie claim of invidious discrimination under Title VII, a plaintiff must establish that "(i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Roge v. NYP Holdings, Inc.,* 257 F.3d 164, 168 (2d Cir.2001). If the plaintiff succeeds in doing so, then "a presumption arises that the employer unlawfully discriminated, and the burden shifts the defendant to present a nondiscriminatory reason for the adverse employment action." *Id.* Once the employer articulates a nondiscriminatory explanation, "the presumption of discrimination drops out ... and the burden shifts back to the plaintiff, to prove that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (internal citations and quotation marks omitted). The same burden-shifting framework ordinarily applies to analogous claims of intentional discrimination under §§ 1981 & 1983. *Patterson v. McLean Credit Union,* 491 U.S. 164, 186 (1989) ( § 1981); *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506 n. 1 (1993) (assuming burden-shifting framework applies to § 1983 claims).

Though Dr. Ding's federal claims take various forms, one issue is of critical importance to the bulk of them-whether the defendants' actions against him were motivated by an animus against persons of Chinese national origin-and on this score, Dr. Ding has adduced no evidence at all. *See, e.g., Reeves v. Sanderson Plumbing Prod., Inc.* 530 U.S. 133, 148 (2001) (summary judgment appropriate "where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory."); *Schnabel v. Abramson,* 232 F.3d 83, 90 (2d Cir.2001) ("court [must] examin[e] the entire record to determine whether the plaintiff could satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.") (internal quotation marks omitted).

The defendants hired Dr. Ding with knowledge that he was of Chinese national origin, and Dr. Ding has put forward no evidence that they developed a racial (or national origin-based) animus against him during his tenure there. As the Second Circuit has explained, "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute ... an invidious motivation that would be inconsistent with the decision to hire." *Grady v. Affiliated Cent. Inc.,* 130 F.3d 553, 560 (2d Cir.1997). This is especially true in a case such as this, when the "persecution" Dr. Ding alleges began almost immediately after he started work. *Id.*

**\*6** Neither does Dr. Ding advance any evidence that similarly situated residents of other races or national origins were treated more favorably. In fact, with respect to evaluations of medical performance, during Dr. Ding's two years at Downstate, three residents of Chinese national origin were selected by the defendants for the prestigious position of Chief Resident and were offered faculty positions upon their completion of the program. With respect to the disclosure of confidential patient information that the defendants state ultimately led to Dr. Ding's discharge, Dr. Ding offers only a single email sent by Dr. Wlody to the residents requesting that the residents bring to his attention certain interesting cases they had handled, for the purpose of an education program he was planning to offer. Dr. Wlody's email contains no patient information, and in any event it was not sent for personal purposes, as was Dr. Ding's. Dr. Wlody's email thus provides no evidence that Dr. Wlody was similarly situated but treated differently. [3]

Otherwise, Dr. Ding offers only his "feeling" and "personal judgment" that "if [he] were a natural born United States citizen ... [he] would have been treated differently,"

Deposition of Pl. at 226-27. In the face of the extensive evidence the defendants have adduced that Dr. Ding was disciplined and ultimately discharged because of his long record of poor performance, no reasonable jury could conclude, based merely upon Dr. Ding's "feeling," that the actions taken by the defendants against him were actually motivated by an invidious prejudice against persons of Chinese origin. The defendants are therefore entitled to summary judgment on Dr. Ding's claims of invidious discrimination and a hostile work environment.

Dr. Ding's retaliation claims fare no better. Although his termination came close in time after he engaged in protected activity, Dr. Ding has not alleged or offered any evidence to prove that Dr. Cotrell had knowledge of Dr. Ding's affirmative action complaint at the time he decided to terminate Dr. Ding's residency, and Dr. Cotrell, by affidavit, has stated that he had no such knowledge. *See* Gordon v. New York City Bd. of Educ., 232 F.3d 111, 113 (2d Cir.2000) ("plaintiff claiming retaliation must prove: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) adverse employment action; and (4) a causal connection between plaintiff's protected activity and the adverse employment action.") Accordingly, Dr. Ding has failed to produce sufficient evidence to prove an essential element of his retaliation claims.

Finally, Dr. Ding's claim under the Due Process clause fails because, even assuming he had a cognizable liberty interest in his residency, Dr. Ding did not avail himself of adequate post-deprivation remedies available under state law. Gudema v. Nassau County, 163 F.3d 717, 724 (2d Cir.1998); Johnson v. Nyack Hospital, 964 F.2d 116, 120-21 (1992) ("Under New York law .... [a] physician who wants his privileges restored must first file a complaint with the New York Public Health Council ("PHC") prior to seeking redress in the courts.").

**\*7** I have reviewed Dr. Ding's state law claims, and several of them may be disposed of here in summary fashion. First,

Dr. Ding's claims alleging intentional infliction of emotional distress and prima facie tort are barred by the one-year statute of limitations for intentional torts. Havell v. Islam, 739 N.Y.S.2d 371, 372 (1st Dep't 2002). Where "a reading of the factual allegations discloses that the essence of the cause of action is an intentional tort, plaintiff cannot avoid a Statute of Limitations bar by labeling the action as one to recover damages for a prima facie tort." *Id.* Dr. Ding's allegation of prima facie tort plainly states in paragraph 58 that the defendants acted "for the sole purpose of harming me." Second, as explained above, Dr. Ding cannot bring a breach of contract action against SUNY, which enjoys Eleventh Amendment immunity. Neither can he bring a breach of contract action against the defendant doctors in their individual capacity, as Dr. Ding had no contract with them individually.

I express no view as to the merits of Dr. Ding's claims of tortious interference with contract and with prospective business relationships. Having dismissed all of Dr. Ding's federal claims, I decline to exercise supplemental jurisdiction over these claims, which arise under the law of New York and as to which there is no independent basis of federal jurisdiction. Pursuant to 28 U.S.C. § 1367(c)(3), they are accordingly dismissed without prejudice.

CONCLUSION

For the foregoing reasons, the defendants motion for summary judgment is granted except as to Dr. Ding's tortious interference claims.
So ordered.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 752824

## Footnotes

1     As to defendant Dr. Giffin, defense counsel served a suggestion of death on March 15, 2005, and Dr. Ding has not filed any motion for substitution. Accordingly, the claims against Dr. Giffin are dismissed.

2    The case law has not been as explicit concerning whether § 1985 abrogates state sovereign immunity. In any event, it is well-settled that a State and its instrumentalities are not "persons" subject to suit under § 1983, *Spencer v. Doe,* 139 F.3d 107, 111 (2d Cir.1998), and there is no reason to suspect the Congress intended the term "persons" to take on a different meaning in § 1985. Dr. Ding's § 1985 claim against SUNY and the defendant doctors in their official capacities is therefore dismissed.

3    Although discovery in this matter has been closed for nearly a year, Dr. Ding maintains that the defendants have refused to comply with several of his requests for discovery. The time for resolving these disputes has passed. I have considered, particularly in light of the plaintiff's *pro se* status, excusing the untimeliness of his claim, but I conclude that Dr. Ding's requests are not sufficiently likely to lead to probative evidence to warrant reopening discovery. Dr. Ding merely points out that other doctors had patients who died (presumably he means because of errors in anesthesia), in the hope of establishing that his March 16 intubation incident, which the patient survived, was blown out of proportion by the attending physicians because of a discriminatory animus. Although "a plaintiff is not obligated to show disparate treatment of an identically situated employee," *McGuinness v. Lincoln Hall,* 263 F.3d 49, 54 (2d Cir.2001), there must be a "reasonably close resemblance of facts and circumstances" such that the plaintiff and those with whom he compares himself are "similar in significant respects." *Lizardo v. Denny's, Inc.,* 270 F.3d 94, 101 (2d Cir.2001). Apart from the intubation incident, Dr. Ding received three consecutive six-month evaluations of "unsatisfactory" and widely distributed confidential patient information for personal reasons. Thus, even assuming (as Dr. Ding does) that the other doctors committed medical errors resulting in patient death, they will still not be similar in significant respects to Dr. Ding.

---

**End of Document**                            © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 1869012

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Carlos A. ANTONETTI, ON
BEHALF OF Son C.J.A., Plaintiffs,

v.

DAVE & BUSTERS 42ND STREET TIMES
SQUARE; John Does & Jane Doe; Dave & Busters
Corporate Office; Dave & Busters Inc. HQ, Defendants.

23-CV-0101 (LTS)

|

Signed February 6, 2023

**Attorneys and Law Firms**

Carlos A. Antonetti, Brooklyn, NY, Pro Se.

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District
Judge:

**\*1**  Plaintiff Carlos A. Antonetti, who is appearing *pro se*,
purports to bring this action on behalf of himself and his
minor son, C.J.A. [1] He invokes the court's federal question
jurisdiction and asserts claims that he was discriminated
against based on his gender in violation of the federal
constitution, 42 U.S.C. § 1985, and 42 U.S.C. §§ 2000a,
2000a-1. Named as defendants in the amended complaint
are Dave & Busters Times Square, Dave & Busters Corporate
Office, Dave & Busters HQ, and John and Jane Does. By
order dated January 27, 2023, the Court granted Plaintiff's
request to proceed *in forma pauperis* (IFP), that is, without
prepayment of fees.

STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion
of the complaint, that is frivolous or malicious, fails to state
a claim on which relief may be granted, or seeks monetary
relief from a defendant who is immune from such relief. 28
U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack
Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court

must also dismiss a complaint when the Court lacks subject
matter jurisdiction of the claims raised. *See* Fed. R. Civ.
P. 12(h)(3).

While the law mandates dismissal on any of these grounds,
the Court is obliged to construe *pro se* pleadings liberally,
*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and
interpret them to raise the "strongest [claims] that they
*suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d
471, 474 (2d Cir. 2006) (internal quotation marks and
citations omitted) (emphasis in original). But the "special
solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has
its limits – to state a claim, *pro se* pleadings still must comply
with Rule 8 of the Federal Rules of Civil Procedure, which
requires a complaint to make a short and plain statement
showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state
a claim for relief "that is plausible on its face." *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is
facially plausible if the plaintiff pleads enough factual detail
to allow the Court to draw the inference that the defendant is
liable for the alleged misconduct. In reviewing the complaint,
the Court must accept all well-pleaded factual allegations as
true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But
it does not have to accept as true "[t]hreadbare recitals of the
elements of a cause of action," which are essentially just legal
conclusions. *Twombly*, 550 U.S. at 555. After separating
legal conclusions from well-pleaded factual allegations, the
Court must determine whether those facts make it plausible –
not merely possible – that the pleader is entitled to relief. *Id.*

BACKGROUND

**\*2**  Plaintiff Carlos A. Antonetti brings this action on behalf
of his minor son. He invokes the Court's federal question
jurisdiction, and purports to assert constitutional claims under
42 U.S.C. § 1983, as well as claims under 42 U.S.C. §
1985, 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. §§ 2000a,
2000a-1. Named as Defendants are Dave & Busters 42nd
Street Times Square, Dave & Busters Corporate Office, Dave
& Busters Inc. HQ, and John and Jane Does.

The following allegations are taken from the amended complaint. On October 22, 2022, Plaintiff and his five-year-old son went to Dave & Busters located at 234 W. 42nd Street in Manhattan. After a short while, Plaintiff and his son were "approached and surrounded by a big security guard," another security guard, and an Assistant General Manager named Robert. (ECF 5-1, at 1.) The security guard asked Plaintiff and his son to leave because another employee complained that Plaintiff had made "inappropriate and lewd remarks." (*Id.* at 2.)

Plaintiff maintains that he and his son sat at the bar and ordered food, but that they did not make any inappropriate statements. Instead, Plaintiff attributes Defendants' actions to discrimination on the basis of his gender expression because he is a "heterosexual single man" who was "seen doing the roles of both the mother and the father." (*Id.* at 4.) Plaintiff maintains that his treatment is a "form of gender expression discrimination because of the way that I present myself with my child [which] not all people will like or accept because of there [sic] own personal feelings or hatred towards someone for no apparent reason even not knowing them." (*Id.*) Plaintiff felt "disrespected violated intimidated threatened and discriminated against" and his child was "scared crying and dramatized through out the whole situation." (*Id.*)

Plaintiff called the restaurant on the following day, and spoke to the same assistant general manager, who told Plaintiff that he would speak to the general manager in the coming days and call Plaintiff back. When the assistant manager did not call back, Plaintiff called the Corporate Office in Texas, which told Plaintiff that there was nothing they could do. Plaintiff made additional fruitless attempts to obtain information about any investigation into the incident. (*See id.* at 2-3.) He received the "same run around story" that they were investigating the incident and that Plaintiff will be contacted when the investigation is complete. (*Id.* at 3.) Plaintiff also filed complaints with the Better Business Bureau, the New York State Attorney General's Office of Civil Rights, the United States Department of Health and Human Services Office for Civil Rights, and the New York City Commission on Civil Rights. (*Id.*)

Plaintiff seeks money damages in the amount of $330,000 each for both his son and himself. (*Id.* at 5.)

## DISCUSSION

### A. Claims on behalf of Plaintiff's minor child

A nonlawyer parent ordinarily cannot represent a child's interests *pro se. See Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990); *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005) (holding that it is "a well-established general rule in this Circuit that a parent not admitted to the bar cannot bring an action pro se in federal court on behalf of his or her child"). Minors "are entitled to trained legal assistance so their rights may be fully protected" and nonlawyer parents are not trained to represent competently the interests of their children. *Cheung*, 906 F.2d at 61. Moreover, "a district court has a duty to raise this issue *sua sponte.*" *Thomas v. Astrue*, 674 F. Supp. 2d 507, 511 (S.D.N.Y. 2009).

**\*3** "In determining whether a non-attorney individual is attempting to bring an action on behalf of another, the 'threshold question' is 'whether a given matter is plaintiff's own case or one that belongs to another.' " *Machadio v. Apfel*, 276 F.3d 103, 107 (2d Cir. 2002) (quoting *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998)). Here, Plaintiff purports to assert claims on behalf of his child. Plaintiff, however, cannot bring claims on behalf of the child without counsel. The Court therefore dismisses without prejudice any claims Plaintiff is asserting on behalf of his child.

### B. Claims on Plaintiff's behalf

In light of Plaintiff's *pro se* status, the Court construes the complaint as also attempting to assert claims on his own behalf.

#### 1. Section 1983

Plaintiff purports to assert claims under 42 U.S.C. § 1983 for violations of his federal constitutional rights. A claim for relief under Section 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties therefore generally are not liable under the statute. *Sykes v. Bank of America*, 723 F.3d 399, 406 (2d

Cir. 2013) (citing Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001)); see also Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties."). As Defendants Dave & Busters and its various offices are private parties who are not alleged to work for any state or other government body, Plaintiff has not stated a claim against Defendants under Section 1983.

**2. Section 1985**

Plaintiff's complaint appears to suggest that he is attempting to assert claims of conspiracy under 42 U.S.C. § 1985(3). To state such a claim, a plaintiff must show the existence of: (1) a conspiracy; (2) for the purpose of depriving the plaintiff of the equal protection of the laws, or the equal privileges or immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of his right or privilege as a citizen of the United States. Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). "[T]he [§ 1985(3)] conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Id. (internal quotation marks and citation omitted). Vague and unsupported assertions of a claim of conspiracy will not suffice. See, e.g., Wang v. Miller, 356 F. App'x 516, 517 (2d Cir. 2009) (summary order); Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir. 2003); Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997).

Here, Plaintiff's allegations fail to suggest a claim under Section 1985. Plaintiff alleges that he was asked to leave Dave & Busters after being accused of making inappropriate remarks. Plaintiff maintains that he did nothing inappropriate, but was instead excluded because he was a "heterosexual single man" who was "seen doing the roles of both the mother and the father." (ECF 5-1, at 4.) Plaintiff's alleges no specific facts suggesting that Defendants took action against him because of his gender. He speculates that "not all people will like or accept" his relationship with his son "because of there [sic] own personal feelings or hatred towards someone for no apparent reason even not knowing them." (Id.) Moreover, Plaintiff's allegations do not suggest a conspiracy among the defendants. He alleges that various defendants – consisting of

the restaurant he was asked to leave and its corporate offices – have told him that the incident is being investigated and that they will contact him when the investigation is complete. Nothing in the facts alleged by Plaintiff suggests a conspiracy motivated by invidious discrimination to deprive him of his federally protected rights. Plaintiff therefore fails to state a claim under Section 1985.

**3. 42 U.S.C. §§ 2000a, 2000a-1**

**\*4** Plaintiff also invokes 42 U.S.C. §§ 2000a and 2000a-1. Section 2000a, which is the codification of Title II of the Civil Rights Act of 1964, states, "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." Plaintiff's Title II claim fails because Title II, by its own terms, does not protect against gender discrimination. See Ewideh v. Kohl's Dep't Stores Carlisle Pennsylvania, No. 1:20-CV-2342, 2022 WL 2181235, at \*7 (M.D. Pa. Feb. 4, 2022), report and recommendation adopted, No. 1:20-CV-02342, 2022 WL 1618530 (M.D. Pa. May 23, 2022); Guichardo v. Langston Hughes Queens Library, 2015 WL 13227995, at \*4 (E.D.N.Y. Nov. 20, 2015) ("Title II does not prohibit discrimination on the basis of sex."); Seidenberg v. McSorleys' Old Ale House, Inc., 317 F. Supp. 593, 595 (S.D.N.Y. 1970) (discrimination on the basis of sex is not prohibited by Section 2000a); DeCrow v. Hotel Syracuse Corp., 288 F. Supp. 530, 532 (N.D.N.Y. July 30, 1968) (Title II does not protect against discrimination based on sex).

Section 2000a-1 prohibits "discrimination or segregation of any kind on the ground of race, color, religion, or national origin, if such discrimination or segregation is or purports to be required by any law, ordinance, regulation, rule or order of a State or any agency or political subdivision thereof." Section 2000a-1 does not apply in this case because Plaintiff does not allege that any discrimination he faced was "required by any law, statute, ordinance, regulation, rule or order" of any state or municipality. Even if Section 2000a-1 did apply, Plaintiff's claim would fail because Section 2000a-1, like Section 2000a, does not include sex or gender among the characteristics it protects.

The Court therefore dismisses Plaintiff's claims under 🚩 Sections 2000a and 🚩 2000a-1 for failure to state a claim on which relief may be granted. *See* 🚩 28 U.S.C. § 1915(e)(2)(B)(ii).

### 4. 28 U.S.C. §§ 1331, 1343

Finally, Plaintiff invokes 28 U.S.C. §§ 1331 and 1343. These statutes merely provide the court with jurisdiction to hear certain claims – they do not confer substantive rights. Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, law, or treaties of the United States." Section 1331 is a "jurisdictional statute [that] does not, in and of itself create a cause of action, but rather depends upon an action arising under a separate federal law before a district court's jurisdiction is proper." *325 Bleecker, Inc. v. Local Union No. 747*, 500 F. Supp. 2d 110, 119 (N.D.N.Y. Mar. 31, 2007). Likewise, Section 1343 is a jurisdictional statute that does not create an independent cause of action. *See Rivera v. City of New York*, No. 1:20-CV-9968-GHW, 2022 WL 1523165, at *5 (S.D.N.Y. May 13, 2022) (Section 1343 "govern[s] procedure in the federal district courts and [does not] provide a separate claim for relief."). The Court therefore dismisses Plaintiff's claims under Sections 1331 and 1343 for failure to state a claim on which relief may be granted. *See* 🚩 28 U.S.C. § 1915(e)(2)(B)(ii).

### 5. State law claims

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 🚩 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." 🚩 *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state-law claims Plaintiff may be asserting. *See* 🚩 *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of 🚩 § 1367 'confirms the discretionary

nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.' ") (quoting 🚩 *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

### C. Leave to amend is denied

**\*5** District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See* 🚩 *Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); 🚩 *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

### CONCLUSION

The Court dismisses Plaintiff's complaint, filed IFP under 🚩 28 U.S.C. § 1915(a)(1), for failure to state a claim on which relief may be granted. *See* 🚩 28 U.S.C. § 1915(e)(2)(B)(ii).

Any claims that Plaintiff is asserting on behalf of his child are dismissed without prejudice.

The Court declines to exercise supplement jurisdiction of any state law claims that Plaintiff may be asserting. *See* 🚩 28 U.S.C. § 1367(c)(3).

The Court certifies under 🚩 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See* 🚩 *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Slip Copy, 2023 WL 1869012

**Footnotes**

1   Plaintiff originally filed this action in the United States District Court for the Eastern District of New York.
    *See Antonetti v. Dave & Busters*, No. 22-CV-6892 (LDH) (JRC) (E.D.N.Y. Dec. 27, 2022). By order dated
    December 27, 2022, Judge LaShann DeArcy Hall of the Eastern District transferred this action to this court.
    (ECF 6.) On December 2, 2022, prior to the case being transferred, Plaintiff filed a motion to file an amended
    complaint, to which he attached a copy of the proposed amended complaint. (ECF 5.) Under Rule 15(a) of
    the Federal Rules of Civil Procedure, Plaintiff is permitted to file an amended complaint as a matter of course.
    Because Plaintiff did not need permission to file an amended complaint, the Court denies the motion as moot
    and, for the purposes of this order, considers the amended complaint (ECF 5-1) as the operative pleading.

---

**End of Document**                                   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 5077026

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Brandon C. JONES, Plaintiff,

v.

Ms. Jisin H. THOMAS; Mr. Jonathan Tauarez;
Volunteers of America Corporation; Volunteers of
America, Swartz Shelter; Volunteers of America
135 W. 50th Street, NYC, NY 10024, Defendants.

20-CV-5581 (LLS)
|
Signed 08/27/2020

**Attorneys and Law Firms**

Brandon C. Jones, New York, NY, pro se.

ORDER TO AMEND

LOUIS L. STANTON, United States District Judge:

**\*1** Plaintiff, appearing *pro se*, invokes the Court's federal question jurisdiction, alleging that Defendants violated his federal constitutional and statutory rights. Plaintiff filed the initial complaint on July 17, 2020, and on July 30, 2020, he filed an amended complaint. (ECF Nos. 2 and 6.) Plaintiff also filed a motion for permission for electronic case filing. (ECF No. 5.) By order dated August 5, 2020, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis* ("IFP"). For the reasons set forth below, the Court grants Plaintiff leave to file a second amended complaint within sixty days of the date of this order.

STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

BACKGROUND

Plaintiff brings his claims using the Court's general complaint form. He checks the box on the form to invoke the Court's federal question jurisdiction, and in the section of the form asking which of his federal constitutional or federal statutory rights have been violated, Plaintiff writes, "4th and 14th Constitutional Amendment[,] ADA Act of 1990 42 USC Reasonable accommodation[,] Title VII Civil Rights Act 1964[,] Intimidation by defendants, 42 USC 3617[.]" (ECF No. 6, at 2.) He sues the Volunteers of America ("VOA") Corporation, VOA Schwartz Shelter, [1] a VOA facility located at 135 W. 50th Street in New York City, and VOA employees Jisin H. Thomas and Jonathan Tauarez.

**\*2**  The following allegations are taken from the amended complaint, much of which is confusing and lacking context. Defendant Jisin H. Thomas "failed to provide Reasonable Accommodation, with regards to the advise [sic] of Medical Personnel and took upon herself to disregard all Medical Documentation." (*Id.* at 5.) Thomas "engaged tactics in Retaliation and forms of Intimidation by engaging unlawful behavior" and "filing a formal complaint with Individual Mr. Darrel Spencer," after Thomas found out that Plaintiff sent "sincere complaints to VOA Corporate Offices and other NYS/NYC Departments regarding Safety and Hygiene issues of Swartz [sic] Shelter." (*Id.* at 5.) Spencer then contacted Plaintiff and demanded that he report to Spencer's "Supervisor @ 500 Pearl Street SDNY." (*Id.*)

Plaintiff further alleges that Defendant Jonathan Tauarez "engaged in tactics and has disregarded all required assistance with Reasonable Accommodation as provided by the ADA of 1990." (*Id.*) Tauarez wrote "a formal Infraction" against Plaintiff "and sent [it] to Individual Mr. Darrel Spencer" before "demand[ing]" that Plaintiff sign the document. (*Id.*) Plaintiff did not comply and Spencer "contacted [Plaintiff] about the Infraction and made statements about going before the Judge and questioned [Plaintiff] about the aforementioned and the issues continue today without any relief or stoppage, in violation of various NYS Law and Federal Code 42 USC 1637." (*Id.*)

Plaintiff asserts that as a result of Defendants' unlawful acts, he has experienced at the Schwartz Shelter "[i]nfections, pain, and suffering from the failure to provide clean facilities." (*Id.* at 6.) He further states that he faced retaliation, "which could have landed [him] back in prison," because of "Blowing the Whistle on unsafe conditions" at Schwartz. (*Id.*) Plaintiff also asserts that he has experienced "[e]motional [i]ntimidation" and "prevention of proper medical treatment by refusing medical supplies deliveries, on multiple occasions." (*Id.*)

He seeks money damages and injunctive relief.

Plaintiff attaches to the complaint pages of medical records, and a July 29, 2020 "Notice of Transfer" from VOA, informing Plaintiff that "DHS is issuing [him] an administrative transfer within 48 hours" and that he will be notified of his "new assigned Mental Health shelter once it becomes available." (*Id.* at 17.)

## DISCUSSION

### A. Constitutional claims under 42 U.S.C. § 1983

The Court construes Plaintiff's allegations that Defendants retaliated against him for filing complaints as asserting claims under *42 U.S.C. § 1983* that Defendants violated his First Amendment rights. To state a claim under *§ 1983*, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

A claim for relief under *§ 1983* must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." *42 U.S.C. § 1983*. Private parties are therefore not generally liable under the statute. *Sykes v. Bank of America*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties."). As Defendant VOA is a private non-profit organization, and Defendants Thomas and Tauarez are private parties who do not work for any state or other government body, Plaintiff has not stated a claim against these defendants under *§ 1983*.

### B. Claims under the ADA

Title III of the ADA governs places of public accommodations, and guarantees that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." *42 U.S.C. § 12182(a)*. To state a claim under Title III, a plaintiff must allege, "(1) [that] he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation;[2] and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." *Roberts v. Royal Atlantic Corp.*, 542 F.3d 363, 368 (2d Cir. 2008), *cert. denied*, 556 U.S. 1104

(2009). A plaintiff must also allege that the "exclusion or discrimination was due to [the plaintiff's] disability." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quoting ⚑ *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003)).

**\*3** With respect to the third element, "a plaintiff can base a disability discrimination claim on any of 'three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation.' " *Brief v. Albert Einstein Coll. of Med.*, 423 Fed. Appx. 88, 90 (2d Cir. 2011) (quoting *Fulton*, 591 F.3d at 43). To bring a reasonable accommodation claim, a plaintiff must show "(1) [ ]he suffers from a disability (2) known to the defendant, for which (3) a reasonable accommodation is necessary for the plaintiff's enjoyment of the facility, and (4) the defendant refused the accommodation." *Lopez v. New York City Dep't of Homeless Servs.*, No. 17-CV-3014, 2019 WL 3531955, at \*4 (S.D.N.Y. Aug. 2, 2019), *report and recommendation adopted*, No. 17-CV-3014, 2019 WL 4593611 (S.D.N.Y. Sept. 23, 2019).

Here, Plaintiff asserts that Defendants "failed to provide [a] Reasonable Accommodation" as required by the ADA, but he fails to allege any facts suggesting that he has a disability within the meaning of the ADA. Moreover, Plaintiff alleges no facts regarding the nature of the reasonable accommodation that he sought or that Defendants discriminated against him in denying such an accommodation. *See Castillo v. Hudson Theatre, LLC*, 412 F. Supp. 3d 447, 451 (S.D.N.Y. 2019) (quoting ⚑ *Shaywitz v. Am. Bd. Of Psychiatry & Neurology*, 848 F. Supp. 2d 460, 467 (S.D.N.Y. 2012)) ("Title III's requirement that private entities make 'reasonable accommodations' for disabled individuals would be rendered meaningless if the entity had no basis for knowing (1) what accommodations the [plaintiff] was seeking, and (2) whether those accommodations were reasonable in light of the disability and the test."). The Court therefore grants Plaintiff leave to amend his complaint to allege facts supporting his claim that Defendants violated Title III of the ADA.

## C. Claims under the Fair Housing Act

Plaintiff also asserts that Defendants intimidated him in violation of 42 U.S.C. § 3617. That statute, a section of the Fair Housing Act, states, "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [the FHA]." Plaintiff must therefore allege facts suggesting that (1) he exercised or enjoyed a right under the FHA, and (2) Defendants intimidated or threatened him because he exercised or enjoyed a right under the FHA.

Section 3604 of the FHA, as applicable here, makes it unlawful to "discriminate in the [ ] rental [of], or to otherwise make unavailable or deny, a dwelling to any ... renter because of" the individual's disability. ⚑ 42 U.S.C. § 3604(f)(1). It also prohibits discrimination against "any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling, because of a [disability]." ⚑ 42 U.S.C. § 3604(f)(2). Under certain circumstances, a refusal to make a reasonable accommodation can constitute unlawful discrimination under the FHA. *See* ⚑ 42 U.S.C. § 3604(f)(3)(B).

Here, Plaintiff fails to allege facts suggesting that he has a disability under the FHA. *See* ⚑ *Rodriguez v. Village Green Realty, Inc.*, 788 F.3d 31, 40 (2d Cir. 2015) (quoting ⚑ 42 U.S.C. § 3602(h))) ("To demonstrate a disability under the FHA, a plaintiff must show: (1) 'a physical or mental impairment which substantially limits one or more ... major life activities'; (2) 'a record of having such an impairment'; or (3) that he or she is 'regarded as having such an impairment.' "). Even assuming that Plaintiff has a disability within the meaning of the FHA, he does not allege that he exercised his rights under the FHA and Defendants coerced, intimidated, or threatened him, or interfered with his exercise of those rights. *See* 42 U.S.C. § 3617. He rather makes the conclusory assertions that Thomas "engaged [in] tactic[s]" of retaliation and intimidation "by engaging [in] unlawful behavior." The only specific fact that Plaintiff alleges – that Thomas "fil[ed] a formal complaint" with Darrel Spencer after learning that Plaintiff filed complaints regarding safety and hygiene issues at Schwartz Shelter – does not suggest that Plaintiff was engaged in exercising his rights under the FHA or that Thomas's actions in filing an unspecified complaint against Plaintiff constituted intimidation or retaliation. If Plaintiff chooses to file a second amended complaint, he should allege facts suggesting that he exercised or enjoyed a right under the FHA, and that Defendants violated or interfered with that right or otherwise intimidated, coerced, or threatened Plaintiff in connection with his exercise or enjoyment of that right.

**D. Claims under Title VII**

**\*4**  Plaintiff also brings claims under Title VII of the Civil Rights Act of 1964. Title VII provides that "[i]t shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a). Plaintiff does not allege that he is or was an employee of any of the defendants. The Court therefore dismisses his claims under Title VII for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

**LEAVE TO AMEND**

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See* *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid claims under the ADA and FHA, the Court grants Plaintiff sixty days' leave to file a second amended complaint to detail his claims.

In the statement of claim, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant named in the amended complaint. Plaintiff is also directed to provide the addresses for any named defendants. To the greatest extent possible, Plaintiff's amended complaint must:

    a) give the names and titles of all relevant persons;

    b) describe all relevant events, stating the facts that support Plaintiff's case including what each defendant did or failed to do;

    c) give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;

    d) give the location where each relevant event occurred;

    e) describe how each defendant's acts or omissions violated Plaintiff's rights and describe the injuries Plaintiff suffered; and

    f) state what relief Plaintiff seeks from the Court, such as money damages, injunctive relief, or declaratory relief.

Essentially, the body of Plaintiff's second amended complaint must tell the Court: who violated his federally protected rights; what facts show that his federally protected rights were violated; when such violation occurred; where such violation occurred; and why Plaintiff is entitled to relief. **Because Plaintiff's second amended complaint will completely replace, not supplement, the amended complaint, any facts or claims that Plaintiff wishes to maintain must be included in the second amended complaint.**

If Plaintiff chooses to file a second amended complaint, the Court strongly encourages him to seek assistance from someone who can help him organize his thoughts and claims. If Plaintiff needs legal advice related to this matter, he may contact the New York Legal Assistance Group's Legal Clinic for Pro Se Litigants in the Southern District of New York, which is a free legal clinic staffed by attorneys and paralegals to assist those who are representing themselves in civil lawsuits in this Court. A copy of the flyer with details of the clinic is attached to this order.

**CONCLUSION**

**\*5**  The Clerk of Court is directed to transmit a copy of this order to Plaintiff. [3]

The Court grants Plaintiff's motion for permission for electronic case filing. (ECF No. 5.)

The Court dismisses Plaintiffs ⚑ § 1983 claims against Thomas, Tauarez, VOA Corporation, VOA Schwartz Shelter, and VOA at 135 W. 50th Street.

The Court grants Plaintiff leave to file a second amended complaint that complies with the standards set forth above within sixty days of the date of this order. Plaintiff must caption the document as a "Second Amended Complaint," and label the document with docket number 20-CV-5581 (LLS). A Second Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the Court will dismiss the complaint for failure to state a claim upon which relief may be granted.

SO ORDERED.

Attachment

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____          ___ Civ. _____ (___)

*(In the space above enter the full name(s) of the plaintiff(s).)*

SECOND
AMENDED
COMPLAINT__

-against-

Jury Trial:  ☐ Yes  ☐ No
*(check one)*

_____

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)*

**I.    Parties in this complaint:**

A.    List your name, address and telephone number. If you are presently in custody, include your identification number and the name and address of your current place of confinement. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff    Name _____
             Street Address _____
             County, City _____
             State & Zip Code _____
             Telephone Number _____

B.    List all defendants. You should state the full name of the defendant, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

*Rev. 12/2009*                              1

Defendant No. 1    Name _____
                   Street Address _____
                   County, City _____
                   State & Zip Code _____
                   Telephone Number _____

Defendant No. 2    Name _____
                   Street Address _____
                   County, City _____
                   State & Zip Code _____
                   Telephone Number _____

Defendant No. 3    Name _____
                   Street Address _____
                   County, City _____
                   State & Zip Code _____
                   Telephone Number _____

Defendant No. 4    Name _____
                   Street Address _____
                   County, City _____
                   State & Zip Code _____
                   Telephone Number _____

**II.    Basis for Jurisdiction:**

Federal courts are courts of limited jurisdiction. Only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case.

A.    What is the basis for federal court jurisdiction? *(check all that apply)*

      ☐ Federal Questions        ☐ Diversity of Citizenship

B.    If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? _____

C.    If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

      Plaintiff(s) state(s) of citizenship _____
      Defendant(s) state(s) of citizenship _____

*Rev. 12/2009*                              2

**III.    Statement of Claim:**

State as briefly as possible the *facts* of your case. Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A.    Where did the events giving rise to your claim(s) occur? _____

B.    What date and approximate time did the events giving rise to your claim(s) occur? _____

C.    Facts: _____

[What happened to you?]
[Who did what?]
[Was anyone else involved?]
[Who else saw what happened?]

**IV.    Injuries:**

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received.

_____

*Rev. 12/2009*                              3

V.    Relief:

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation. _____

_____

_____

_____

_____

_____

_____

_____

_____

I declare under penalty of perjury that the foregoing is true and correct.

Signed this ___ day of _____, 20___.

Signature of Plaintiff _____

Mailing Address      _____
                     _____
                     _____

Telephone Number     _____

Fax Number *(if you have one)* _____

Note:   All plaintiffs named in the caption of the complaint must date and sign the complaint.  Prisoners must also provide their inmate numbers, present place of confinement, and address.

For Prisoners:

I declare under penalty of perjury that on this _____ day of _____, 20__, I am delivering this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.

Signature of Plaintiff: _____

Inmate Number _____

Rev. 12/2009                    4



## Notice For Pro Se Litigants

As a public health precaution, the New York Legal Assistance Group's Legal Clinic for Pro Se Litigants has temporarily suspended all in-person client meetings as of Tuesday, March 17, 2020.

Limited scope legal assistance will continue to be provided, but only by appointment and only over the phone. During this time, we cannot assist walk-in visitors to the clinic.

If you need the assistance of the clinic, please call 212-659-6190 and leave a message, including your telephone number, and someone will get back to you as soon as possible. If you do not leave a message with your telephone number, we cannot call you back.

Please be patient because our responses to your messages may be delayed while we transition to phone appointments.


New York Legal Assistance Group

**All Citations**

Slip Copy, 2020 WL 5077026

## Footnotes

1    The Schwartz Assessment Shelter is a shelter for homeless men that is operated by VOA and located on Wards Island in New York City. *See* https://www.voa-gny.org/emergency-shelter.

2    The definition of "public accommodation" includes a "homeless shelter ... or other social service center establishment." 42 U.S.C. § 12181(7)(K).

3    Plaintiff has consented to receiving electronic service of Court document. (ECF No. 7.)

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 3868710
Only the Westlaw citation is currently available.
<u>NOT FOR PUBLICATION</u>
United States District Court, E.D. New York.

Eleanor BASORA-JACOBS, Plaintiff,
v.
CEO Arthur PALEVSKY; D.O. Ava Morgan;
Pat Perkins; Linda Schnabel, AC; Mgr. Greg
Defranceso; Michael Garcia, Defendants.

20-CV-1675 (LDH)(LB)
|
Signed 07/09/2020

**Attorneys and Law Firms**

Eleanor Basora-Jacobs, Staten Island, NY, pro se.

## MEMORANDUM AND ORDER

LaSHANN DeARCY HALL, United States District Judge:

**\*1**  Plaintiff Eleanor Basora-Jacobs, proceeding pro se, brings an employment discrimination and retaliation action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* [1] (Compl., ECF No. 1.) Plaintiff's April 1, 2020 motion for leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) is granted. (Pl.'s Leave Mot., ECF No. 2.)

## BACKGROUND [2]

Plaintiff is female and Hispanic. (Compl. at 5.) She is a former employee of Independent Living Association in Brooklyn. (*Id.* at 3.) Plaintiff "charge[s] Defendants with unlawful discriminatory practice relating to their employment based on race, national origin and retaliation" between July 2016 and March 2018. (*Id.* at 4-5.) She alleges that "staff spoke other language against company policy in front of clients and their parents" and that her employment was terminated. (*Id.* at 4.) Plaintiff alleges no other specific facts in support of her discrimination and retaliation claims. She names the Arthur Palevsky, CEO and Ava Morgan, the Director of Operations

and four other employees of Independent Living Association as Defendants. [3] (*Id.* at 1-3.)

## STANDARD OF REVIEW

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id.* While this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the [C]ourt must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the [C]ourt must accept the factual allegations of the complaint as true." *Id.* (citations omitted).

Moreover, where, as here, a plaintiff is proceeding pro se, his pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 55 U.S. 89, 94 (2007) (per curiam)). This rule is "particularly so when the pro se plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).

**\*2**  Nevertheless, under 28 U.S.C. § 1915(e)(2)(B), a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." Under 28 U.S.C. § 1915A(a), a district court "shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil

action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." *See* Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007).

## DISCUSSION

### I. Individual Liability

Title VII makes it unlawful to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). "[I]ndividuals are not subject to liability under Title VII." *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000). Accordingly, Plaintiff's Title VII causes of action are dismissed *sua sponte* as to the individual Defendants for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) (permitting the district to dismiss an *in forma pauperis* action where it "fails to state a claim on which relief may be granted"); *see also Saunders v. N.Y. City Dep't of Educ.*, 07–CV–2725, 2010 WL 331679 at *8 (E.D.N.Y. Jan. 19, 2010) (dismissing plaintiff's Title VII claims *sua sponte* against individual defendants because "individuals are not subject to liability under those statutes and any 'official capacity' claim would be redundant to plaintiff's claims against [the public entity]").

### II. Sufficiency of Title VII Claim

The complaint does not list Plaintiff's employer as a defendant in the case caption. However, even if it did, the complaint does not state sufficient facts to support a Title VII claim against Plaintiff's employer. "A plaintiff asserting a Title VII discrimination claim must allege facts showing that "(1) the employer took adverse action against h[er] and (2) h[er] race, color, religion, sex or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015). A plaintiff can make such a showing "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87; *see also Littlejohn v. City of N.Y.*, 795 F.3d 297, 310 (2d Cir. 2015) (explaining that an

employment discrimination complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face).

In the employment discrimination complaint form, Plaintiff checked the "race" and "gender/sex" boxes, and provides that she is Hispanic and female. (Compl. at 5.) However, she did not allege any facts suggesting that her termination or retaliation was done "at least, in part, for a discriminatory reason." *Vega*, 801 F.3d at 87. Accordingly, her Title VII claim is dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Plaintiff's complaint is DISMISSED for failure to state a claim. The Court grants Plaintiff leave to file an amended complaint against her former employer, the Independent Living Association, Inc., within thirty (30) days. If Plaintiff decides to file an amended complaint, it should name the former employer as the defendant, be titled "AMENDED COMPLAINT" and bear the same docket number as this order, 1:20-CV-1675 (LDH)(LB). Any amended complaint must include facts in support of such a claim. Any amended complaint will replace the original complaint and must stand on its own without reference to the original complaint. Failure to file an amended complaint within 30 days will result in dismissal of this case.

**\*3** No summons shall be issued at this time and all further proceedings shall be stayed for 30 days or until further order of the Court. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore, *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court is respectfully directed to mail a copy of this memorandum and order to the pro se litigant, and include a form complaint for employment discrimination.

SO ORDERED.

### All Citations

Slip Copy, 2020 WL 3868710

## Footnotes

1      The complaint is dated March 21, 2020, was mailed on March 25, 2020, and was received on April 1, 2020.

2      The following facts are taken from the complaint and are assumed true for the purposes of this memorandum and order.

3      Plaintiff named the four employee Defendants in the case caption, but only referred to Palevsky and Morgan in the body of her complaint. (*Id.* 1-2.)

---

**End of Document**                                          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 2304169

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Lorenzo WALKER, Plaintiff,

v.

Michael FLYNN, Owner, Defendant.

5:22-CV-0400 (GLS/ML)

|

Signed 06/27/2022

**Attorneys and Law Firms**

LORENZO WALKER, Plaintiff, Pro Se, 502 Bryant Avenue, Syracuse, New York 13204.

### ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent this *pro se* Complaint together with an application to proceed *in forma pauperis* and motion to appoint counsel filed by Lorenzo Walker ("Plaintiff") to the Court for review. (Dkt. Nos. 1, 2, 3.) For the reasons discussed below, I deny Plaintiff's *in forma pauperis* application (Dkt. No. 2), deny Plaintiff's motion to appoint counsel (Dkt. No. 3), and recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed without prejudice and without leave to amend.

### I. BACKGROUND

Plaintiff's Complaint consists of four form complaints, which purport to assert actions arising under (1) 42 U.S.C. § 1983; (2) Title VII of the Civil Rights Act, as amended; (3) the Americans with Disabilities Act; and (4) *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (*See generally* Dkt. No. 1.) Construed as liberally [1] as possible, Plaintiff alleges that on February 14, 2015, The Roofing Guys—which is owned by Defendant Michael Flynn ("Defendant")—was hired to replace the roof on Plaintiff's home. (*Id.*) Plaintiff alleges that the work done by The Roofing Guys was deficient in the following three respects: (1) after completion of the work, tar remained on the side of Plaintiff's house, (2) the sheetrock inside Plaintiff's second bedroom got wet, and (3) a gutter was installed in the wrong location, which has caused Plaintiff's basement to get

wet. (*Id.*) Plaintiff alleges that "they" [2] came back and painted over the tar but that work was also deficient and resulted in further damage to his property. (*Id.*)

Plaintiff alleges that he is a veteran, 70 years old, owns his home, and has one leg. (*Id.*) Plaintiff alleges that Defendant's conduct was discriminatory with respect to Plaintiff's race or color and national origin. (*Id.*)

Plaintiff alleges that he "went to Home Quater" to get help with home repairs and that an individual named Curtis Harris told Plaintiff that Plaintiff needed to let "them" [3] do the work or lose out. (*Id.* at 7.)

As relief, Plaintiff is seeking monetary damages of an unspecified amount. (*Id.*)

Plaintiff also filed an application for leave to proceed *in forma pauperis*. (Dkt. No. 2.)

### II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to grant IFP status if it determines that the plaintiff is unable to pay the required fee. 28 U.S.C. § 1915(a)(1). [4] Pursuant to 28 U.S.C. § 1915, where a plaintiff seeks leave to proceed IFP, the court must determine whether the plaintiff has demonstrated sufficient economic need to proceed without prepaying the required filing fee. 28 U.S.C. § 1915(a)(1).

**\*2** The decision of whether to grant an application to proceed IFP rests within the sound discretion of the court. *Anderson v. Coughlin*, 700 F.2d 37, 42 (2d Cir. 1983). The court must be satisfied that "the person is unable to pay such fees or give security therefor" prior to granting IFP status. 28 U.S.C. § 1915(a)(1). To make this threshold showing, a plaintiff must demonstrate "that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute." *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 62 (Fed. Cl. 2007) (citing *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)); *see also Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) ("Section 1915[a] does not require

a litigant to demonstrate absolute destitution[.]"); *accord,* *Lee v. McDonald's Corp.,* 231 F.3d 456, 459 (8th Cir. 2000). As the Second Circuit has noted, "no party must be made to choose between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick,* 701 F.2d at 244 (citing *Adkins,* 335 U.S. at 339).

In support of an IFP application, 28 U.S.C. § 1915 requires that a plaintiff submit an affidavit reflecting his assets. 28 U.S.C. § 1915(a)(1).

Here, Plaintiff's IFP application states that his gross pay or wages are $1,345.00, but does not indicate over what time period he receives that income. (Dkt. No. 2 at ¶ 2.) In addition, Plaintiff alleges in the Complaint that he owns his home (Dkt. No. 1 at 4) and indicates in his IFP application that his home is valued at approximately $69,000.00. (Dkt. No. 2 at ¶ 5.) However, Plaintiff also indicates in his IFP application that his regular monthly expenses include $720.00 in rent. (*Id.* at ¶ 6.) It is unclear whether Plaintiff maintains two properties —one that he owns and one that he rents, or whether Plaintiff inaccurately designated his monthly housing costs as "rent" despite owning the property.

In addition, Plaintiff's IFP application was incomplete in the following two respects: (1) Plaintiff failed to indicate the source of income for the $1,345.00 in gross pay or wages that he earns, and (2) with respect to question 8, which asks Plaintiff to identify any debts or financial obligations, Plaintiff states "House Noite 720 → B.A." (Dkt. No. 2 at 2.)

In this instance, due to Plaintiff's incomplete IFP application, I am unable to conclude that he possesses insufficient funds to pay the $402.00 filing fee to commence an action without "foregoing the necessities of life." *Potnick,* 701 F.2d at 244 (citing *Adkins,* 335 U.S. 339). Accordingly, I deny Plaintiff's motion to proceed in this case IFP. To the extent that Plaintiff may wish to renew his request to proceed IFP, and given the Court's unanswered questions about his financial situation, any request to proceed without the prepayment of fees must include a fully completed *in forma pauperis* application (AO240).

## III. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Initial Review of a Complaint

Ordinarily, the finding that Plaintiff does not qualify for IFP status would end the Court's discussion, and Plaintiff, in light of his *pro se* status, would likely be afforded an opportunity to either prepay the full filing fee, or submit a new, completed, and certified application for IFP. Because, however, as is discussed more completely below, I find that Plaintiff's Complaint fails to state a claim upon which relief may be granted, 28 U.S.C. § 1915 requires that the court dismiss the action "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid[.]" 28 U.S.C. § 1915(e).

Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir. 1983).

**\*3** The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.'" *Aguilar v. United States,* 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams,* 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ...

or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. More specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown– that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### B. Legal Standard Governing Subject Matter Jurisdiction

Subject matter jurisdiction can never be waived or forfeited. *ACCD Global Agric., Inc. v. Perry*, 12-CV-6286, 2013 WL 840706, at *1 (S.D.N.Y. March 1, 2013) (quoting *Dumann Realty, LLC v. Faust*, 09-CV-7651, 2013 WL 30672, at *1 (S.D.N.Y. Jan. 3, 2013)). Federal courts are mandated to examine their own jurisdiction *sua sponte* at every stage of the litigation. *ACCD Global Agric., Inc.*, 2013 WL 840706, at *1; *see* *In re Tronox, Inc.*, 855 F.3d 84, 85 (2d Cir. 2017) (federal courts have an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*).

A federal court exercises limited jurisdiction pursuant to Article III of the Constitution. It has subject matter jurisdiction over claims in which: (1) there is a 'federal question' in that a colorable claim arises under the 'Constitution, laws or treaties of the United States,' 28 U.S.C. § 1331; and/or if (2) there is complete "diversity of citizenship" between each plaintiff and all defendants and a minimum of $75,000 in controversy, 28 U.S.C. § 1332.

**\*4** *Gonzalez v. Ocwen Home Loan Servicing*, 74 F. Supp. 3d 504, 511-12 (D. Conn. 2015) (quoting *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 363 (2d Cir. 2000) (delineating two categories of subject matter jurisdiction) (footnote omitted)), *reconsideration denied*, 14-CV-0053, 2015 WL 2124365 (D. Conn. May 6, 2015).

The existence of a federal question is governed by the "well-pleaded complaint" rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. 28 U.S.C. § 1331. A well-pleaded complaint presents a federal question where it "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on a resolution of a substantial question of federal law." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983).

### IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

Although Plaintiff completes his Complaint on form complaints for violations of (1) 42 U.S.C. § 1983; (2) the Americans with Disabilities Act; (3) Title VII of the Civil Rights Act, as amended; and (4) *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Plaintiff fails to state a claim upon which relief may be granted pursuant to any of those legal bases.

### A. 🚩 42 U.S.C. § 1983

A claim for relief under 🚩 42 U.S.C. § 1983 must allege facts showing that the defendant acted under color of state "statute, ordinance, regulation, custom or usage." 🚩 42 U.S.C. § 1983. Thus, to state a claim under 🚩 § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, _and_ (2) the right was violated by a person acting under the color of state law, or a "state actor."

🚩 _West v. Atkins_, 487 U.S. 42, 48-49 (1988). Generally, private parties are not state actors, and are not liable under 🚩 § 1983. _Sykes_, 723 F.3d at 406 (quoting 🚩 _Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n_, 531 U.S. 288, 295 (2001)); _see also_ 🚩 _Ciambriello v. Cnty. of Nassau_, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties....") (internal quotation marks and citations omitted). "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' " _United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am._, 941 F.2d 1292, 1295-96 (2d Cir. 1991) (citing 🚩 _Blum v. Yartsky_, 457 U.S. 991, 1002 (1982)). A private defendant may be held liable only as "a willing participant in joint activity with the State or its agents." 🚩 _Adickes v. S.H. Kress & Co._, 398 U.S. 144 (1970) (quoting 🚩 _United States v. Price_, 383 U.S. 787, 794 (1966)). Claims under 🚩 § 1983 can be brought against private entities by "showing that a person acting under color of state law ... collaborated with a private person ... to deprive the plaintiff of a constitutional right." 🚩 _Fries v. Barns_, 618 F.2d 988, 990 (2d Cir. 1980) (citing 🚩 _Adickes_, 398 U.S. at 144).

**\*5** Here, the Complaint fails to allege facts plausibly suggesting that Defendant was a "state actor" or was "collaborating" with state actors. [5] (_See generally_ Dkt. No. 1.)

### B. Title VII

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his ... terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42. U.S.C. § 2000e-2(a). A plaintiff asserting a claim under Title VII may establish a prima facie case by showing that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) "the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." _See_ 🚩 _Feingold v. New York_, 366 F.3d 138, 152 (2d Cir. 2004). The last factor may be satisfied "through direct evidence of intent to discriminate, or by indirectly showing circumstances giving rise to an inference of discrimination." 🚩 _Vega v. Hempstead Union Free Sch. Dist._, 801 F.3d 72, 87 (2d Cir. 2015) (citations omitted).

The Complaint fails to allege facts plausibly suggesting that Plaintiff is or was employed by Defendant. (Dkt. No. 1.) As a result, Plaintiff fails to state a claim upon which relief may be granted pursuant to Title VII. _Jones v. Thomas_, 20-CV-5581, 2020 WL 5077026, at \*4 (S.D.N.Y. Aug. 27, 2020) (dismissing for failure to state a claim, the plaintiff's claims pursuant to Title VII where the plaintiff did not allege that he is or was an employee of any of the defendants); _Basora-Jacobs v. Palevsky_, 20-CV-1675, 2020 WL 3868710, at \*2 (E.D.N.Y. July 10, 2020) (dismissing the plaintiff's Title VII claims because "[t]he complaint does not list Plaintiff's employer as a defendant in the case caption.").

Moreover, individuals may bring Title VII claims in federal court only after filing a timely charge with the EEOC and receiving an EEOC right-to-sue letter. 🚩 42 U.S.C. § 2000e-5(e), 🚩 (f); _see Legnani v. Alitalia v._ 🚩 _Linee Aeree Italiane, S.P.A._, 274 F.3d 683, 686 (2d Cir. 2001) ("Under ... Title VII ..., a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter."). Plaintiff left blank the portion of the form-complaint where he was to indicate that he "filed charges with the New York State Division on Human Rights, the New York City Commission on Human Rights or Equal Employment Opportunity Commission regarding the alleged discriminatory acts." (Dkt. No. 1 at 8.) Plaintiff also left blank the portion of the form-complaint where he was to indicate the date that he received "the Equal Employment Opportunity Commission['s] issued ... Notice-of-Right-to-Sue letter." (Dkt. No. 1 at 8.) "Further, a right-to-sue letter is not attached to Plaintiff's Complaint. Accordingly, Plaintiff's Title VII ... claims must be dismissed on the basis that the right-to-sue letter is a precondition to bringing [the] claims in federal court." _Johnson v. Xylem Inc._, 19-CV-0130,

2020 WL 1963125, at *2 (W.D.N.Y. Apr. 16, 2020) (citing *Constantine v. U-Haul Int'l, Inc.*, 15-CV-1204, 2015 WL 7272211, at *2 (N.D.N.Y. Nov. 16, 2015) (D'Agostino, J.) (dismissing the plaintiff's Title VII claim where the plaintiff failed to demonstrate that she received an EEOC right-to-sue letter); *Parker v. Mack*, 09-CV-1049A, 2010 WL 11507368, at *3 (W.D.N.Y. Jan. 4, 2010) (holding that the plaintiff's Title VII claims were subject to dismissal where the plaintiff did not submit a copy of his EEOC right-to-sue letter)).

**\*6** As a result, I recommend that Plaintiff's claims pursuant to Title VII be dismissed for failure to state a claim upon which relief may be granted.

### C. Americans With Disabilities Act

"[T]he ADA's statute of limitations is three years." *De La Rosa v. Lewis Foods of 42nd Street, LLC*, 124 F. Supp. 3d 290, 299, n.14 (S.D.N.Y. 2015). For the reasons set forth *supra*, in note 5 of this Order and Report Recommendation, I recommend that Plaintiff's claims pursuant to the ADA be dismissed as time barred.

In the alternative, I find that Plaintiff has failed to allege facts plausibly suggesting a claim for relief pursuant to the ADA.

Based on the facts alleged, Plaintiff could not proceed with a claim under Title I of the ADA, which addresses employment discrimination, because he has neither alleged that he was employed by Defendant, nor alleged that he exhausted administrative remedies by filing a charge with the Equal Employment Opportunity Commission before pursuing litigation in federal court. 42 U.S.C. § 12117; *see Mary Jo C. v. New York State Local Retirement Sys.*, 707 F.3d 144, 169 (2d Cir. 2013) (quoting *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 360, n.1 (2001) (" 'Title I of the ADA expressly deals with th[e] subject' of employment discrimination.").

Title II of the ADA "proscribes discrimination against the disabled in access to public services." *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009) (citing *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84-85 (2d Cir. 2004), *corrected*, 511 F.3d 238 (2d Cir. 2004)). To plead a violation of Title II of the ADA, a plaintiff must allege "(1) that [he] is a qualified individual with a disability; (2) that [he] was excluded from participation in a public entity's services, programs, or

activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [his] disability." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quoting *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003)) (internal quotation marks omitted).

Here, the Compliant is devoid of factual allegations plausibly suggesting that Plaintiff was unable to access programs due to his disability, how his disability prevented him from accessing those programs, or what accommodations he sought and was denied by Defendants. (*See generally* Dkt. 1.)

Further, "individuals cannot be held liable under the ADA." *Netti v. Ayers*, 17-CV-0976, 2017 WL 7542494, at *18 (N.D.N.Y. Oct. 5, 2017) (Baxter, M.J.) (citing *Baross v. Greenlawn*, 16-CV-4805, 2017 WL 2124424, at *4 (E.D.N.Y. May 15, 2017)), *report and recommendation adopted by* 2018 WL 813509 (N.D.N.Y. Feb. 9, 2018) (Suddaby, C.J.); *accord Rosenfield v. New York State Div. of Veterans' Affairs*, 18-CV-1299, 2019 WL 4621962, at *10 (N.D.N.Y. Sept. 24, 2019) (Suddaby, C.J.); *see Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that Title II of the ADA does not provide for suits against individuals); *Fox v. State Univ. of N.Y.*, 497 F. Supp. 2d 446, 449 (E.D.N.Y. 2007) ("[T]here is no individual liability under Title I or Title II of the ADA, or the ADEA."); *Sutherland v. New York State Dep't of Law*, 96-CV-6935, 1999 WL 314186, at *7 (S.D.N.Y. May 19, 1999) ("Individual defendants may not be held personally liable for alleged violations of the ADA."). Thus, Plaintiff has failed to state a claim upon which relief may be granted pursuant to Title II of the ADA against Defendant, who is an individual (not an entity). [6]

**\*7** With respect to Title III of the ADA, the only relief available to private litigants is injunctive relief, and here, Plaintiff seeks only monetary damages. *Bowen v. Rubin*, 385 F. Supp. 2d 168, 181 (E.D.N.Y. 2005) (citing 42 U.S.C. § 12188(a)(1)); *Disabled in Action of Metro. New York v. Trump Int'l Hotel and Tower*, 01-CV-5518, 2003 WL 1751785, at *6 (S.D.N.Y. Apr. 2, 2003)).

Further, "[t]o state a claim under Title III [of the ADA], [a plaintiff] must allege (1) that [he] is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that

defendants discriminated against [him] by denying [him] a full and equal opportunity to enjoy the services defendants provide." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008). The Complaint fails to allege facts plausibly suggesting that Defendant discriminated against Plaintiff by denying him a full and equal opportunity to enjoy the services that Defendant provides. (*See generally* Dkt. No. 1.)

Moreover, Title IV of the ADA does not appear to be applicable to Plaintiff's claims because Title IV prohibits disability discrimination in telecommunications. *Genco v. Sargent & Collins LLP*, 18-CV-0107, 2018 WL 3827742, at *3, n.5 (W.D.N.Y. June 4, 2018).

Finally, Title V of the ADA, sometimes referred to as the "retaliation provision," also does not appear applicable because Plaintiff does not allege that he engaged in activity protected by the ADA, that Defendant was aware of that activity, or that Defendant took any adverse action against Plaintiff causally related to that protected activity. *Chiesa v. New York State Dep't of Labor*, 638 F. Supp. 2d 316, 323 (N.D.N.Y. 2009) (Hurd, J.); *see also Constantine v. Merola*, 20-CV-1012, 2020 WL 8450544, at *5 (N.D.N.Y. Nov. 6, 2020) (Lovric, M.J.) (recommending dismissal of the plaintiff's ADA Title V claims where the complaint failed to allege that the plaintiff "engaged in any protected activity, that any [d]efendant knew that [p]laintiff was involved in the protected activity, or that any adverse decision or course of action taken by [d]efendants was causally connected to that protected activity."), *report and recommendation adopted by* 2021 WL 392487 (N.D.N.Y. Feb. 4, 2021) (Hurd, J.).

As a result, to the extent that Plaintiff's Complaint is construed as alleging a claim pursuant to the ADA, I recommend that it be dismissed for failure to state a claim upon which relief may be granted.

### D. *Bivens* Claim

With respect to Plaintiff's claim pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), I recommend that it be dismissed as untimely. "The statute of limitations for *Bivens* actions arising in New York is three years." *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999).

In the alternative, I recommend that Plaintiff's *Bivens* claim be dismissed for failure to state a claim upon which relief

may be granted. To state a *Bivens* claim, a plaintiff must show that "(1) a defendant acted under color of federal law (2) to deprive plaintiff of a constitutional right." *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995). "While a private individual ordinarily may not be held liable under *Bivens*, she may be found to have acted 'under color of law' when she is a 'willful participant in joint activity' with the federal government or its agents." *Ross v. O'Donnell*, 13-CV-1250, 2014 WL 3735667, at *3 (N.D.N.Y. July 29, 2014) (Kahn, J.) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)). "To demonstrate that a private party was acting under color of federal law, a plaintiff must establish that [the] defendant's actions were commanded or encouraged by the federal government, or that the defendants were so intertwined with the government as to become painted with color of [federal] action." *Strother v. Harte*, 171 F. Supp. 2d 203, 206 (S.D.N.Y. 2001).

**\*8** Here, the Complaint is devoid of factual allegations plausibly suggesting that Defendant—a private actor—was commanded or encouraged by the federal government or that his actions were so intertwined with the government as to become painted with color of federal action. (*See generally* Dkt. No. 1.)

### E. Other Claims

Even applying special solicitude, I find that the Complaint may allege facts plausibly suggesting state law claims such as breach of contract. However, a state law claim for breach of contract does not raise a federal question for purposes of subject matter jurisdiction. *See Adames v. Taju*, 80 F. Supp. 3d 465, 468 (E.D.N.Y. 2015) ("The Court may not exercise federal-question jurisdiction over the Complaint as currently stated. Despite a liberal reading of the Complaint, Plaintiff's claim regarding breach of contract is based in state law. There is nothing on the face of Plaintiff's Complaint to suggest that Defendant violated any federal statute, or that any question involving the Constitution, laws, or treaties of the United States is implicated by his claim.").

The other conceivable ground for jurisdiction would be diversity of citizenship, which gives federal district courts jurisdiction over suits where the plaintiff and the defendant are of diverse citizenship and the amount in controversy exceeds $75,000. *Adames*, 80 F. Supp. 3d at 468. Here, there does not appear to be diversity jurisdiction between Plaintiff and Defendant, both of whom are citizens of New York. (Dkt. No. 1 at 1.) Moreover, the Complaint fails to allege that the amount in controversy is at least $75,000. As a result, the

Court lacks subject matter jurisdiction to consider any state law claims that Plaintiff may have sought to allege.

As a result, I recommend that Plaintiff's Complaint be dismissed in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted and because the Court lacks subject matter jurisdiction.

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [7]

**\*9** In this case, I find that granting leave to amend is unlikely to be productive because there appears no basis for Plaintiff to raise his claims against Defendant in federal court. As a result, the Court "should not allow [P]laintiff [an opportunity] to amend, notwithstanding a dismissal without prejudice. Because lack of subject matter jurisdiction is a substantive defect, the court recommends dismissal without leave to amend." *Guillory v. Crouse Hosp.*, 21-CV-1177, 2021 WL 5605260, at *3 (N.D.N.Y. Nov. 2, 2021) (Baxter, M.J.) (citing *Deul v. Dalton*, 11-CV-0637, 2012 WL 235523, at *8 n.19 (N.D.N.Y. Jan. 25, 2012) (Suddaby, J.)), *report and recommendation adopted by*, 2021 WL 5585926 (N.D.N.Y. Nov. 30, 2021) (Hurd, J.).

## VI. PLAINTIFF'S MOTION TO APPOINT COUNSEL

As an initial matter, "[a] party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *Leftridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011) (citations omitted). Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion. As a threshold matter, the court should ascertain whether the indigent's claims seem likely to be of substance. A motion for appointment of counsel may be properly denied if the court concludes that the plaintiff's "chances of success are highly dubious." *Leftridge*, 640 F.3d at 69. If the court finds that the claims have substance, the court should then consider:

> [T]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in th[e] case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986)). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

In the present matter, the Court has recommended dismissal of the action. As such, the Court cannot find that Plaintiff's claims are likely to be of substance. Plaintiff's motion (Dkt. No. 3) is therefore denied.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **DENIED WITHOUT PREJUDICE**; and it is further [8]

**ORDERED** that the Clerk of the Court shall provide Plaintiff with a blank *in forma pauperis* application (AO 240); and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 3) is **DENIED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE and WITHOUT LEAVE TO AMEND** Plaintiff's Complaint (Dkt. No. 1) pursuant to 28 U.S.C. 1915(e)(2)(B) for failure to state a claim upon which relief may be granted and because the Court lacks subject matter jurisdiction; and it is further

**\*10  ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [9]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [10] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Slip Copy, 2022 WL 2304169

---

### Footnotes

1   The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

2   Although it is unclear from the face of the Complaint, the Court presumes that Plaintiff intended to convey that The Roofing Guys' employees completed the painting work.

3   Again, it is unclear who Plaintiff is referring to, but the Court presumes that Plaintiff meant that Mr. Harris informed Plaintiff that The Roofing Guys were required to do the work.

4   The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

5   The Court also notes that the statute of limitations for a § 1983 action accruing in New York is three years. *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). Although the statute of limitations is an affirmative defense, where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on 28 U.S.C. § 1915(e)(2)(B) review. *See Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (holding that a complaint can be dismissed

on initial review based on a defense that appears on the face of the complaint). The conduct that Plaintiff's Complaint concerns appears to have occurred in 2015, more than three years before the commencement of this action. As a result, any claim pursuant to 42 U.S.C. § 1983 is barred by the statute of limitations.

6       Moreover, "[w]hen a private individual seeks damages under Title II of the ADA, the Second Circuit requires the plaintiff to 'establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability.' " *Day v. Warren*, 06-CV-0155, 2008 WL 474261, at *4 (D. Conn. Feb. 7, 2008) (quoting *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 111 (2d Cir. 2001)). The Complaint fails to allege facts plausibly suggesting discriminatory animus or ill will towards Plaintiff's alleged disability or disabilities. (*See generally* Dkt. No. 1.)

7       *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

8       If Plaintiff wishes to proceed with this action, he must either (i) pay the $402.00 filing fee, or (ii) submit a renewed IFP application detailing his current financial condition, within thirty (30) days from the date of the filing of Court's Decision and Order. Failure to comply with this directive will result in the issuance of a report and recommendation to the assigned district judge that the action be dismissed.

9       The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

10      If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                        © 2023 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Blue Flag – Appeal Notification

Appeal Filed by WALKER v. FLYNN, 2nd Cir., August 25, 2022

2022 WL 2789355

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Lorenzo WALKER, Plaintiff,

v.

Michael FLYNN, Defendant.

5:22-cv-400 (GLS/ML)

|

Signed July 15, 2022

**Attorneys and Law Firms**

FOR THE PLAINTIFF: Lorenzo Walker, Pro Se, 502 Bryant Avenue, Syracuse, NY 13204.

## <u>ORDER</u>

Gary L. Sharpe, Senior District Judge

**\*1** The above-captioned matter comes to this court following an Order and Report-Recommendation (R&R) by Magistrate Judge Miroslav Lovric, duly filed June 27, 2022. (Dkt. No. 5.) Following fourteen days from the service thereof, the Clerk has sent the file, including any and all objections filed by the parties herein.

No objections having been filed, and the court having reviewed the R&R for clear error, it is hereby

**ORDERED** that the Order and Report-Recommendation (Dkt. No. 5) is **ADOPTED** in its entirety; and it is further

**ORDERED** that plaintiff's complaint (Dkt. No. 1) is **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and because the court lacks subject matter jurisdiction; and it is further

**ORDERED** that the Clerk is directed to close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Order to plaintiff in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2022 WL 2789355

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.   1